IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

|  |  |  |
|---|---|---|
| JAMESINA CRAWFORD, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 4:14-cv-130 |
| NEWPORT NEWS INDUSTRIAL CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) | |

## REPORT AND RECOMMENDATION

A Second Amended Complaint was filed in this Court on May 4, 2015 by thirty-eight Plaintiffs against Defendant Newport News Industrial Corporation ("NNI"). ECF No. 15. The Second Amended Complaint asserts various claims of employment discrimination, retaliation, and hostile work environment by welders, fitters, and laborers employed at or by NNI. NNI filed separate Motions for Summary Judgment against thirty-seven Plaintiffs.[1] Before the Court in this Report and Recommendation are NNI's Motions for Summary Judgment and accompanying memoranda against five of these Plaintiffs: Marvin Smith (ECF Nos. 113, 114), Keith Chisman (ECF Nos. 127, 128), Naseer Marshall (ECF Nos. 137, 138), Kevin Smith (ECF Nos. 157, 158), and Richard Payton (ECF Nos. 179, 180).[2] NNI's Motions were based on several grounds, including that each of these five Plaintiffs failed to disclose their employment discrimination claims in their bankruptcy proceedings, thereby barring Plaintiffs from asserting these claims in this Court based on the doctrine of judicial estoppel. ECF Nos. 113-14; 127-28; 137-38; 157-58;

---

[1] On January 5, 2016, the parties stipulated to the dismissal of one Plaintiff. ECF No. 56.
[2] The Court will address the summary judgment motions with respect to the remaining thirty-two Plaintiffs in a separate Report and Recommendation.

179-80. The aforementioned Plaintiffs filed memoranda, appendices, and exhibits in opposition. ECF Nos. 198-215. NNI filed individual replies with respect to each Plaintiff, ECF No. 248 (Naseer Marshall), ECF Nos. 257 (Marvin Smith), 262 (Keith Chisman), 266 (Kevin Smith), 268 (Richard Payton), and a single memorandum in response to Plaintiffs' narrative statement of material facts, ECF No. 270. Plaintiffs subsequently filed a Notice of Supplemental Authority advising the Court of an Eleventh Circuit decision on the question of judicial estoppel, an issue raised by NNI in its summary judgment motions. ECF No. 291. NNI responded to this Notice. ECF No. 292. This matter was referred to the undersigned United States Magistrate Judge ("the undersigned") from the United States District Judge. 28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. After reviewing the briefs, the undersigned disposes of the Motions on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). The matter is now ripe for recommended disposition.

## I. STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat a motion for summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings and instead rely upon affidavits, depositions, or other evidence to show a genuine issue for trial. *See id.* at 324. Conclusory statements, without specific evidentiary support, are

insufficient. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998).  Rather, "there must be evidence on which the jury could reasonably find for the [party]." *Anderson*, 477 U.S. at 252. Ultimately, cases are not to be resolved on summary judgment where "the depositions [and affidavits] of principal witnesses present conflicting versions of the facts which require credibility determinations." *Nilson v. Historic Inns Group, Ltd.*, 903 F. Supp. 905, 909 (D. Md. 1995) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986)).

## II.  UNDISPUTED MATERIAL FACTS

### A.    General

NNI provides fabrication, construction, equipment repair, and technical services to energy and petrochemical companies. ECF No. 114, Statement of Fact ("SOF") No. 1; ECF No. 128, SOF No. 1; ECF No. 138, SOF No. 1; ECF No. 158, SOF No. 1; ECF No. 180, SOF No. 1.[3] NNI utilizes employees in various job classifications, including welders, fitters, and laborers. Welders, fitters, and laborers report to a Foreman (i.e., a supervisor), who, in turn, reports to a Superintendent. ECF No. 114, SOF No. 2; ECF No. 128, SOF No. 2; ECF No. 138, SOF No. 2; ECF No. 158, SOF No. 2; ECF No. 180, SOF No. 2.

### B.    Marvin Smith

Plaintiff M. Smith has asserted claims against NNI in the Second Amended Complaint for both racially hostile work environment and disparate treatment in pay, promotions, overtime and training, based on race. ECF No. 15.

M. Smith and his wife filed a voluntary petition for bankruptcy in the Eastern District of Virginia under Chapter 13 of the Bankruptcy Code on September 17, 2013. *In re: Marvin Gaye*

---

[3] Pursuant to Fed. R. Civ. P. 56 and E.D. Va. Local Civ. R. 56, the Court will rely on SOFs admitted by Plaintiffs, or, if only admitted in part, just that part of the SOF so admitted.

*Smith*, Case No. 13-51497, Doc. 1.[4]  He was represented by attorney Peter Zooberg, and the Bankruptcy Court appointed Michael P. Cotter as Trustee ("Trustee Cotter").  *Id.*  He was subsequently hired at NNI on February 3, 2014 as a welder. ECF No. 114, SOF No. 3.  The Chapter 13 plan was confirmed by the Bankruptcy Court on March 12, 2014, and included the following payment plan: "On October 17, 2013 and each month thereafter until further order, Liebherr America Inc. the employer of the debtor, shall deduct from the wages, salary or commissions of the debtor and pay the sum of $2,255.00 per month for 60 months: Total Funding $135,300." *In re: Marvin Gaye Smith*, Doc. 20.  On July 15, 2014, M. Smith filed an Amended Schedule which added to the list of creditor(s), but did not disclose any claim against NNI. *Id.*, Doc. 26.  M. Smith joined this lawsuit (*Crawford v. NNI*) with the filing of the Second Amended Complaint on May 4, 2015.  ECF No. 114, SOF No. 38.

On January 12, 2016, Trustee Cotter filed a Motion to Dismiss Case for Failure to Make Plan Payments. *In re: Marvin Gaye Smith*, Doc. 30.  The Bankruptcy Court then issued an Order Settling the Motion to Dismiss, which ordered debtors to resume regular plan payments and make an additional payment to cure arrears. *Id.*, Doc. 32.  On May 26, 2016, the Bankruptcy Court issued an Order of Dismissal for the failure of the debtors to comply with the Order Settling Motion to Dismiss entered on January 29, 2016 by failing to make payments. *Id.*, Doc. 34.  At no time during the pendency of the bankruptcy action did M. Smith ever disclose his interest in a claim against NNI. *Id., passim.*

## C. Keith Chisman

Chisman has asserted claims against NNI in the Second Amended Complaint for both

---

[4] Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of its own records, including documents filed in the public record of a litigant's bankruptcy proceedings. *Roach v. Option One Mortg. Corp.*, 598 F. Supp. 2d 741, 747 n.8 (E.D. Va.), *aff'd*, 332 F. App'x 113 (4th Cir. 2009) (citing *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239–40 (4th Cir. 1989)).

racially hostile work environment and disparate treatment in pay, promotions, overtime and training, based on race.  ECF No. 15.

Chisman worked on and off at NNI as a fitter between March 2010 and late 2012.  ECF No. 128, SOFs 3, 6, 7, 10.  On January 2, 2013, Chisman's attorney Joshua Friedman sent by Federal Express a letter to NNI announcing an intention, on behalf of Chisman[5] and several others, "to sue NNI (the 'Employer') for racial harassment/hostile work environment, disparate treatment and retaliation." *Id.*, attach. 17.  Chisman and his wife filed a voluntary petition for bankruptcy in the Eastern District of Virginia under Chapter 7 of the Bankruptcy Code on August 18, 2014.  *In re Keith Chisman*, Case No. 14-51163, Doc. 1.  He was represented by attorney Ryan Marion, and Clara Swanson was appointed Trustee.  *Id.*  Chisman did not disclose this employment discrimination claim on his voluntary petition.  *Id.*  Specifically, line 21 of the Schedule B – Personal Property, requires a debtor to identify: "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each." *Id.* at 11.  Chisman disclosed:

> Any interest in property that Debtor acquires or becomes entitled to acquire within 180 days of the filing of the petition for bankruptcy by bequest, devise, or inheritance, as a result of a property settlement agreement or of a divorce decree, or as a beneficiary of a life insurance policy or a death benefit plan, a refund of federal and state taxes received for 2011, proceeds from pre-petition and post-petition garnishment of wages, bank accounts, cash values for any life insurance policies, deposit accounts or any other assets and/or lottery of other winnings.

*Id.*  He placed a value of this asset at $1.00.  *Id.*

On September 24, 2014, the Trustee issued a Report of No Distribution, finding that there was no property available for distribution from the estate beyond that exempted by law.  *Id.*, Doc. 10.  Reaffirmation of a debt to one creditor was ordered "not disapproved" by the

---

[5] The letter refers to this Plaintiff as "Keith Chisolm," but in his deposition Chisman testified that this was a spelling error. ECF No. 128, attach. 3 at 41.

Bankruptcy Court on November 17, 2014.  *Id.*, Doc. 15.  Chisman was discharged from bankruptcy on December 1, 2014.  *Id.*, Doc. 18.  The bankruptcy case was closed on December 8, 2014.  *Id.*, Doc. 20.

### D.  Naseer Marshall

Marshall has asserted claims against NNI in the Second Amended Complaint for racially hostile work environment, disparate treatment in pay, promotions, overtime and training, based on race, termination because of race, and retaliation.  ECF No. 15.

NNI contracts out some of its work to Steel America, and Marshall was hired by Steel America to perform welding work at NNI in August 2013.  ECF No. 138, SOFs 3-4.  Marshall originally became a party to the *Crawford v. NNI* litigation on February 11, 2015 when he filed the First Amended Complaint.  ECF No. 7.  Seven months later, on September 14, 2015, Marshall filed a voluntary petition for bankruptcy in the Eastern District of Virginia under Chapter 7 of the Bankruptcy Code.  *In re Naseer Marshall*, Case No. 15-73144, Doc. 1.  He was represented by attorney Timothy Douglass in the bankruptcy action, and Tom Smith was appointed Trustee.  *Id.*  Marshall did not disclose this employment discrimination claim on the Schedule B – Personal Property section of his voluntary petition.  *Id.* at 10.  On October 22, 2015, the Trustee issued a Report of No Distribution, finding that no assets were available for distribution from the estate to satisfy creditors over and above that exempted by law.  *Id.*, Doc. 11.  Marshall's attorney then filed an Amended Schedule on December 7, 2015, which added a creditor, but did not disclose the claim manifested in this discrimination lawsuit.  *Id.*, Doc. 12.  Marshall received his Discharge of Debtor on December 28, 2015, and his case was closed on January 4, 2016.  *Id.*, Docs. 14, 16.

On February 25, 2016, the Trustee filed a Motion to Reopen the Bankruptcy Case on the

6

grounds that, "at the time of filing [the bankruptcy case], Mr. Marshall was a plaintiff in a pending discrimination lawsuit against BAE Systems[6] which was filed prior to the bankruptcy." *Id.*, Doc. 17 at 1. The Trustee further averred that "the debtor did not disclose the potential cause of action in his bankruptcy," and that "[c]ounsel for the debtor recently advised the former trustee of the cause of action." *Id.* The Bankruptcy Court held a hearing on the Motion on April 6, 2016, and on April 14, 2016 issued an Order granting the Motion and directing the appointment of a trustee, "who is authorized to collect and administer the assets of this estate." *Id.*, Doc. 23 at 1.

On August 25, 2016, Trustee Tom Smith filed an application to employ Joshua Friedman, Marshall's attorney herein, "to represent the Trustee of the bankruptcy estate of Naseer Marshall against [NNI]." *Id.*, Doc. 26 at 3. The Bankruptcy Court granted the Motion on September 16, 2016, ordering that "the trustee's Motion to employ Joshua Friedman to represent the trustee in the litigation of the claim of Naseer Marshall against [NNI] is hereby approved ..." *Id.*, Doc. 28 at 2. As of the date of this Report and Recommendation, Marshall has not submitted in the Bankruptcy Court an Amended Schedule A/B: Property, reflecting a description of and value of the claim in this lawsuit. *Id.*, *passim.* As of the date of this Report and Recommendation, the Trustee, as the real party in interest, has not submitted a Motion to Intervene pursuant to Fed. R. Civ. P. 17 here in the District Court.

**E. Kevin Smith**

K. Smith has asserted claims against NNI in the Second Amended Complaint for both racially hostile work environment and disparate treatment in pay, promotions, overtime and

---

[6] Of course, the pending cause of action is against NNI, not BAE Systems. Counsel for Marshall in this action has claimed that he "mistakenly filed a request to reopen based on a lawsuit against BAE Systems. Plaintiff does not have a lawsuit against BAE Systems." ECF 199, attach. 11 at ¶ 70. No affidavit or declaration or other admissible evidence was submitted in support of this contention. Counsel's representations are not admissible evidence under Fed. R. Civ. P. 56(c).

training, based on race.  ECF No. 15.

K. Smith has worked off and on at NNI since September, 2010, when he was hired to a temporary position as a fitter.  ECF No. 158, SOF 4, 6, 14, 15.  In January 2013, attorney Freidman sent a letter to NNI on K. Smith's behalf advising that he intended to sue NNI for discrimination and harassment.  *Id.*, SOF. No. 109.  On August 1, 2014 K. Smith and his wife filed a voluntary petition for bankruptcy in the Eastern District of Virginia under Chapter 7 of the Bankruptcy Code.  *In re Kevin Smith*, Case No. 14-51091, Doc. 1.  He was represented by attorneys Peter Zooberg and Charles Havener in the bankruptcy action, and David Ruby was appointed as Trustee.  *Id.*  At the time he filed the bankruptcy petition, he believed he had already been discriminated against and harassed by NNI.  ECF No. 158, SOF No. 100.  K. Smith did not disclose this employment discrimination claim on his voluntary petition.  *Id.*, SOF No. 105; *In re Kevin Smith*, Doc. 1.  On September 9, 2014, the Trustee issued a Report of No Distribution, finding that no assets were available for distribution from the estate to satisfy creditors over and above that exempted by law.  *In re Kevin Smith*, Doc. 10.  K. Smith received his Discharge of Debtor on November 12, 2014, and his case was closed on November 17, 2014.  *Id.*, Docs. 12 and 14.

On February 11, 2015, K. Smith originally became a party to the *Crawford v. NNI* litigation when he filed the First Amended Complaint.  ECF No. 7.

Eighteen months later, on August 5, 2016, K. Smith, through attorney Zooberg, filed a Motion to Reopen Bankruptcy Case on the grounds that "debtors inadvertently failed to list an asset for a claim of damages related to a workplace discrimination class action suit in Schedule B of the voluntary petition."  *In re Kevin Smith*, Doc. 15 at 2.  The Motion acknowledged: "as the alleged actions identified by the defendant that gave rise to Mr. Smith's cause of action occurred

8

pre-petition, this cause of action should have been disclosed as a potential asset in the bankruptcy filing, and Debtors regrets [sic] the error." *Id.* K. Smith sought to reopen the closed bankruptcy "for the purpose of amending their schedules to properly disclose this asset." *Id.*, at 3.

The Bankruptcy Court held a hearing on October 7, 2016 and granted the Motion. *Id.*, Doc. 19. That Court issued an Order Reopening the Case and directing the appointment of a trustee. *Id.*, Doc. 20. David Ruby was appointed Trustee on November 16, 2016. *Id.*, Doc. 22. On January 5, 2017, attorney Havener filed an Amended Schedule A/B: Property, reflecting a description of the claim in the *Crawford v. NNI* lawsuit, and providing an asset value of $50,000. *Id.*, Doc. 23 at 7. K. Smith also claimed an exemption of the entire amount of the claim, citing Va. Code § 34-28.1 ("the Personal Injury Exemption"). *Id.*, at 11. The Trustee filed a Motion for Extension of Time within Which to Object to Personal Injury Exemption on February 6, 2017. *Id.*, Doc. 25. The Motion was granted on March 1, 2017. *Id.*, Doc. 28. The Trustee filed a second such Motion seeking an additional extension on May 8, 2017. *Id.*, Doc. 30. Subsequently, on May 25, 2017, K. Smith filed another Amended Schedule in which he no longer claimed a Personal Injury Exemption for the claim asserted in *Crawford v. NNI*. *Id.*, Doc. 33. As of the date of this Report and Recommendation, the Trustee, as the real party in interest, has not submitted a Motion to Intervene pursuant to Fed. R. Civ. P. 17 here in the District Court.

**F. Richard Payton**

Payton has asserted claims against NNI in the Second Amended Complaint for both racially hostile work environment and disparate treatment in pay, promotions, overtime and training, based on race. ECF No. 15.

On August 22, 2013, Payton and his wife filed a voluntary petition for bankruptcy in the Eastern District of Virginia under Chapter 13 of the Bankruptcy Code. *In re Richard Payton*,

Case No. 13-51357, Doc. 1. He was represented by attorney Shanna Harris in the bankruptcy action, and Michael Cotter was appointed as Trustee. *Id.* On September 4, 2013, Payton filed his Chapter 13 Plan. *Id.*, Doc. 10. Payton, who had been unemployed for one year, was then hired as a laborer at NNI on October 17, 2013. ECF No. 180, SOFs No. 3, 7. On November 25, 2013, the Bankruptcy Court issued its Order Confirming Plan.[7] *In re Richard Payton*, Doc. 11. Payton filed an Amended Schedule F on January 9, 2014 updating the list of creditors who held unsecured nonpriority claims. *Id.*, Doc. 16. On April 23, 2014, the Trustee filed a Motion and Notice to Allow Claims, identifying the claims of creditors who had filed claims seeking distribution from the estate. *Id.*, Doc. 20. The Bankruptcy Court issued its Order Approving Claims on May 28, 2014. *Id.*, Doc. 21. On June 23, 2014, attorney Harris filed an Amended Motion to Dismiss Chapter 13 Case By Debtors, without prejudice, on the grounds that "the debtors no longer wish to proceed with their Chapter 13 Bankruptcy Case." *Id.*, Doc. 33. The Bankruptcy Court granted the Motion to Dismiss and dismissed the case without prejudice on July 29, 2014. *Id.*, Doc. 35. The Trustee issued his Final Report and Account on August 29, 2014. *Id.*, Doc. 39. The Final Report and Account showed that, during the pendency of the Chapter 13 Plan, $7,631.00 was disbursed to creditors and $3,489.00 was disbursed as Expenses of Administration. *Id.* The bankruptcy case was closed on September 5, 2014.

Payton left his employment at NNI on July 22, 2014. ECF No. 180, SOF No. 8. As of January 9, 2014, Payton believed he had been harassed and discriminated against by Supervisor Wayne Jackson and co-workers. *Id.*, SOF No. 95.[8] At no time during the pendency of his bankruptcy did Payton disclose his potential claims against NNI to the Bankruptcy Court or the

---

[7] The Plan required Payton to pay $1,112.00 per month for 60 months. *In re Richard Payton*, Doc. 11 at 1.

[8] Payton's response to NNI's Statement of Fact 95 states: "Disputed in Part" and then cites to the docket sheet for Payton's bankruptcy case. ECF No. 199, attach. 14 at 11 (citing ECF No. 210, attach. 1 at 13-18 (Ex. 113)). The bankruptcy docket sheet does not controvert or otherwise even address the fact that Payton believed he had been discriminated against at NNI in January 2014.

Trustee. *In re Richard Payton, passim.*

## III. ANALYSIS

### A.    Judicial Estoppel

NNI claims that Plaintiffs Marvin Smith, Keith Chisman, Naseer Marshall, Kevin Smith, and Richard Payton each filed for bankruptcy and failed to disclose their discrimination claims to the Bankruptcy Court. As a result, NNI contends that, having taken inconsistent stances in this litigation from those taken in their bankruptcy cases, these five Plaintiffs are barred from pursuing their discrimination claims by the doctrine of judicial estoppel. "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *Jon S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995). Accordingly, judicial estoppel exists to "prevent litigants from playing 'fast and loose' with the courts—to deter improper manipulation of the judiciary." *Folio v. City of Clarksburg, W. Va.*, 134 F.3d 1211, 1217 (4th Cir. 1998). The Fourth Circuit has established the following as necessary elements to apply judicial estoppel:

> (1) [T]he party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently.

*Id.* at 1217-18. "[A] debtor seeking shelter in a federal bankruptcy action has a continuing affirmative obligation to disclose all actual or potential legal claims to the Bankruptcy Court, because such claims constitute 'property of the estate' subject to the bankruptcy trustee's exclusive control." *Vanderheyden v. Peninsula Airport Comm'n*, No. 4:12CV46, 2013 WL 30065, at *11 (E.D. Va. Jan. 2, 2013). Finally, judicial estoppel "is invoked in the discretion of the District Court and with the recognition that each application must be decided upon its own

11

specific facts and circumstance." *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998). Thus, "a debtor may be precluded from pursuing claims about which [h]e was aware of, but did not disclose during the bankruptcy proceedings." *Haydu v. Tidewater Community College.* 268 F.Supp.3d 843, 848 (E.D. Va. 2017). For the reasons which follow, each of these five Plaintiffs should be judicially estopped from pursuing their claims in this Court based on their failure to disclose to the Bankruptcy Court their pending or potential claims for employment discrimination.

**B.     Marvin Smith**

With respect to this Plaintiff, all four factors delineated by the Fourth Circuit in *Folio* have been established. First, M. Smith's position in this case that he has a cause of action for employment discrimination is inconsistent with his position in bankruptcy, in which he never disclosed this unliquidated contingency claim as he was required to do. *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 512 (4th Cir. 2005) ("'[P]roperty of the estate' under [11 U.S.C.] § 541(a) has 'uniformly been interpreted to include causes of action.'"). By the time M. Smith joined this cause of action in May 2015, his plan had been confirmed by the Bankruptcy Court and he was on a payment plan. Eight months after he joined this litigation, the bankruptcy Trustee filed a Motion to Dismiss the bankruptcy case based on M. Smith's failure to make plan payments. The matter was settled and M. Smith was placed on another plan. Nonetheless, he still never notified the Trustee or the Bankruptcy Court that he was pursuing an employment discrimination claim. The fact that M. Smith did not began working at NNI until after he filed his voluntary petition in bankruptcy is irrelevant because an "estate" in bankruptcy includes "any interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). M. Smith's estate acquired an interest in his claim, certainly by the time

he joined this case as a Plaintiff in May 2015, while his bankruptcy was still pending. Failure to disclose to the Bankruptcy Court the claim in this lawsuit is inconsistent with pursuing such a claim in this Court because failure to disclose lawsuit to the Bankruptcy Court "constituted a representation to that court that no actual or potential legal claims existed." *Vanderheyden*, 2013 WL 30065, at *11.

Second, failure to disclose the existence of a claim is a representation of fact, not law. *Id. See also Robertson v. Flowers Baking Co., LLC*, 2012 WL 830097, *6, Case No. 6:11CV00013, (W.D. Va. Mar. 6, 2012).

Third, M. Smith's position in the bankruptcy litigation was accepted by the Bankruptcy Court when it approved a payment plan and subsequently made no modifications to that plan to reflect the existence of this asset. *See In re: Marvin Gaye Smith, passim.* M. Smith contends that, because his Chapter 13 bankruptcy was dismissed, the Bankruptcy Court neither "accepted" his prior position nor provided him any "benefit" of bankruptcy. ECF No. 200, attach. 3 at 14-15. This argument is without merit. M. Smith's Chapter 13 Plan was accepted when the Bankruptcy Court issued its Order Confirming the Chapter 13 Plan on March 12, 2014. *In re: Marvin Gaye Smith*, Doc. 20. That Plan delineated the payments M. Smith would have to make, and to which creditors. Had M. Smith disclosed his claim, it undoubtedly would have been incorporated in his Chapter 13 Plan resulting in higher payments to his creditors for the period of time when he was making payments on the Plan. Consequently, M. Smith secured that benefit—reduced payments based on reduced assets—because he did not disclose what he contends in this case is a substantial asset. *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (finding that failure to disclose a discrimination lawsuit filed after a Chapter 13 voluntary petition was filed warranted judicial estoppel, because, *inter alia*, the Bankruptcy Court

"accepted" plaintiff's position when it confirmed the Chapter 13 Plan "at least in part based on its assessment of her assets and liabilities"). Moreover, the Bankruptcy Court further accepted this representation—that M. Smith had no other assets—when it issued its Order Dismissing Case because of M. Smith's failure to comply with its prior Order settling the first motion to dismiss. *See Vanderheyden*, 2013 WL 30065, at *11.

With respect to the fourth prong, this criterion is met if the party intentionally misled the court for purposes of gaining unfair advantage. *Whitten v. Fred's, Inc.,* 601 F.3d 231, 241 (4th Cir. 2010), *abrogated on other grounds by Vance v. Ball State Univ.*, 570 U.S. 421 (2013). "This bad faith requirement is the determinative factor." *Id.* Here, the undisputed facts demonstrate that M. Smith acted intentionally, and not inadvertently, when he failed to make disclosure to the Bankruptcy Court. The *Vanderheyden* Court cogently set forth the analysis courts follow in determining whether this fourth factor is met. "[I]n the absence of direct evidence of intent to conceal, the Court will infer 'deliberate or intentional manipulation . . . from the record[ ] where the debtor has knowledge of the undisclosed claims and has motive for concealment.'" *Vanderheyden*, 2013 WL 30065, at *12 (citing *Barger v. City of Cartersville, Ga.,* 348 F.3d 1289, 1294 (11th Cir. 2003)). The *Vanderheyden* Court went on to observe that "[a] plaintiff has knowledge of undisclosed claims when she is aware of the factual basis of such claims." *Id.* (citing *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 785 (9th Cir. 2001)). Here, inasmuch as M. Smith joined the instant litigation as a party with the filing of the Second Amended Complaint on May 4, 2015, it cannot be disputed that he certainly had knowledge of this claim which he did not disclose to the Bankruptcy Court, despite the fact that his bankruptcy case was still pending and he was still making payments under the plan. Moreover, "a debtor seeking shelter in a federal bankruptcy action has a ***continuing affirmative obligation*** to disclose

14

all actual or potential legal claims to the Bankruptcy Court." *In re Bogdan,* 414 F.3d at 512 (emphasis added). This obligation includes "[a]ny interest in property that the estate acquires after the commencement" of a bankruptcy case." *Id.* (citing 11 U.S.C. § 541(a)(7) (defining a bankruptcy estate as including any property interest acquired "after the commencement of the case")).

In addition, the undisputed facts establish that M. Smith had a motive for concealment. Had M. Smith disclosed his pending employment discrimination action to the Bankruptcy Court, "it would have been placed in the bankruptcy estate, stripping [M. Smith] of standing to pursue such claims unless or until they were abandoned or exempted." *Vanderheyden,* 2013 WL 30065, at *13. Had this asset been included in the estate, it "would likely have increased the assets of such estate, which would have increased the assets available to [M. Smith's] creditors and deprived [him] of exclusive recovery on such claims." *Id.* A similar conclusion was reached by the court in *Robertson v. Flowers Baking Co., LLC,* which found a motive to conceal claims in a Chapter 13 bankruptcy action when "disclosure may have increased the amount of [the plaintiff's] assets, resulting in less favorable Chapter 13 payment plans." 2012 WL 830097, at *7. *See also Jethroe v. Omnova Sols., Inc.,* 412 F.3d 598, 601 (5th Cir. 2005) ("As the district court noted, Jethroe had an incentive to conceal her claims from creditors. Although her bankruptcy confirmation plan required her to pay approximately $9,000 of her $9,300 in secured debt, it did not require her to pay any of her unsecured debt of $8,373."). Simply stated, by failing to disclose the employment discrimination claim to the Bankruptcy Court, M. Smith deprived his creditors of the opportunity to have shared in the assets of his estate. Such conduct more than amply establishes a motive to conceal. *See Vanderheyden,* 2013 WL 30065, at *13 and cases cited therein.

Finally, the Court notes that Plaintiffs M. Smith, Chisman, Marshall, K. Smith, and Payton submitted a Notice of Supplemental Authority, ECF No. 291, to which NNI responded, ECF No. 292. The supplemental authority is a recent Eleventh Circuit decision, *Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017). In *Slater*, the Eleventh Circuit overruled prior precedent and adopted a stricter standard in applying judicial estoppel "when a plaintiff takes inconsistent positions by pursuing in district court a civil claim that he failed to disclose as an asset in his bankruptcy proceedings." *Id.* at 1176. In short, the Eleventh Circuit held

> when determining whether a plaintiff who failed to disclose a civil lawsuit in bankruptcy filings intended to make a mockery of the judicial system, a district court should consider all the facts and circumstances of the case. The court should look to factors such as the plaintiff's level of sophistication, his explanation for the omission, whether he subsequently corrected the disclosures, and any action taken by the Bankruptcy Court concerning the nondisclosure.

*Id.* at 1176-77. Rather than continue to follow Fourth Circuit precedent that requires a court to determine bad faith by evaluating whether the debtor has knowledge of the undisclosed claims and has a motive for concealment, M. Smith and his co-Plaintiffs invite the Court to adopt this more lenient standard, which, in effect, might excuse a deliberate concealment of a claim from the Bankruptcy Court if the debtor, once caught, corrected the nondisclosures.

This Court declines Plaintiffs' invitation. As the *Vanderheyden* Court persuasively noted,

> allowing a debtor to "back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them." . . . Such an approach would only diminish a debtor's incentive to provide a true and complete disclosure of her assets to the bankruptcy courts.

2013 WL 30065, at *14 (internal citations omitted).[9] The standards followed in the Fourth

---

[9] Ironically, one of these citations relied on by the *Vanderheyden* Court in this quotation—*Burnes v. Pemco*

Circuit for evaluating "bad faith" are much more workable and appropriate than the new standard

promulgated by the Eleventh Circuit.  As one District Court in New York has observed

> The rationale for these decisions [applying judicial estoppel] is that the integrity
> of the bankruptcy system depends on full and honest disclosure by debtors of all
> of their assets. The courts will not permit a debtor to obtain relief from the
> bankruptcy court by representing that no claims exist and then subsequently to
> assert those claims for his own benefit in a separate proceeding. The interests of
> both the creditors, who plan their actions in the bankruptcy proceeding on the
> basis of information supplied in the disclosure statements, and the bankruptcy
> court, which must decide whether to approve the plan of reorganization on the
> same basis, are impaired when the disclosure provided by the debtor is
> incomplete.

*Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996).   Adhering to the standards

discussed *supra* is the best way to prevent litigants "from playing 'fast and loose' with the

courts." *Folio*, 134 F.3d at 1217.

Consequently, the undersigned **FINDS** that the four factors enunciated by the Fourth

Circuit in *Folio,* 134 F.3d at 1217, have been met to establish judicial estoppel, and therefore

**RECOMMENDS** that Defendant NNI's Motion for Summary Judgment, ECF No. 113, be

**GRANTED** on this basis.

**C. Keith Chisman**

As with M. Smith, application of the same four *Folio* factors to Chisman's circumstance

necessitates a similar finding that judicial estoppel applies.  Chisman was represented by counsel

early in the litigation here, and, through counsel, notified NNI that he intended to sue for

employment discrimination in January 2013.   Nineteen months later, he filed for Chapter 7

bankruptcy, but did not list this claim as an asset in his voluntary petition.  Consequently, given

his knowledge at the time he filed for bankruptcy, the undisputed facts establish that Chisman

advanced a position in his bankruptcy filing—that he had no "contingent and unliquidated

---

*Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)—was one of the prior precedents overruled by the Eleventh
Circuit's decision in *Slater*.

claims"—that was inconsistent with the position he has taken with respect to this litigation—that he has a valid claim for employment discrimination. Thus, the first factor is met.

Second, as discussed with respect to M. Smith, *supra*, Chisman's position is a representation of fact, not law. *Vanderheyden*, 2013 WL 30065, at *11; *Robertson*, 2012 WL 830097, at *6.

Third, the prior position that Chisman had no contingent and unliquidated claims was accepted by the Bankruptcy Court when it discharged all of Chisman's debts following the Trustee's determination that no property was available for distribution. *Vanderheyden*, 2013 WL 30065, at *13.

Finally, as with M. Smith, the undisputed facts establish that Chisman acted intentionally, not inadvertently, because he had knowledge of the undisclosed claim and a motive for concealment. He was represented by counsel when his attorney sent a letter to NNI declaring an intention to sue for employment discrimination, thus knowledge of his claim must be presumed. Nonetheless, when Chisman subsequently filed for bankruptcy, he failed to list this claim in his Schedule B itemizing personal property, including claims of the sort presented in this litigation, while he was represented by a bankruptcy attorney. Further, his motive for concealing this claim in bankruptcy can be discerned by the advantage he obtained by gaining a discharge, such that his creditors, who knew nothing about this claim, were deprived of their opportunity to recover on this claim. Thus, all four *Folio* factors have been met, and judicial estoppel must bar Chisman's claim. *See Vanderheyden*, 2013 WL 30065, at *11-13 and cases cited therein. The undersigned therefore **RECOMMENDS** that Defendant NNI's Motion for Summary Judgment, ECF No. 127, be **GRANTED** on this basis.

**D. Naseer Marshall**

Applying the *Folio* factors to Marshall's case necessitates a finding that judicial estoppel applies. Marshall became a formal party to this litigation with the filing of the First Amended Complaint in February 2015. Seven months later, through his bankruptcy attorney, he filed for Chapter 7 bankruptcy, but failed to disclose his participation in the lawsuit in his voluntary petition. Consequently, given his knowledge that he was a party to litigation at the time he filed for bankruptcy, the undisputed facts establish that Marshall advanced a position in his bankruptcy filing—that he had no "contingent and unliquidated claims"—that was inconsistent with the position he has taken with respect to this litigation—that he has a valid claim for employment discrimination. Thus, the first factor is met.

Second, as noted, *supra*, Marshall's failure to disclose the existence of a claim is a representation of fact, not law. *Vanderheyden*, 2013 WL 30065, at *11; *Robertson*, 2012 WL 830097, at *6.

Third, the prior position that Marshall had no contingent and unliquidated claims was accepted by the Bankruptcy Court when it discharged all of Marshall's debts following the Trustee's determination that no property was available for distribution. *Vanderheyden*, 2013 WL 30065, at *13. Regardless of the fact that Marshall sought to subsequently rectify his failure to disclose, the Bankruptcy Court did accept Marshall's first misrepresentation, discharged Marshall, and closed his case. The case relied on by Marshall to disclaim "acceptance" is inapposite. In *Colluci v. Tysons Farms, Inc.*, No. 3:14CV397, 2014 WL 6879927, at *1 (E.D. Va. Dec. 4, 2014), the District Court denied the application of judicial estoppel because the Bankruptcy Court had yet to grant plaintiff relief or close his case. Colluci's bankruptcy was under Chapter 13, he had filed an amended Schedule B identifying his lawsuit as an asset, the

19

Bankruptcy Court had yet to confirm his Plan, and the case was still open. *Id.* Here, Marshall filed a Chapter 7 action, he was granted relief in the form of a discharge, and his case was closed. The fact that he has now reopened his bankruptcy case does not undo his conduct or the Bankruptcy Court's acceptance of his misrepresentation. Moreover, Marshall has still *not* submitted an Amended Schedule B identifying this lawsuit as an asset. *In re Marshall, passim.*

Fourth, the undisputed facts establish that Marshall acted intentionally, not inadvertently, because he had knowledge of the undisclosed claim and a motive for concealment. He was obviously represented by counsel when this employment discrimination lawsuit was filed, thus knowledge of his claim must be presumed when he subsequently filed for bankruptcy. Nonetheless, while represented by a bankruptcy attorney, he failed to list this claim in his Schedule B itemizing personal property, including claims of the sort presented in this litigation. And, his motive for concealing this claim in bankruptcy can be discerned by the advantage he obtained by gaining a discharge, such that his creditors, who knew nothing about this claim, were deprived of their opportunity to recover on this claim. Thus, all four *Folio* factors have been met, and judicial estoppel must bar Marshall's claim. *See Vanderheyden,* 2013 WL 30065, at *11-13 and cases cited therein.

Marshall, however, contends that his subsequent disclosure of this lawsuit to the Trustee, and the Trustee's action to re-open the bankruptcy and have attorney Freidman appointed, provides him shelter from judicial estoppel. Marshall argues that there has been no "final acceptance" by the Bankruptcy Court since the bankruptcy case has been re-opened, that his counsel in the instant discrimination case notified his bankruptcy counsel of this case before the bankruptcy case was closed, and that Marshall had no motive to conceal the employment discrimination claim because his attorneys have claimed it is exempt from bankruptcy. ECF No.

200, attach. 3 at 11-14. These arguments are unavailing.

In the first instance, the Bankruptcy Court accepted as true Marshall's representation that he had no unliquidated contingent claim, thereby leading it to discharge Marshall and closing the bankruptcy case. Marshall's stance in the Bankruptcy Court that he had no such claims was simply inconsistent with his pursuit of this employment discrimination case in this Court at the very the same time. The Bankruptcy Court was misled into discharging Marshall's case. Marshall now wants this Court to find that, even though he made a misrepresentation to the Bankruptcy Court, he should be excused under the "no harm, no foul" principle. "No harm, no foul," however, is not a principle available to Marshall here.

> [A]llowing a debtor to "back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them." . . . Such an approach would only diminish a debtor's incentive to provide a true and complete disclosure of [his] assets to the bankruptcy courts.

*Vanderheyden*, 2013 WL 30065, at *14 (citations omitted). Marshall argues that "[t]he only 'winner' in accepting judicial estoppel would be NNI." ECF No. 200, attach. 3 at 13. Such an argument seriously misapprehends the purpose of judicial estoppel in this context. Estoppel is applied not because *NNI* has been harmed by Marshall's failure to disclose this pending action to the Bankruptcy Court and therefore NNI is entitled to "win." Judicial estoppel is applied because ***Marshall's creditors and the judicial system*** were harmed. *See Folio*, 134 F.3d at 1217 ("Judicial estoppel is an equitable doctrine that exists to prevent litigants from playing 'fast and loose' with the courts—to deter improper manipulation of the judiciary."); *John S. Clark Co.*, 65 F.3d at 29 ("The purpose of the doctrine is to prevent a party 'from playing 'fast and loose' with the courts, and to protect the essential integrity of the judicial process.'"); *Allen v. Zurich Ins.*

*Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982) ("'Judicial estoppel' is invoked in these circumstances to prevent the party from 'playing fast and loose' with the courts, and to protect the essential integrity of the judicial process.").

Marshall also appears argue that he did not intend to conceal his discrimination claim from the Bankruptcy Court because his employment discrimination lawyer notified his bankruptcy lawyer of the discrimination claim before the bankruptcy was closed. ECF No. 200, attach. 3 at 11-12; ECF No. 201, attach. 1 at 7. There are two problems with this argument. First, Marshall's obligation to disclose his assets is not satisfied when one of Marshall's lawyers, acting on Marshall's behalf discloses the existence of assets to Marshall's other attorney. Rather, Marshall's obligation is to disclose his assets *to the Bankruptcy Court*, and it is undisputed he did not make this disclosure before his case was closed. Second, as discussed *supra*, the failure to disclose is not automatically cured just because a debtor "comes clean" after the fact. *Vanderheyden*, 2013 WL 30065, at *14. In any event, Marshall gets no credit for candor to the Bankruptcy Court because, even as of the date of this Report and Recommendation, he has *still* failed to proffer an Amended Schedule B disclosing this discrimination lawsuit. *In re Naseer Marshall, passim.*

Marshall further argues that he had no motive to conceal because he was entitled to the Personal Injury Exemption under Va. Code Ann. § 34-28.1. ECF No. 200, attach. 3 at 12-13. Regardless of whether such an exemption applies, and given Marshall's prayer in the Second Amended Complaint for back pay and front pay (ECF No. 15 at 236), this is a real question. The Court notes that Marshall has failed to update his bankruptcy action by filing an Amended Schedule B to disclose the discrimination claim and request the exemption. Consequently, the

question of a potential exemption is wholly speculative.[10]

As one Court in this District has noted, however, even if the debtor is estopped from asserting a claim in District Court, the Trustee would not necessarily be estopped: "[i]n general, 'an innocent trustee can pursue for the benefit of creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy.'" *Haydu*, 268 F.Supp.3d at 848 (citing *Reed v. City of Arlington*, 650 F.3d 571, 573 (5th Cir. 2011); *Reynolds v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272–73 (11th Cir. 2004)). Indeed, the Trustee here has sought and obtained the appointment of Mr. Friedman to represent the bankruptcy estate in pursuing this claim. Such action, however, is not sufficient to forestall the imposition of judicial estoppel here. "When the Plaintiff filed for bankruptcy, [his] discrimination claims became the property of the bankruptcy estate." *Haydu*, 268 F.Supp.3d at 848 (citing 11 U.S.C. § 541(a)(1); *Reed*, 650 F.3d at 575). "At that time, the trustee became the real party-in-interest and had the capacity to sue on behalf of the estate." *Id.* (citing 11 U.S.C. § 323(b); *Reed*, 650 F.3d at 575). The *Haydu* Court found that the trustee, who had filed a Motion to Intervene in the discrimination action, should be substituted as the real party-in-interest because to impose judicial estoppel "would be inconsistent with the bankruptcy code's objectives, because it would harm Plaintiff's creditors." 268 F.Supp.3d at 848. Here, however, the Trustee has not filed a motion to intervene, despite the fact he obtained the appointment of Mr. Friedman as his counsel on September 16, 2016, more than sixteen months ago. *In re Naseer Marshall*, Doc. 28. In *Vanderheyden*, the District Court approved giving the Trustee a reasonable time to decide whether to file a Motion to Intervene. 2013 WL 30065, at *10. Rule 17(a)(3) of the Federal Rules of Civil Procedure provides that the Court should allow

---

[10] The Court notes that co-Plaintiff K. Smith, who has asserted similar discrimination claims as Marshall in this case, and who also was discharged in Chapter 7 bankruptcy before reopening his case to disclose this lawsuit as an asset, filed an Amended Schedule B/C disclosing the lawsuit and claiming the Personal Injury Exemption, but he subsequently withdrew the claim for exemption after the Trustee filed a second motion for extension of time within which to object to the exemption. *See* Part II.E, *supra*.

"a reasonable time" for the real party-in-interest to join or be substituted into the action. The Trustee here had more than a reasonable time to move to intervene—at least sixteen months--but has chosen not to. Accordingly, there is an insufficient basis to forestall the imposition of judicial estoppel. The undersigned therefore **RECOMMENDS** that Defendant NNI's Motion for Summary Judgment, ECF No. 137, be **GRANTED** on this basis.

### E. Kevin Smith

Applying the *Folio* factors to K. Smith's case also necessitates a finding that judicial estoppel applies. First, by his bankruptcy attorney's Motion to Reopen Bankruptcy Case wherein he acknowledged that the discrimination claim should have been disclosed as a potential asset, K. Smith has admitted to advancing an assertion in the instant litigation that is inconsistent with a position taken during his bankruptcy action. *In re: Kevin Smith*, Doc. 15 at 2. Specifically, K. Smith did not disclose the employment discrimination claim he asserts in this Court to the Bankruptcy Court when he filed his voluntary petition in bankruptcy under Chapter 7 without identifying the discrimination claim as a potential asset. Simply stated, denying one possesses an unliquidated contingency claim in one court and asserting such a claim in another are inconsistent stances. Thus, the first *Folio* factor is met.

Second, as noted, *supra*, K. Smith's failure to disclose the existence of a claim is a representation of fact, not law. *Vanderheyden*, 2013 WL 30065, at *11; *Robertson*, 2012 WL 830097, at *6.

Third, K. Smith's previous position that he had no contingent and unliquidated claims was accepted by the Bankruptcy Court when it discharged all of K. Smith's debts following the Trustee's determination that no property was available for distribution. *Vanderheyden*, 2013 WL 30065, at *13. Regardless of the fact that K. Smith sought to subsequently rectify his failure to

24

disclose, the Bankruptcy Court did accept K. Smith's first misrepresentation, discharged K. Smith, and closed his case.  As with Marshall, the case relied on by K. Smith to disclaim "acceptance" is inapposite.  In *Colluci v. Tysons Farms, Inc.*, No. 3:14CV397, 2014 WL 6879927, at *1 (E.D. Va. 2014), the Court denied the application of judicial estoppel because the Bankruptcy Court had yet to grant plaintiff relief or close his case.  Colluci's bankruptcy was under Chapter 13, he had filed an Amended Schedule B identifying his lawsuit as an asset, the Bankruptcy Court had yet to confirm his Plan, and the case was still open.  *Id.*  Here, K. Smith filed a Chapter 7 action, he was granted relief in the form of a discharge, and his case was closed. The fact that he has now reopened his bankruptcy case does not undo his conduct or the Bankruptcy Court's acceptance of his misrepresentation.

Fourth, the undisputed facts establish that K. Smith acted intentionally, not inadvertently, because he had knowledge of the undisclosed claim and a motive for concealment.  Regarding knowledge of the claim, the undisputed facts establish that K. Smith was aware of his discrimination claim, as he admitted that at the time he filed his bankruptcy petition he believed he had been discriminated against by NNI.  Moreover, he was aware of his obligation to disclose this claim at the time his bankruptcy action was originally pending.  This is evidenced by the representations his bankruptcy attorney made to the Bankruptcy Court.  When K. Smith moved to re-open his bankruptcy case after he had already received his discharge, attorney Zooberg represented to the Bankruptcy Court in that Motion: "[n]onetheless, as the alleged actions identified by the defendant that gave rise to Mr. Smith's cause of action occurred pre-petition, this cause of action should have been disclosed as a potential asset in the bankruptcy filing." *In re Kevin Smith*, Doc. 15 at 2.

Furthermore, the material facts regarding K. Smith's motive for concealment are not in

dispute. K. Smith obtained an advantage by gaining the Chapter 7 discharge, so that his creditors, who knew nothing about this claim, were deprived of their opportunity to recover on this claim. Thus, all four *Folio* factors have been met, and judicial estoppel must bar K. Smith's claim. *See Vanderheyden*, 2013 WL 30065, at *11-13 and cases cited therein.

As did Marshall, K. Smith argues that his belated reopening of his bankruptcy case absolves him of the impact of judicial estoppel. But as was Marshall, he is incorrect. K. Smith knew he had a discrimination claim against NNI when his attorney threatened to sue in January 2013, and when he filed for bankruptcy on August 1, 2014. He received his discharge and his bankruptcy case was closed in November 2014. Twenty months later, on August 5, 2016 (eighteen months after he filed the First Amended Complaint in this case) his bankruptcy attorney approached the Bankruptcy Court to re-open K. Smith's case. The Motion to Reopen was granted, Trustee Ruby was appointed, and K. Smith filed his Amended Schedules disclosing this lawsuit and claiming the Personal Property Exemption. Following the Trustee's motions indicating the Trustee was considering objecting to the exemption, K. Smith withdrew it on May 25, 2017. To date, the Trustee has not moved to intervene in this case.

Since K. Smith made the same arguments as did Marshall, the same analysis applies. *See* Part III.D, *supra*. K. Smith's inconsistent stance was "accepted" by the Bankruptcy Court when it discharged K. Smith from bankruptcy. Reopening the bankruptcy proceeding for a "do-over" "would only diminish a debtor's incentive to provide a true and complete disclosure of [his] assets to the bankruptcy courts." *Vanderheyden*, 2013 WL 30065, at *14. Additionally, inasmuch as K. Smith withdrew his claim for an exemption, he may not even argue that the exemption somehow vitiated his motive to conceal. Further, as discussed *supra*, any potential discrimination claim would be the property of the bankruptcy estate, entrusted to the Trustee to

pursue, not K. Smith. *See Haydu*, 268 F.Supp.3d 843. Plainly, the Trustee has declined to intervene in this case, as he was appointed more than one year ago, on October 19, 2016, but has taken no action under Fed. R. Civ. P. 17. The reasonable opportunity to decide to intervene has long since passed. *See Vanderheyden*, 2013 WL 30065, at \*10. Accordingly, judicial estoppel must be found to bar K. Smith's cause of action, and the undersigned thus **RECOMMENDS** that Defendant NNI's Motion for Summary Judgment, ECF No. 157, be **GRANTED**.

### F. Richard Payton

Finally, as with the other four Plaintiffs who failed to disclose their employment discrimination claims to the Bankruptcy Court, applying the *Folio* factors to Payton's case also necessitates a finding that judicial estoppel applies. First, Payton filed for Chapter 13 bankruptcy on August 22, 2013. Less than two months later, he began working at NNI. On November 25, 2013, the Bankruptcy Court approved Payton's Chapter 13 Plan requiring him to pay $1,120.00 per month to the Trustee for payment to Payton's creditors. By January 9, 2014, Payton believed he had been discriminated against by NNI, but never sought to submit an Amended Schedule B – Personal Property, to his voluntary petition in order to disclose this asset. Therefore, given his "continuing affirmative obligation to disclose all actual or potential legal claims to the bankruptcy court," the undisputed facts establish that Payton advanced an assertion in the District Court—that he had a meritorious discrimination claim—that was inconsistent with a position he took in the bankruptcy case—that he had no such claim. *In re Bogdan,* 414 F.3d at 512. Stated another way, because Payton did not amend his Schedule B – Personal Property to disclose his discrimination claim, as he was obligated to do once he was aware of it in January 2014 while his bankruptcy was ongoing, he took a stance in Bankruptcy Court that was inconsistent with his position in the District Court. Hence, the first *Folio* factor is met.

27

Second, as noted, *supra*, Payton's failure to disclose the existence of a claim is a representation of fact, not law. *Vanderheyden*, 2013 WL 30065, at *11; *Robertson*, 2012 WL 830097, at *6.

Contrary to Payton's contention, the Bankruptcy Court accepted Payton's position that he had no unliquidated contingency claims because it approved his Chapter 13 Plan and never made any adjustments to it based on the potential cause of action against NNI.  As did M. Smith, who also proceeded in bankruptcy under Chapter 13, Payton contends that, because his Chapter 13 bankruptcy was dismissed, the Bankruptcy Court neither "accepted" his prior position nor provided him any "benefit" of bankruptcy.  ECF No. 200, attach. 3 at 14-15.  Similarly, this argument is without merit.  Payton's Chapter 13 Plan was accepted when the Bankruptcy Court issued its Order Confirming the Chapter 13 Plan on November 25, 2013. *In re: Richard Payton*, Doc. 11.  That Plan delineated the payments Payton would have to make, and to which creditors.  Had Payton disclosed his claim at any time after he became aware of it, it undoubtedly would have been incorporated in his Chapter 13 Plan, resulting in higher payments to his creditors for the period of time when he was making payments on the Plan.  Consequently, Payton secured that benefit—reduced payments based on reduced assets—because he did not disclose what he contends in this case is a substantial asset. *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (finding that failure to disclose a discrimination lawsuit filed after a Chapter 13 voluntary petition was filed warranted judicial estoppel, because, *inter alia*, the Bankruptcy Court "accepted" plaintiff's position when it confirmed the Chapter 13 Plan "at least in part based on its assessment of her assets and liabilities").

Finally, as with the other four Plaintiffs discussed herein, the undisputed facts establish that Payton acted intentionally, not inadvertently, because he had knowledge of the undisclosed

claim and a motive for concealment. His knowledge of the claim is established by his admission that he was aware he had been discriminated against by NNI while his bankruptcy action was ongoing, merely six weeks after the Bankruptcy Court approved his Chapter 13 Plan, and he was in the process of making monthly payments for the benefit of his creditors. Thus, Payton had knowledge of the undisclosed claim because he was aware of the factual basis for the claim. *See Vanderheyden*, 2013 WL 30065, at *11; *Hamilton*, 270 F.3d at 785. Under the Bankruptcy Code, property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). A potential legal claim is considered property of the bankruptcy estate. *In re Brogdon*, 414 F.3d at 512. Therefore, Payton's discrimination claim, as a potential legal cause of action, became the property of his bankruptcy estate when he became aware of it no later than January 9, 2014, and he was obligated to disclose it to the Bankruptcy Court.

Payton's motive to conceal is also established by the undisputed facts. As with M. Smith. had Payton disclosed his pending employment discrimination action to the Bankruptcy Court, "it would have been placed in the bankruptcy estate, stripping [Payton] of standing to pursue such claims unless or until they were abandoned or exempted." *Vanderheyden,* 2013 WL 30065, at *13. Had this asset been included in his bankruptcy estate, it "would likely have increased the assets of such estate, which would have increased the assets available to [Payton's] creditors and deprived [him] of exclusive recovery on such claims." *Id.; accord Robertson*, 2012 WL 830097, at *7 (finding a motive to conceal claims in a Chapter 13 bankruptcy action when "disclosure may have increased the amount of [the plaintiff's] assets, resulting in less favorable Chapter 13 payment plans"); *Jethroe,* 412 F.3d at 600. By failing to disclose the employment discrimination claim to the Bankruptcy Court, Payton deprived his creditors of the opportunity to share in the

assets of his estate. Such conduct more than amply establishes a motive to conceal. *See Vanderheyden,* 2013 WL 30065, at *13 and cases cited therein.

As a result, judicial estoppel must be found to bar Payton's cause of action, and the undersigned thus **RECOMMENDS** that Defendant NNI 's Motion for Summary Judgment, ECF No. 179, be **GRANTED**.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** Defendant NNI's Motion for Summary Judgment regarding Marvin Smith, ECF No. 113, be **GRANTED**; Defendant NNI's Motion for Summary Judgment regarding Keith Chisman, ECF No. 127, be **GRANTED**; Defendant NNI's Motion for Summary Judgment regarding Naseer Marshall, ECF No. 137, be **GRANTED**; Defendant NNI's Motion for Summary Judgment regarding Kevin Smith, ECF No. 157, be **GRANTED**; and Defendant NNI's Motion for Summary Judgment regarding Richard Payton, ECF No. 179, be **GRANTED**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of

this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiffs and Defendant NNI.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
February 12, 2018