IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JAMESINA CRAWFORD, *et al.*,   )
            )
  Plaintiffs,      )
            )
v.            )  CIVIL ACTION NO. 4:14-cv-130
            )
NEWPORT NEWS INDUSTRIAL  )
CORPORATION,      )
            )
  Defendant.      )
            )

## REPORT AND RECOMMENDATION

A Second Amended Complaint was filed in this Court on May 4, 2015 by thirty-eight Plaintiffs against Defendant Newport News Industrial Corporation ("NNI"). ECF No. 15. The Second Amended Complaint asserts various claims of employment discrimination, retaliation, and hostile work environment by welders, fitters, and laborers employed at or by NNI. NNI filed separate Motions for Summary Judgment against thirty-seven Plaintiffs.[1]  Before the Court in this Report and Recommendation is NNI's Motion for Summary Judgment and accompanying memorandum against Plaintiff Donyelle Pierce ("Pierce"), ECF Nos. 171, 172.[2]  Pierce asserted claims under 42 U.S.C. § 1981 for disparate treatment based on race, constructive discharge based on race,[3] and retaliation. ECF No. 15. NNI's Motion was based on several grounds, including that Pierce's claims are not timely, and thus are barred by the statute of limitations, and that the undisputed material facts do not provide support for any of Pierce's claims. In response,

---

[1] On January 5, 2016, the parties stipulated to the dismissal of one Plaintiff. ECF No. 56.
[2] The Court addresses the summary judgment motions with respect to other Plaintiffs in separate Reports and Recommendations.
[3] This claim has since been abandoned. *See* Section III.B., *infra*.

Pierce submitted a "Response to Defendant's Rule 56(B) Statement."[4]  ECF No. 199, attach. 15. In addition, pertinent to Pierce's claims, all Plaintiffs submitted joint global memoranda in opposition on the subjects of disparate treatment, ECF No. 200, attach. 1, retaliation and termination, *id.*, attach. 2, and hostile work environment, ECF No. 201.  NNI submitted a reply memorandum.  ECF No. 263.  This matter was then referred to the undersigned United States Magistrate Judge ("the undersigned") from the United States District Judge.  28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72.  The matter is now ripe for recommended disposition and the undersigned disposes of the Motion on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J),

## I. STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when the Court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Scott v. Harris*, 550 U.S. 372, 378 (2007).  A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To defeat a motion for summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings and instead rely upon affidavits, depositions, or other evidence to show a genuine issue for trial.  *See id.* at 324.  Conclusory statements, without specific evidentiary support, are insufficient.  *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998).  Rather, "there must be

---

[4] This pleading responds to Defendant's statement of facts, and includes additional facts which Pierce avers demonstrate material facts in dispute.

evidence on which the jury could reasonably find for the [party]." *Anderson*, 477 U.S. at 252. Ultimately, cases are not to be resolved on summary judgment where "the depositions [and affidavits] of principal witnesses present conflicting versions of the facts which require credibility determinations." *Nilson v. Historic Inns Group, Ltd.*, 903 F. Supp. 905, 909 (D. Md. 1995) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986)).

## II.  LEGAL STANDARD

### A.    Count I: § 1981 Hostile Work Environment

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "Because an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 354 (4th Cir. 2013) (internal quotation marks and citation omitted).  Plaintiffs in this case have brought suit for a hostile work environment based upon their race under 42 U.S.C. § 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right...to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

The Fourth Circuit has recognized that employees can bring suit against their employers for a racially hostile work environment under § 1981 and that the same test used for Title VII cases also applies. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001).  A "discriminatorily hostile or abusive work environment" occurs "[w]hen the workplace is

3

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). For Plaintiffs to survive NNI's Motion for Summary Judgment, they must set forth evidence upon which a reasonable jury could rely to find NNI created a hostile work environment, through its agents, by showing the following elements: "(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011); *see also, Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015).

Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment. *See Faragher v. Boca Raton,* 524 U.S. 775, 786–87, and n.1 (1998); *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 66–67 (1986).

**B.    Count II: § 1981 Disparate Treatment**

"The framework of proof for disparate treatment claims—that is, whether the employer intentionally discriminated against the employee—is the same for actions brought under Title VII, or § 1981, or both statutes." *Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908, 910 (4th Cir. 1989); *see also, Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). Plaintiffs must either demonstrate direct evidence of race discrimination or follow the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679, 693 (D. Md. 2000). Generally, absent direct evidence of discrimination, to establish a claim for disparate treatment, a plaintiff must show (1) he is a member of a protected class; (2) who suffered an adverse employment action; (3) while

4

he performed his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (citing *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252 (1981); *McDonnell Douglas*, 411 U.S. at 807)).

Specifically, here, Pierce alleges disparate treatment in pay.[5] To establish a *prima facie* case for a pay disparity claim, Pierce must show the following: (1) that he is a member of a protected class; (2) he was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job. *Davis v. S.C. Dep't of Health & Envtl. Control*, No. 3:13-CV-02612-JMC, 2015 WL 5616237, at * 3 (D.S.C. Sept. 24, 2015); *see also*, *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994).

## C.    Retaliation

To prevail on a claim of retaliation under § 1981, Pierce must prove a three-part prima facie case: "(1) the plaintiff 'engaged in a protected activity'; (2) 'the employer took a materially adverse action against' the plaintiff; and (3) a causal link 'between the protected activity and the adverse action.'" *Emami v. Bolden*, 241 F. Supp. 3d 673, 680–81 (E.D. Va. 2017) (quoting *Mascone v. Am. Physical Soc'y, Inc.*, 404 F. App'x 762, 765 (4th Cir. 2010)). *See also Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 824 (E.D. Va. 2016), *motion to certify appeal denied*, No. 3:15CV569, 2016 WL 3922053 (E.D. Va. July 20, 2016) (observing that "[a]s with discrimination claims, retaliation claims may proceed under the direct method or under the prima

---

[5] Although Pierce asserted also claims of disparate treatment in training, promotion and work assignments, he abandoned these discrete claims during the briefing on his motion because he did not address NNI's refutation of these claims, although he asserts that his evidence of disparate training and work assignments constitute part of his hostile work environment claim. *See* ECF No. 200, attach. 1 at 55 ("His disparate assignments and training claims are part of this hostile work environment, are timely as part of a continuing violation, and are treated in his discussion of that claim."). *See also Westry v. N. Carolina AT & T State Univ.*, 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003), *aff'd*, 94 F. App'x 184 (4th Cir. 2004) (finding that plaintiff waived a claim by failing to address defendant's refutation of it in its motion for summary judgment).

facie method") (citing *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015); *Lee v. Wade*, No. 3:15CV37, 2015 WL 5147067, at *4 (E.D. Va. Aug. 31, 2015)).

Importantly, unlike an "adverse employment action" in the discrimination context, which requires an ultimate employment action affecting the terms and conditions of employment, a "materially adverse action" such as required for a retaliation claim requires only such action as might deter a reasonable employee from making or supporting a charge of discrimination. *See, e.g., Mascone*, 404 F. App'x at 765 (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). In addition, since the *McDonnell Douglas* burden shifting scheme applies to retaliation claims as well, "[o]nce Plaintiffs establish this prima facie case, the Defendant may rebut by offering a legitimate nonretaliatory reason for the adverse action." *Derrickson*, 84 F. Supp. 2d at 694 (citing *Williams v. Cerebonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). "[A]fter Defendant offers a nonretaliatory reason, the burden of proof rests with Plaintiff[] to establish by a preponderance of the evidence that the proffered reason is pretextual and the real reason for the action was retaliatory." *Id.* (citing *Williams*, 871 F.2d at 457).

**D.    § 1981 Statute of Limitations**

Claims arising under § 1981 are governed by the four year federal statute of limitations. *Jones v. R.R. Donnelly & Sons, Co.*, 541 U.S. 369, 382 (2004). Claims for hostile work environment, disparate treatment and retaliation brought under § 1981 are all subject to this limitations period. *Id.*; *White v. BFI Waste Servs., LLC*, 375 F.3d 288 (4th Cir. 2009). Claims of disparate treatment and retaliation, because they consist of discrete acts of discrimination or retaliation, must have occurred within four years of the date of suit or they are untimely. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). A hostile work environment claim, on the other hand, "will not be time barred so long as all acts which

6

constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." In other words, a plaintiff may rely on and recover for "acts occurring beyond [the four year statute of limitations] period, as long as at least a portion of the hostile work environment occurred within the relevant limitations period." *White*, 375 F.3d at 293. Those acts outside the relevant limitations are considered part of a "continuing violation" and thus may be considered. *Morgan*, 536 U.S. at 122.

### III. DISCUSSION

**A.    Undisputed Material Facts[6]**

NNI provides fabrication, construction, equipment repair, and technical services to energy and petrochemical companies, and engages in commercial nuclear work. ECF No. 172, SOF No. 1. NNI employs hourly workers such as welders, fitters, and laborers. *Id.*, SOF No. 2. They report to a foreman, who, in turn, reports to a superintendent. *Id.* Superintendents report to the Operations Manager, who has overall responsibility for operations at NNI. *Id.* NNI hired Pierce on April 13, 2010 as a temporary, hourly fitter, earning $18 per hour, and he was satisfied with that pay rate. *Id.*, SOF No. 3. Pierce understood that one of NNI's policies provided that temporary employees would be hired for eleven months before being laid off for a period of time, and then could be rehired back. *Id.*, attach. 3 at 5.

During the time he was employed at NNI, Pierce was supervised by Wayne Jackson (Caucasian), Doug McKercher (Caucasian), Keven Angle (Caucasian), and Calvin (last name unknown) (African American). *Id.*, SOF No. 4. Between June 7, 2010 and November 29, 2010

---

[6] Pursuant to Fed. R. Civ. P. 56 and E.D. Va. Local Civil Rule 56, the Court will rely on Defendant's Statement of Material Facts ("SOF") where admitted by Pierce, or, if only admitted in part, just that part of the SOF so admitted. The Court notes that many of Defendant's SOFs are "Disputed in part" by Pierce, who then either adds additional facts of his own, or purports to dispute the fact to the extent it "implies" a particular conclusion. Facts are either admitted or not; to the extent they "imply" any particular conclusion is argument, and the Court will treat such response by Pierce accordingly. *See* E.D. Va. Loc. Civ. R. 56(B).

7

Pierce's supervisors gave him four very favorable reviews, and four pay increases following his 30-60-90-110 day reviews. *Id.*, SOF No. 5 and attach. 5. Pierce's pay rate was increased by $.50 per hour in June 2010 raising his pay rate to $18.50 per hour. *Id.*, SOF No. 5. His pay rate was increased by $1 per hour in July 2010 raising his pay rate to $19.50 per hour. *Id.* His pay rate was increased by $.50 per hour in September 2010 raising his pay rate to $20 per hour. *Id.* His pay rate was increased by $1.25 per hour in November 2010 raising his pay rate to $21.25 per hour. *Id.*

Pierce was assigned to the "Pin Jig" project in the Fall of 2010 for one to two months. *Id.*, SOF 61 and attach. 3 at 52. Daniel Cummings was hired into a permanent fitter position in 2010. *Id.*, SOF No. 68; ECF No. 199, attach. 15, SOF No. 68. Jackson and Jaffeux provided training for Cummings in welding, which Pierce did not need. ECF No. 172, SOF Nos. 64, 66.

Pierce testified in his deposition as to the events which occurred during his tenure at NNI that he considered unwelcome conduct based on his race and which, he contends, were sufficiently severe or pervasive to alter his conditions of employment and to create an abusive work environment. Apart from his pay claim, these incidents included the following: Jackson permitted Confederate flags to be displayed inside the shop; a white employee—Daniel Cummings—was treated more favorably by Jackson vis-à-vis pay and placement in a permanent position; Jackson too closely monitored his work; Jackson said once that he was not a racist because someone in his family is married to a black person; a white employee addressed him in the parking lot as "50 Cent"; he saw the confederate flag displayed on tee shirts and on a bandana of a white worker; a white worker—Tom Castle—told racist jokes in Pierce's presence; when he complained about Castle to Jaffeux, Jaffeux told him to "stop crying like a little bitch"; Jaffeux called him "a crybaby"; Pierce was assigned to work the "Pin Jig" project for about two

months in the Fall of 2010, and felt this was discriminatory because a majority of the workers there were black and the work was outside; he was assigned to work under Calvin in the Main Building which involved performing tasks outside his scope of work.  ECF No. 172, attach. 3; ECF No. 202, attach. 1, at 2211-94.[7]

On April 1, 2011, Pierce was laid off.  *Id.*, SOF No. 11.  Two to three months before then, he was reassigned to work under Calvin in the Main Building at NNI or offsite at Newport News Shipyard working on the floating drydock.  ECF No. 202, attach. 1 at 2247-51.  None of the complaints he identified as constituting a hostile work environment went on while he worked under Calvin.  ECF No. 202, attach. 1 at 2247-51; ECF No. 142, attach. 2 at 8.[8]

Pierce joined this lawsuit with the filing of the First Amended Complaint on February 11, 2015.  ECF No. 7.

**B.      Claims Asserted**

In the Second Amended Complaint, Pierce asserted three claims: Count I asserted a claim for hostile work environment (relying on factual averments in ¶¶666-80); Count II asserted a claim for disparate treatment based on race, specifically with respect to pay and assignments (relying on factual averments in ¶¶ 681-85); Count III asserted a claim for retaliation, based on a work transfer (relying on ¶¶ 686-87); and Count IV asserted a claim for termination/constructive discharge (relying on hostile work environment allegations, ¶¶ 666-80, 688).

With respect to the disparate treatment claim, as noted *supra*, Pierce abandoned his claim for disparate training and work assignments, although he still seeks to rely on those events to establish hostile work environment.  In addition, Pierce has abandoned his termination claim, as

---

[7] This citation is to the different Pierce deposition excerpts NNI and Pierce each submitted as an exhibit.  Sometimes the excerpts overlapped, often they did not.  *See* n.8, *infra*.  This incomplete proffer of evidence made the Court's task in reviewing the evidence more difficult than it needed to be.
[8] Of the relevant pages of this testimony, NNI proffered pages 122-124, and Pierce proffered pages 120-122 and 124-125.  *See* n.7, *supra*.

he admitted he was not constructively discharged, and does not contest that NNI laid him off in the course of business, and that NNI regularly did this to temporary employees of all races. ECF No. 172, SOF No. 71.

Consequently, the remaining claims for the Court to analyze are Pierce's disparate hostile work environment and disparate pay claims.

## C.     Hostile Work Environment

NNI has asserted a number of defenses arguing that Pierce cannot avoid summary judgment on this claim, including that Pierce cannot prove a continuing violation and thus his claim is time barred. NNI argues that no conduct occurring after February 11, 2011 is similar in nature or frequency to that alleged prior to Pierce's transfer to work under Calvin, and that Pierce's knowledge in 2010 that he was being harassed put him on notice that he should have filed suit within the four year statute of limitations. *See* ECF No. 172 at 15-18; ECF No. 263 at 8-10. NNI also argues that the conduct he identifies as racially hostile acts is insufficiently severe and pervasive to alter the conditions of employment, and that none of the conduct alleged is imputable to NNI. *See* ECF No. 172 at 18-25; ECF No. 263 at 10-14. Pierce argues at length that the continuing violation doctrine applies to save his claim, but notably does not identify any specific racially hostile act which occurred within the limitations period. *See* ECF No. 201, attach. 1 at 186-89. Because the Court finds that this claim is time barred, the Court will only address that defense.

To establish a claim for hostile work environment sufficient to avoid summary judgment, Pierce is required to establish that some racially hostile act occurred within the statutory limitation period. *Morgan*, 536 U.S. at 122, *supra*; *White*, 375 F.3d at 292-93. If he is able to do so, then any similar acts occurring outside the limitations period may be considered in

10

determining whether a hostile work environment existed as part of a continuing violation. *Morgan*, 536 U.S. at 122; *White*, 375 F.3d at 292-93.  Pierce filed his suit on February 11, 2015, so in order for this Court to consider his claim, he must assert material facts establishing that he was subject to racially hostile actions between February 11, 2011 and the time he was laid off from NNI on April 1, 2011.  By his own testimony, Pierce's claim fails.  Pierce testified that he was transferred to work under Calvin in the Main Building two to three months before he was laid off, meaning the transfer necessarily occurred sometime in January 2011, prior to the limitations period.  After he transferred to Calvin's supervision, he could not recall experiencing any discriminatory or racially hostile acts.  After listing each of the categories of racially hostile acts he experienced at NNI during his tenure, Pierce testified as follows:

> Q: ...So the hourly [employees'] comments, supervisor comments about your complaints, confederate flags, and then the retaliation, right? Were any of those things, other than the retaliation component, going on when you worked under Calvin – the hourly comments, the supervisor comments, or the confederate flags?
> A: Not that I – I cannot recall any comments being made while I was working for Mr. Calvin at this time.
> Q: Do you recall seeing confederate flags during the time period you worked under Mr. Calvin?
> A: I worked in a different building.  So I don't recall seeing confederate flags while I worked for Mr. Calvin.

ECF No. 172, attach. 3 at 8-9.  Each of the specific racially hostile incidents Pierce testified to in his deposition occurred prior to his supervision by Calvin, generally involving either Jackson or Jaffeux and coworkers at the time he was supervised by them.  He pointed to no incident that occurred after February 11, 2011.  Absent any conduct within the statutory time period, Pierce may not rely on events or incidents occurring prior to February 11, 2011 under the continuing violation doctrine.  Consequently, Pierce cannot establish a claim for hostile work environment that is not time barred.

Although he cites no specific incident in any of his briefing, Pierce attempts to salvage his claim by citing to NNI's Memorandum in Support of its Motion for Summary Judgment, presumably expecting the Court to discern what evidence may be found in NNI's legal argument: "[i]mportantly, NNI does not assert that there are <u>no</u> timely constituent acts." ECF No. 201, attach. 1 at 189 (citing "Dkt. 172, p. 18 (Pierce discrimination after February 2011)") (emphasis in original). As best the Court can determine, Pierce is referring to this statement by NNI: "those who allegedly discriminated against him after February 2011 were not the same people who engaged in the untimely conduct alleged." It should go without saying that statements of attorneys are not evidence, and that only admissible evidence can be considered by the Court in resolving summary judgment. *See* Fed. R. Civ. P. 56(c); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Regardless, this statement does not present the Court with evidence of what alleged racially hostile act was committed after February 11, 2011. Absent such evidence, the Court is left only with complete speculation, which is insufficient. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992) (unsupported speculation is insufficient to defeat summary judgment). There are no material facts in dispute that suggest that Pierce was subject to any racially hostile conduct after February 11, 2011, which would permit a reasonable jury to return a verdict in favor of Pierce.[9]

As a result, the undersigned **RECOMMENDS** that Defendant NNI's Motion for Summary Judgment on Pierce's hostile work environment claim be **GRANTED**.

**D.   Disparate Treatment**

By Defendant's motion and Pierce's opposition, the only disparate treatment claim before the Court is his claim for disparate pay. *See* n.5, *supra*. In this claim, Pierce contends he was

---

[9] To the extent Pierce attempts to rely on either his disparate pay claim or retaliation claim as discrete acts occurring within the limitation period, the Court addresses these claims in sections III.D and III.E., *infra*, respectively.

discriminated against when he was started at a pay rate of $18 per hour, and he subsequently received only $3.25 in raises through the 30-60-90-110 day evaluation process. ECF No. 15 at ¶¶ 681-82; ECF No. 199, attach. 15 at ¶ 5; ECF No. 200, attach. 1 at 55. NNI argues that these claims are time barred because they consist of discrete acts occurring outside the limitations period, and that Pierce cannot establish that any white comparator was similarly situated and received more favorable pay.

Pierce argues that each paycheck he received after February 11, 2011 is a discrete act, and thus occurred within the limitations period, so that pay claims prior to February 11, 2011 are timely because the greater weight of case law supports extending the application of the Lily Ledbetter Act (a/k/a Fair Pay Act) to § 1981 claims in addition to those brought under Title VII. ECF No. 200, attach. 1 at 55 (referring back to Section III(A) of the global memorandum in opposition). Pierce also argues that he can show similarly situated white comparators, including James Adams and Jesse Smith, who were treated more favorably. *Id.*

The courts appear split as to whether the Lilly Ledbetter Act's principle that a claim accrues each time a discriminatory pay check is received (as opposed to when the original pay decision is made) applies to § 1981 pay claims. *Compare, Johnson v. Portfolio Recovery Assoc., LLC*, 682 F.Supp.2d 560, 585 (E.D. Va. 2009) (declining to consider whether the Supreme Court's decision in *Ledbetter* still applies to § 1981 pay discrimination claim after passage of the Lilly Ledbetter Act, but applying the four year statute of limitations), *with Johnson v. Fed. Express Corp.*, 996 F.Supp.2d 302, 326 (M.D. Pa. 2014) (holding that applying the paycheck accrual principle was not clear error, and collecting cases demonstrating divided authority on this proposition). Inasmuch as courts have consistently applied the same test used for Title VII claims to claims brought pursuant to § 1981, *see, e.g., Spriggs*, 242 F.3d at 184; *Gairola v.*

13

*Virginia Dept. of Gen. Serv.*, 753 F.2d 1281, 1285 (4th Cir. 1985), Pierce's argument that the Lilly Ledbetter Act should apply to § 1981 claims has some merit. Nonetheless, the Court does not need to reach this question because of its findings, *infra*.

Pierce has not produced direct evidence of discrimination in the establishment of his pay or in the awarding of pay raises, so the Court follows the *McDonnell Douglas* burden shifting framework to analyze his pay claim.[10]   As noted, to establish his disparate pay claim, besides being a member of a protected class, Pierce must show he was paid less than an employee outside the class; and that the higher paid employee was performing a substantially similar job. *Davis*, 2015 WL 5616237, at * 3.

In the first instance, Pierce has not pointed to any comparator whom he was paid less than.   In the global memorandum, he identifies Smith and Adams, but both employees were started at the same rate of pay he was -- $18 per hour.[11]   ECF No. 200, attach. 1 at 55.   Although he identified Ricky Penrod in his response to Defendant's SOF as an employee whose pay rate was $24 upon hire, he did not offer evidence that Penrod was similarly situated to him. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (holding that disparate pay plaintiffs who base their "allegations completely upon a comparison to an employee from a non-protected class . . . are required to show that they are similar in all relevant respects to their comparator. . . . Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the

_____

[10] Pierce may not rely on his labor economist expert Dr. Killingsworth's statistical regression analysis in an attempt to show generally that blacks were paid less than whites at NNI because his evidence and testimony have been stricken by the Court.  ECF No. 290.

[11] NNI objects to Pierce's reliance on Plaintiffs' Exhibit 158 (ECF No. 204, attach. 1) – a chart prepared by Dr. Killingsworth purporting to show pay rates and dates of various white NNI employees – because he failed to provide sufficient foundation for the chart.  Inasmuch as the chart cites to supporting documentation within the exhibit, the Court will consider the chart for basic information unless NNI demonstrates that the information is not accurate.

employer's treatment of them for it'") (citing *Tex. Dep't. of Comty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981); *McDonnell Douglas Corp.*, 411 U.S. at 802; *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994) (citing *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989))) (internal citations omitted). He also identified Daniel Cummings in his response to Defendant's SOF as an employee whose pay rate was the same as his, but Cummings was hired as a laborer at $13 per hour, and only when reclassified to fitter did his pay reach $18 per hour. ECF No. 172, SOF No. 50, 51.

Little evidence was proffered that these employees were similarly situated to Pierce. Instead, evidence was proffered that they are not similarly situated, including the fact that Penrod had twenty-four years of fitting experience prior to hire. *Id.*, SOF. 53. According to Pierce's own evidence, Smith was hired in October 2011 and did not receive a raise until five months later, in March 2012. ECF No. 204, attach. 1 (Ex. 158). Hence, Smith was both treated less favorably than Pierce and was not even working at NNI as the same time as was Pierce. While Pierce points to Smith's pay after two years, that information hardly seems relevant since Pierce only worked at NNI for less than 12 months. Thus, the evidence fails to establish that Smith is similarly situated to Pierce. Similarly, according to Pierce's same evidence, Adams was hired at the same rate of pay as Pierce, but not until almost one year after Pierce was laid off. *Id.* Since he did not work at NNI as the same time as Pierce, he is not an appropriate comparator either.

With respect to Pierce's claim that he was discriminatorily denied sufficient pay raises, this claim must fail because he cannot establish that his pay raises are adverse actions. While denial of a pay raise can constitute an adverse employment action, *see, e.g. Flateau v. South Carolina Comm'n for the Blind,* 50 F. App'x 653, 654 (4th Cir. 2002) (holding that the denial of

a pay increase may constitute an adverse employment action), that is not what happened here. Pierce's complaint is that his raise was not big enough.  Absent evidence that any disparity in the amount of raises between Pierce and a comparator is substantial, his raise cannot be considered an adverse employment action.  *See Lovell v. BBNT Sols., LLC*, 295 F. Supp. 2d 611, 626 (E.D. Va. 2003) ("Absent a very large disparity between the raise given a claimant and the raises given to valid comparators, which is not the case here, 'it is difficult to see how a raise in one's salary could constitute an *adverse* employment action.'") (citing *Milligan v. Citibank*, No. 00–2793, 2001 WL 1135943, **4–5, 2001 U.S. Dist. LEXIS 16105, at *11–12 (S.D.N.Y. Sept. 26, 2001) (emphasis in original)).  In *Lovell*, the Court found that a plaintiff's disparity in receiving $3,410 less in pay raises and incentive pay, while not inconsequential, did not rise to the level of an adverse employment action.  295 F. Supp. 2d at 626-27.  To hold otherwise, noted the *Lovell* Court, "would allow employees disappointed over not receiving a higher raise to invoke Title VII to require courts to become involved in the messy business of evaluating employees and making finely-tuned raise determinations."  *Id.* at 627.  While Pierce received $3.25 in raises after seven months, according to Pierce's Exhibit 158, Adams received $4.25 in raises after four months, and then not another raise until fourteen months after that; Smith received $3.50 in raises after nine months; Cummings received $5 in raises after six months and another $.75 three months after that (putting him at $18.75, less than Pierce after his second raise); and Penrod did not receive a raise at all for more than three years after his hire.  ECF No. 204, attach. 1.  Under these circumstances, it cannot be said that the raises Pierce received constituted an adverse employment action.

Since Pierce cannot establish that he suffered an adverse employment action or that any similarly situated comparators were treated more favorably than he, he cannot show he was

subject to disparate treatment in pay on account of his race. Moreover, having failed to establish this claim, neither can he rely on his pay as a discrete act sufficient to constitute a racially hostile act within the limitations period for purposes of establishing a hostile work environment.

Finally, as noted in footnote 5, *supra*, Pierce waived any claim for disparate treatment in training, promotion and work assignments. Nevertheless, the welding training, which Pierce testified he did not need, occurred while Pierce was working with Jackson and Jaffuex prior to February 2011; the permanent fitter position was filled by Cummings in 2010, and Pierce's assignment to the Pin Jig project was in the Fall of 2010. Hence, each of these alleged discriminatory acts occurred outside the limitations period, and thus are barred by the statute of limitations, and neither can they be relied upon under the continuing violation theory to save Pierce's hostile work environment claim.

As a result, the undersigned **RECOMMENDS** that Defendant NNI's Motion for Summary Judgment on Pierce's disparate treatment claim be **GRANTED**.

**E.     Retaliation**

Pierce also contends that, in retaliation for his complaints about discrimination at NNI, he was reassigned to work with Calvin in the Main Building two or three months before he was laid off at NNI on April 1, 1011. Consequently, this reassignment cannot have occurred within the limitation period after February 11, 2011, but rather occurred in January 2011. To establish a retaliation claim, Pierce was required to show he engaged in a protected activity, NNI took a materially adverse action against him, and a causal link existed between the protected activity and the adverse action. *Emami*, 241 F. Supp. 3d at 680–81. NNI argues that, even if Pierce's complaints about racial discrimination constituted protected activity, he cannot show NNI took adverse action against him, because a duty assignment transfer is not an adverse action if it is not

accompanied by a change in the terms or conditions of employment. ECF No. 142 at 29-30. Further, NNI argues that Pierce cannot show a causal link between his discrimination complaints and his transfer since he cannot establish the identity of the decision-maker who transferred him; therefore, he cannot show that the decision-maker had knowledge of Pierce's protected activity and transferred him because of it.

Pierce argues that NNI has relied on an improper standard for determining what constitutes an adverse action, explaining that he merely needs to show a materially adverse action, which is something less than an ultimate employment decision, but includes any action that might dissuade a reasonable employee from pursuing a discrimination claim. ECF No. 200, attach. 2 at 41. Pierce further argues that, because the job under Calvin kept him from "gaining experience within the scope of his position, it affected his ability to get raises and experience that would allow him to be promoted." *Id.*

Pierce is correct as to the appropriate standard to be followed by the Court in determining whether an employee has been retaliated against. When the Supreme Court decided *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 69 (2006), it held that a "materially adverse action" such as required for a retaliation claim requires only such action as might deter a reasonable worker from making or supporting a charge of discrimination. It does not require an ultimate employment action, such as termination, reduction in pay, or failure to promote. Under these circumstances, Pierce would need to establish that NNI's transfer of him to work with Calvin was in retaliation for his complaints of discrimination, the result of which would be to dissuade him from making discrimination complaints. Although Pierce has identified the correct standard, he has failed to establish facts supporting the claim.

18

When considering whether action is materially adverse with regards to a retaliation claim, the standard is objective and is "phrased 'in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'" *Shetty v. Hampton Univ.*, No. 4:12cv158, 2014 WL 280448, at *13 (E.D. Va. Jan. 24, 2014) (quoting *White*, 548 U.S. at 69). Pierce's explanation for why his transfer is materially adverse consists of nothing more than speculation. He fails to provide any evidence as to what real collateral consequences attended to his transfer, instead generalizing that he was not able to gain experience within his scope of work.[12] This argument falls short for multiple reasons. First, Pierce never proffers what specific work he performed while working under Calvin, so whether he was gaining relevant experience is not evidence before the Court. Second, Pierce was only in this job for two or three months, and then he was laid off. Although the "materially adverse action" standard is "lax" when compared to that of an "adverse employment action," it is not without limits. *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 831 (E.D. Va. 2016), *motion to certify appeal denied,* No. 3:15CV569, 2016 WL 3922053 (E.D. Va. July 20, 2016). Third, Pierce does not dispute that his transfer did not affect his pay rate, ECF No. 172, SOF No. 74, and fails to show any other real, tangible collateral consequence of the transfer on his employment status. The Court is left with nothing more than speculation that this job transfer was a materially adverse action, and speculation is insufficient to oppose summary judgment. *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (stating that the "nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a 'scintilla of evidence' to oppose summary judgment").

Further, NNI correctly points out that Pierce failed to identify who transferred him to work with Calvin. Hence, Pierce cannot establish a causal link between his protected activity

---

[12] Presumably, meaning more fitter experience.

and the decision-maker's conduct because there is no evidence that the decision-maker, whoever that was, was aware of the protected activity. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("To satisfy the third element [of a prima facie case for retaliation], the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.") (emphasis in original).

As a result, the undersigned **RECOMMENDS** that Defendant NNI's Motion for Summary Judgment on Pierce's retaliation claim be **GRANTED**.

## IV. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** Defendant NNI's Motion for Summary Judgment regarding Donyelle Pierce, ECF No. 171, be **GRANTED**.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiffs and Defendant NNI.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
February 26, 2018