UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JAMESINA CRAWFORD, *et al.*,

        Plaintiffs,

        v.

NEWPORT NEWS INDUSTRIAL
CORPORATION,

        Defendant.

Civil No. 4:14cv130

## ORDER

A Second Amended Complaint was filed in this Court on May 4, 2015, in which a total of thirty-eight Plaintiffs filed suit against Defendant Newport News Industrial Corporation ("NNI"). The Second Amended Complaint asserts various claims of employment discrimination, retaliation, and hostile work environment by welders, fitters, and laborers employed at or by NNI. ECF No. 15.

On January 5, 2016, the parties stipulated to the dismissal of one Plaintiff. ECF No. 56. Defendant NNI subsequently filed separate Motions for Summary Judgment against the remaining thirty-seven Plaintiffs. This Order addresses NNI's Motions for Summary Judgment against thirty-two plaintiffs: Anthony Alvarez (ECF No. 109); Ian Blow (ECF No. 111); Ernest Chesson (ECF No. 115); Marchello Fields (ECF No. 117); Willie Kershaw (ECF No. 119); Derek Cross (ECF No. 121); Ronald Valentine (ECF No. 123); Jonathan Dantes (ECF No. 125); Franz Edouard (ECF No. 129); Reggie Holliman (ECF No. 131); Lamar Holloman (ECF No. 133); Alfred Joyner, Jr. (ECF No. 135); Willie Nichols (ECF No. 139); Robert Robinson (ECF

No. 141); Roderick Waddell, Sr. (ECF No. 143); Brandon Walker (ECF No. 145); Richard Bostic (ECF No. 147); Herbert Broughton (ECF No. 149); Steven Gordon (ECF No. 151); Chris Payton (ECF No. 153); Dennis Smith (ECF No. 155); David Swain (ECF No. 159); Gilbert Wiltz (ECF No. 161); Mark Barnett (ECF No. 163); Jamesina Crawford (ECF No. 165); John Harris (ECF No. 167); Tourke Hooker (ECF No. 169); Donyelle Pierce (ECF No. 171); Theo Pierce (ECF No. 173); Lamarr Joyner (ECF No. 175); Ronald Stewart (ECF No. 177); and Roderick Waddell, Jr. (ECF No. 181) (collectively for purposes of this Order, referred to as "Plaintiffs").

These motions were referred to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia for report and recommendation (the "Report"). The Magistrate Judge issued the Report addressing these Plaintiffs on February 26, 2018 and March 2, 2018. ECF Nos. 294, 296. By copy of the Report, each party was advised of the right to file written objections to the findings and recommendations made by the Magistrate Judge. *Id.* Parties sought and were granted extensions before filing multiple objections to the Report on April 13, 2018. ECF Nos. 317, 318.

The Court has reviewed the full record and has carefully examined the objections filed. The Court has undertaken specific review of the recommendations, and makes *de novo* findings with respect to the portions of the recommendations to which these Plaintiffs object. Fed. R. Civ. P. 72(b)(3).

In performing these responsibilities this Court may "accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also Prototype Prods. v. Reset, Inc.*, 844 F. Supp. 2d 691, 696 (E.D. Va. 2012) (reviewing courts have "the discretion to consider new evidence").

2

The Court proceeds with evaluating the Reports, and considering the parties' objections to the Reports' specific recommendations. The following evaluations and analyses are organized by identifying and examining each kind of claims that has been advanced by Plaintiffs. The analysis begins with hostile work environment claims.[1]

I.      HOSTILE WORK ENVIRONMENT CLAIMS

        1.      LEGAL STANDARDS

A plaintiff claiming discrimination based on a hostile work environment in violation of 42 U.S.C. § 1981 must demonstrate four elements: (1) that the plaintiff was subjected to unwelcome harassment; (2) that the harassment was the result of the plaintiff's race or national origin; (3) that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) that the harassment is imputable to the employer. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 308, 314 (4th Cir. 2006).[2]

The third element listed above ("sufficiently severe harassment") contains both subjective and objective components. "[T]he plaintiff must show that [he or she] subjectively perceive[d] the environment to be abusive." *Id.* at 315 (internal quotation marks and citations omitted).

"Next, the plaintiff must demonstrate that the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." *Id.* To assist in the inquiry related to the objective component, courts look to the totality of the circumstances, and consider the following factors: the frequency of the allegedly discriminatory conduct; the severity; whether the conduct was physically threatening or humiliating, or merely

_____

[1] This analysis addresses the claims in the following order: hostile work environment claims; disparate treatment claims, termination and constructive discharge claims, retaliation claims, medical leave claims and gender discrimination claims.

[2] The elements of a hostile work environment claim under § 1981 or Title VII are the same, and courts look to Title VII cases when considering a hostile work environment claim under § 1981. *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).

consisted of offensive utterances; and whether the conduct reasonably interfered with an employee's workplace performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The bar for establishing an objectively hostile work environment is high; to be actionable, "the harassing conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Sunbelt Rentals*, 521 F.3d at 315 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

By contrast, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.[3] Furthermore, a plaintiff must show that but for the plaintiff's protected characteristic, he or she would have not been a victim of the alleged discrimination. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).

The Fourth Circuit has recognized that "frequent and highly repugnant insults" directed specifically towards African Americans far exceed the type of "mere offensive utterances" that might otherwise fail to establish the third element. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001). "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial

---

[3] In *Sunbelt Rentals*, the United States Court of Appeals for the Fourth Circuit reversed the district court's decision to grant summary judgment to an employer where a Muslim plaintiff had demonstrated that he had suffered religious harassment that was "persistent, demeaning, unrelenting, and widespread," all of which was heightened by the political climate directly following the terrorist attacks that occurred on September 11, 2001. 521 F.3d at 316 (internal citations and quotations omitted). Such harassment included daily comments by co-workers referring to the plaintiff in "harshly derogatory terms," such as "Taliban" and "towel head;" a co-worker informing the plaintiff that he objected to the plaintiff leaving his desk to pray; threats with respect to the plaintiff's prayers; his co-workers hiding his timecard on the days he went to congregational prayer; and disparaging religious comments in general. *Id.* at 316–18.

The plaintiff also presented evidence suggesting that he was the subject of workplace pranks—including unplugging his computer equipment and defacing his business card—that, while not bearing a direct religious nexus, occurred more frequently to him because of his religion. *Id.* at 318. The Fourth Circuit recognized that although such incidents in isolation would have been insufficient to transform the workplace into a hostile and abusive one, the habitual nature of such abuse was enough to create a triable issue. *Id.*

4

epithet . . . by a supervisor in the presence of his subordinates." *Id.* (quoting *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)).

The status of the harasser is relevant to an assessment of the fourth element (determining whether "the harassment is imputable to the employer"). "An employer is liable for harassment by the victim's coworkers only 'if it knew or should have known about the harassment and failed to take effective action to stop it.'" *Sunbelt Rentals*, 521 F.3d at 319 (quoting *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006)). "Knowledge of harassment can be imputed to an employer if a reasonable person, intent on complying with Title VII, would have known about the harassment." *Id.* (internal citation omitted). "Once the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment." *Id.* (internal citation and quotation omitted). The Fourth Circuit has held that verbal and written complaints, coupled with an employer's failures to take reasonable corrective action, are sufficient to establish the fourth element. *Id.* at 319–320.[4]

There must be "some nexus between the harassment and the tangible employment action for the latter to be actionable." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 328 (4th Cir. 2012). If the harasser was the victim's supervisor, the employer is strictly liable if the harassing behavior culminates in a tangible employment action, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998).

Where a supervisor's harassment does not involve a tangible employment action against the plaintiff, an employer may nevertheless be "subject to vicarious liability to a victimized

---

[4] "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). "Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed would be relevant." *Id.* at 2454.

5

employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807. In situations where no tangible employment action is taken, "a defending employer may raise an affirmative defense to liability or damages." *Id.*; *see also Ellerth*, 524 U.S. at 765.[5]

This defense encompasses two elements, each of which must be proven by a preponderance of the evidence. First, the employer must demonstrate that it "exercised reasonable care to prevent and correct promptly any . . . harassing behavior." *Brown v. Perry*, 184 F.3d 388, 390 (4th Cir. 1999) (internal citations omitted). Second, the employer must establish "that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise." *Id.*

The Fourth Circuit has held that "dissemination of 'an effective anti-harassment policy provides compelling proof' that an employer has exercised reasonable care to prevent and correct . . . harassment." *Matvia v. Bald Head Island Management, Inc.*, 259 F.3d 261, 268 (4th Cir. 2001) (internal citations omitted). "[W]here . . . there is no evidence that an employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional, the existence of such a policy militates strongly in favor of the conclusion that the employer 'exercised reasonable care to prevent' and promptly correct harassment." *Brown*, 184 F.3d at 396 (internal citations omitted). However, the mere existence of an anti-harassment policy does not by itself permit an employer to escape liability, because "the policy must be effective in order to have meaningful value." *Sunbelt Rentals*, 521 F.3d at 320 (internal citations omitted). Where harassment continues "unabated" even after an employer has been made aware of it, "the existence of a policy might still leave a jury unconvinced that [the employer] worked in a serious fashion to combat [] rampant harassment . . . ." *Id.*

---

[5] This defense is known as the *Faragher-Ellerth* defense. *See Dulaney*, 673 F.3d at 328.

Although a court must focus primarily on a plaintiff's "personal experience," *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 190 (4th Cir. 2004), comments made to others are also "relevant to determining whether [an individual plaintiff] was subjected to" severe or pervasive harassment. *Jennings v. Univ. of N.C.*, 482 F.3d 686, 694 (4th Cir. 2007) (en banc). Courts recognize that when evaluating whether a workplace environment is hostile, "whatever the contours of one's environment, they surely may exceed the individual dynamic between complainant and his [supervisors or co-workers]." *Spriggs*, 242 F.3d at 184.

2.    ANALYSIS

A.    Parties Have Not Objected to the Report's Findings Regarding Fourteen Plaintiffs

The Report concluded that material facts are in dispute and recommended denying summary judgment to NNI as to hostile work environment claims from plaintiffs Ian Blow; Ronald Valentine; Frantz Edouard; Reggie Holliman; Lamar Holloman; Alfred Joyner, Jr.; Willie Nichols; Roderick Waddell, Sr.; Brandon Walker; Richard Bostic; Dennis Smith; David Swain; Theo Pierce; and Ronald Stewart. No objections have been presented regarding these findings and conclusions. *See* ECF No. 316 at 3, 34–56; ECF No. 317 at 2. Accordingly, the Court reviewed these findings for clear error. Finding none, the Court ADOPTS AND APPROVES the findings contained in the Report, ECF No. 296, 13–14, 16–22, 24, 27–28, 29–42, as to these Plaintiffs, and DENIES NNI's Motions for Summary Judgment as to these Plaintiffs' hostile work environment claims. ECF Nos. 111, 123, 129, 131, 133, 135, 139, 143, 145, 147, 155, 159, 173, 177.

B.    Other Plaintiffs: Anthony Alvarez

Mr. Alvarez's claims of a hostile work environment arise from allegations about (1) Supervisor Wayne Jackson's differing treatment of white and minority workers; (2) Mr. Alvarez's observation of racist graffiti concerning African Americans and Confederate flags in

the work environment; and (3) another employee's report to Mr. Alvarez regarding the observation of a possible noose displayed in the building. ECF No. 110 ¶¶ 12, 28–29. The Report concluded that material facts are in dispute, and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Mr. Alvarez's claims regarding Supervisor Jackson's allegedly preferential treatment of white workers fail to establish that Supervisor Jackson's actions were tantamount to unwelcome harassment based on Mr. Alvarez's national origin or race, and that they were sufficiently severe to alter the conditions of employment. With respect to Mr. Alvarez's claims concerning supervisor Jackson's assignment of menial tasks, a Caucasian employee testified that he performed the same tasks. ECF No. 110 ¶ 17. With respect to Mr. Alvarez's claims concerning the supervision of employees' breaks, this Court concludes that no reasonable jury could find that such actions were severe or pervasive enough to alter the conditions of employment. *See Sunbelt Rentals*, 521 F.3d at 316.

The Court next considers Mr. Alvarez's assertions of racist graffiti directed against African Americans and Confederate flags, and another's employee's observation of a noose. Mr. Alvarez has failed to establish a viable harassment claim because these allegations are unrelated to Mr. Alvarez's race (half Hispanic, half Caucasian). Mr. Alvarez cannot satisfy the second element of a hostile work environment claim. ECF No. 110 ¶ 7; *see Childress v. City of Richmond, Va.*, 134 F.3d 1205, 1207 (4th Cir. 1998). There is no dispute of genuine material fact remaining as to Mr. Alvarez's hostile work environment claim. Accordingly, the Court SUSTAINS NNI's objections as to this claim, and GRANTS summary judgment to NNI. ECF No. 109.

C.    Ernest Chesson

Mr. Chesson claims that his supervisors subjected him to unwelcome harassment on the basis of his race by speaking down to him and his African American co-workers and ridiculing him. Mr. Chesson was also told he would be put on a list for forklift certification, but no list existed. Two white employees were nevertheless given the opportunity to obtain forklift certification. ECF No. 296 at 14; *see also* ECF No. 202-1, Ex. 6.

The Report concluded that material facts are in dispute and recommended denying summary judgment to NNI.    ECF No. 296 at 39.    NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

It is unclear whether denial of an opportunity for forklift certification amounts to a tangible employment action with a nexus to the alleged harassment. *See Ellerth*, 524 U.S. at 761. In *Vance*, 570 U.S. at 437 n.9, the Supreme Court noted that a supervisor's ability to assign an employee significantly different work responsibilities "may have constituted a tangible employment action." If the action has "economic consequences, such as foreclosing [an employee's] eligibility for promotion, then it might constitute a tangible employment action." *Id.* Accordingly, the Court OVERRULES NNI's objections as to this claim, and DENIES summary judgment to NNI. ECF No. 115.

D.    Marchello Fields

Mr. Fields claims race-based harassment by his supervisors. ECF No. 296 at 15; *see also* ECF No. 202-1, Ex. 12. The Report concluded that material facts are in dispute and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

9

Mr. Fields has failed to establish either a tangible employment action against him by his supervisors, or that he ever lodged any sort of complaint regarding such harassment. Accordingly, even if Mr. Fields were to satisfy the first and second elements of a hostile work environment claim, NNI has established that the *Faragher-Ellerth* defense would prevail because: (1) Mr. Fields possessed NNI's anti-harassment policy, *see* ECF No. 118 ¶¶ 23–32, and (2) Mr. Fields failed to take advantage of an opportunity to notify NNI of the allegedly harassing behavior. Accordingly, the Court SUSTAINS NNI's objections as to Mr. Fields' hostile work environment claim, and GRANTS summary judgment to NNI. ECF No. 117.

      E.     Willie Kershaw

Mr. Kershaw claims race-based harassment by his supervisors and co-workers. ECF No. 296 at 15; *see also* ECF No. 120-3 at 65–70. The Report concluded that material facts are in dispute and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Mr. Kershaw has failed to establish a tangible employment action against him by his supervisors, or that he ever lodged any sort of complaint regarding harassment (whether by his supervisors or co-workers). Accordingly, even if Mr. Kershaw were to meet the first and second requirements of a hostile work environment claim, Mr. Kershaw has failed to establish that his co-workers' harassment would be imputable to NNI because of his failure to lodge a complaint about it. *See Sunbelt Rentals*, 521 F.3d at 319.

Similarly, with respect to his supervisors' allegedly discriminatory activity, NNI has established that the *Faragher-Ellerth* defense would prevail because: (1) Mr. Kershaw was in receipt of NNI's anti-harassment policy, *see* ECF No. 120 ¶¶ 21–29, and (2) Mr. Kershaw failed to take advantage of an opportunity to notify NNI of the allegedly harassing behavior.

Accordingly, the Court SUSTAINS NNI's objections as to Mr. Kershaw's hostile work environment claim, and GRANTS summary judgment to NNI. ECF No. 119.

      F.     Derrick Cross

Mr. Cross claims race-based harassment by his supervisors. ECF No. 296 at 16; *see also* ECF No. 202-1, Ex. 9. The Report concluded that material facts are in dispute and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Mr. Cross has failed to establish either a tangible employment action against him by his supervisors, or that he lodged any sort of complaint regarding such harassment. Accordingly, even if Mr. Cross were to establish the first and second elements of a hostile work environment claim, NNI has demonstrated that the *Faragher-Ellerth* defense would prevail because it meets the two requirements of the defense. First, Mr. Cross was in receipt of NNI's anti-harassment policy. *See* ECF No. 122 ¶¶ 22–28. Second, Mr. Cross failed to take advantage of an opportunity to notify NNI of the allegedly harassing behavior. Accordingly, the Court SUSTAINS NNI's objections as to this claim and GRANTS summary judgment to NNI. ECF No. 121.

      G.     Jonathan Dantes

Mr. Dantes claims that his supervisor treated his white co-workers preferentially regarding breaks, and that he was terminated for taking a nap break and white employees who took nap breaks were not terminated. ECF No. 296 at 17; *see also* ECF No. 202-1, Ex. 10. The Report concluded that material facts are in dispute and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Whether the supervisor's tangible employment action against Mr. Dantes has a sufficient nexus to the alleged harassment is unclear. *Dulaney*, 673 F.3d at 328 (requiring "some nexus between the harassment and the tangible employment action for the latter to be actionable"); *see also Causey*, 162 F.3d at 801 (requiring that a plaintiff establish that but for the plaintiff's race or national origin, he or she would not have been subject to the harassment). Accordingly, the Court OVERRULES NNI's objections as to this claim, and the Court adopts the Report's recommendation to DENY summary judgment to NNI. ECF No. 125.

H.    Herbert Broughton

Mr. Broughton claims race-based harassment by his supervisors and co-workers. ECF No. 296 at 22; *see also* ECF No. 202-1, Ex. 5. The Report concluded that material facts are in dispute, and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Mr. Broughton has failed to establish either a tangible employment action against him by his supervisors or that he lodged any sort of complaint regarding such harassment, whether by his supervisors or by co-workers. Accordingly, even if Mr. Broughton were to establish the first and second elements of a hostile work environment claim, Mr. Broughton has failed to establish that his co-workers' harassment would be imputable to NNI because of his failure to lodge a complaint about it. *See Sunbelt Rentals*, 521 F.3d at 319. Similarly, with respect to his supervisors' allegedly discriminatory activity, NNI has established that the *Faragher-Ellerth* defense would prevail because: (1) Mr. Broughton was in receipt of NNI's anti-harassment policy, *see* ECF No. 150 ¶¶ 15–19, and (2) Mr. Broughton failed to take advantage of an opportunity to notify NNI of the allegedly harassing behavior. The Court SUSTAINS NNI's objections as to this claim, and GRANTS summary judgment to NNI. ECF No. 149.

I.    Steven Gordon

Mr. Gordon alleges harassing behavior by his supervisors, and also with a supervisor and a co-worker. ECF No. 296 at 22–23; *see also* ECF No. 202-1, Ex. 13. The Report concluded that material facts are in dispute, and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

The record regarding the more general allegations of the supervisors' behavior fails to establish conduct sufficiently severe and pervasive enough to alter the conditions of Mr. Gordon's employment. *See Sunbelt Rentals*, 521 F.3d at 315. However, with respect to his complaint regarding his co-worker—who allegedly shoved Mr. Gordon, and who was also the subject of a separate complaint for racially-motivated harassment—the Court finds that there is a genuine dispute of material fact regarding two issues: whether his co-worker's actions were the result of Mr. Gordon's race, and whether the harassment was imputable to NNI, given that Mr. Gordon reported his co-workers' behavior. If the physical contact arose from his co-worker's animus towards African Americans, and if NNI failed to take any action after Mr. Gordon reported it, a hostile work environment claim here is valid. *Id.* at 319. Accordingly, the Court GRANTS summary judgment to NNI as to Mr. Gordon's hostile work environment claim with respect to his supervisors, and DENIES summary judgment to NNI as to Mr. Gordon's hostile work environment claim regarding his supervisor and his co-worker. ECF No. 151.

J.    Chris Payton

Mr. Payton claims that his supervisors subjected him to unwelcome harassment on the basis of his race by verbally harassing him. ECF No. 296 at 23–24; *see also* ECF No. 202-1, Ex. 23. Mr. Payton also claims his supervisor promised him an opportunity to obtain welding training, but never provided this opportunity and instead assisted a white co-worker, who was

13

less experienced, in obtaining welding training. The Report concluded that material facts are in dispute and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

It is unclear whether the denial of an opportunity for welding training amounts to a tangible employment action against Mr. Payton by his supervisors, with a nexus to the alleged harassment. *Vance*, 570 U.S. at 437 n.9 (noting that if the action has "economic consequences, such as foreclosing [an employee's] eligibility for promotion, then it might constitute a tangible employment action"); *see also Ellerth*, 524 U.S. at 761. Accordingly, the Court OVERRULES NNI's objections as to this claim, and adopts the Report's recommendation to DENY summary judgment to NNI. ECF No. 153.

      K.      Gilbert Wiltz

Mr. Wiltz claims race-based harassment by his supervisors. ECF No. 296 at 24–25; *see also* ECF No. 202-1, Ex. 37. The Report recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Mr. Wiltz has failed to establish either a tangible employment action against him by his supervisors, or that he lodged a complaint regarding such harassment. Accordingly, even if Mr. Wiltz were to meet the first and second requirements of a hostile work environment claim, NNI has established that the *Faragher-Ellerth* defense would prevail because: (1) Mr. Wiltz possessed NNI's anti-harassment policy, *see* ECF No. 162 ¶¶ 9–11, and (2) Mr. Wiltz failed to take advantage of an opportunity to notify NNI of the allegedly harassing behavior. Accordingly, the Court SUSTAINS NNI's objections as to this claim and GRANTS summary judgment to NNI. ECF No. 161.

L.    Mark Barnett

Mr. Barnett claims race-based harassment by his supervisors. ECF No. 296 at 25; *see also* ECF No. 202-1, Ex. 2. The Report concluded that material facts are in dispute and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Although no tangible employment action occurred, Mr. Barnett appears to have objected to at least one of his supervisor's comments that derogatorily stereotyped African Americans. At this stage, the Court finds that a genuine dispute of material fact exists as to whether Mr. Barnett's objection to his supervisor's comment amounts to a complaint to a supervisor sufficient to render the alleged harassment imputable to NNI. *See Sunbelt Rentals*, 521 F.3d at 319 ("A reasonable jury could determine that [the employer] had notice of the . . . harassment" because the plaintiff "verbally complained" to his supervisor "after most of the harassing incidents."). Accordingly, the Court OVERRULES NNI's objections to the Report's recommendation about this claim, and DENIES summary judgment to NNI. ECF No. 163.

M.    Jamesina Crawford

Ms. Crawford claims harassing behavior by her supervisors. ECF No. 296 at 26; *see also* ECF No. 202-1, Ex. 8; ECF No. 202-2, Ex. 40. The Report concluded that material facts are in dispute and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Although no tangible employment action occurred, Ms. Crawford appears to have objected to at least one of her supervisor's comments that mocked African American workers by mimicking racial stereotypes. The Court finds that a genuine dispute of material fact exists as to

whether Ms. Crawford's objection to her supervisor's comment amounted to a complaint to a supervisor sufficient to render the alleged harassment imputable to NNI. *See Sunbelt Rentals*, 521 F.3d at 319 ("A reasonable jury could determine that [the employer] had notice of the . . . harassment" because the plaintiff "verbally complained" to his supervisor "after most of the harassing incidents."). Accordingly, the Court OVERRULES NNI's objections to the Report's recommendation about this claim, and DENIES summary judgment to NNI. ECF No. 165.

N.      John Harris

Mr. Harris claims race-based harassment by his supervisors and co-workers. ECF No. 296 at 26–27; *see also* ECF No. 202-1, Ex. 14. The Report concluded that material facts are in dispute, and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Mr. Harris has failed to establish either a tangible employment action against him by his supervisors, or that he ever lodged any sort of complaint regarding such harassment. Accordingly, even if Mr. Harris were to meet the first and second requirements of a hostile work environment claim, Mr. Harris has failed to establish that his co-workers' harassment would be imputable to NNI. *See Sunbelt Rentals*, 521 F.3d at 319.

Similarly, with respect to his supervisors' allegedly discriminatory activity, NNI has established that the *Faragher-Ellerth* defense would prevail because: (1) Mr. Harris was in receipt of NNI's anti-harassment policy, *see* ECF No. 168 ¶¶ 17–19, and (2) Mr. Harris failed to take advantage of an opportunity to notify NNI of the allegedly harassing behavior. Accordingly, the Court SUSTAINS NNI's objections as to this claim and GRANTS summary judgment to NNI. ECF No. 167.

16

O.  Tourke Hooker

Mr. Hooker claims race-based harassment by his supervisors and co-workers. ECF No. 296 at 26; *see also* ECF No. 202-1, Ex. 38. The Report concluded that material facts are in dispute, and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Mr. Hooker has failed to establish either a tangible employment action against him by his supervisors, or that he ever lodged any sort of complaint regarding such harassment (whether by his supervisors or co-workers). Accordingly, even if Mr. Hooker were to establish the first and second elements of a hostile work environment claim, Mr. Hooker has failed to demonstrate that his co-workers' harassment would be imputable to NNI. *See Sunbelt Rentals*, 521 F.3d at 319.

Similarly, with respect to his supervisors' allegedly discriminatory activity, NNI has established that the *Faragher-Ellerth* defense would prevail because: (1) Mr. Hooker was in receipt of NNI's anti-harassment policy, *see* ECF No. 170 ¶¶ 12–15, and (2) Mr. Hooker failed to take advantage of an opportunity to notify NNI of the allegedly harassing behavior. Accordingly, the Court SUSTAINS NNI's objections as to this claim and GRANTS summary judgment to NNI. ECF No. 169.

P.  Lamarr Joyner

Mr. Joyner claims race-based harassment by his supervisors and co-workers. ECF No. 296 at 28; *see also* ECF No. 202-1, Ex. 19. The Report concluded that material facts are in dispute, and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objected to the Report's recommendations, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34. Mr. Joyner has failed to establish either a tangible employment action against him by his supervisors, or that he ever lodged any sort of complaint

regarding such harassment (whether by his supervisors or co-workers). Accordingly, even if Mr. Joyner were to establish the first and second elements of a hostile work environment claim, Mr. Joyner has failed to establish that his co-workers' harassment would be imputable to NNI. *See Sunbelt Rentals*, 521 F.3d at 319.

Similarly, with respect to his supervisors' allegedly discriminatory activity, NNI has established that the *Faragher-Ellerth* defense would prevail because: (1) Mr. Joyner was in receipt of NNI's anti-harassment policy, *see* ECF No. 176 ¶¶ 10–16, and (2) Mr. Joyner failed to take advantage of an opportunity to notify NNI of the allegedly harassing behavior. Accordingly, the Court SUSTAINS NNI's objections as to this claim and GRANTS summary judgment to NNI. ECF No. 175.

Q.      Roderick Waddell, Jr.

Mr. Waddell claims race-based harassment by his supervisors. ECF No. 296 at 28–29; *see also* ECF No. 202-2, Ex. 34; ECF No. 182-11 at 11–12. Mr. Waddell alleges that his supervisors (1) monitored him while refraining from monitoring his white co-workers and (2) complained about the music that he listened to, but did not complain about his white co-workers' music. The Report concluded that material facts are in dispute, and recommended denying summary judgment to NNI. ECF No. 296 at 39. NNI objects, arguing that the Report erroneously relied on "me too" evidence. ECF No. 316 at 34.

Mr. Waddell has failed to meet the third requirement of a hostile work environment claim because he has failed to demonstrate that this conduct was so severe or pervasive so as to amount to a change in the conditions of employment. *See Sunbelt*, 521 F.3d at 315–16 (noting that a summary judgment motion requires a court "to identify situations that a reasonable jury might find to be so out of the ordinary"). Accordingly, the Court SUSTAINS NNI's objections as to this claim and GRANTS summary judgment to NNI. ECF No. 181.

R.    Robert Robinson

The Report recommended dismissing Mr. Robinson's hostile work environment claim because he did not subjectively perceive his environment to be hostile. ECF No. 296-2 at 143–44, 150–53. As the Report acknowledges, Mr. Robinson submitted emails throughout his employment explaining that he felt positively about his job and the work environment. In his resignation letter, he also expressed satisfaction with his job and noted that he would return to NNI if his pay were to improve.

However, at his deposition, Mr. Robinson claimed that his attitude towards his job changed over the course of his employment as he experienced more forms of race-based discrimination, and that his resignation email was "sarcastic" because his supervisors knew of his feelings regarding the work environment and the perceived racial harassment. ECF No. 202-2 at 142) ("the recipients of the email [were] already aware of my dissatisfactions within the company [with respect to racial discrimination])," *see also* ECF No. 202-2 at 131–46 ("Once I really started to really understand and notice and see a lot of things going on and I brought it to [my supervisors'] attention, I guess you could say [this email] . . . was telling them [that something needed to change]."

Mr. Robinson's emails weigh against a finding that he subjectively perceived his environment to be hostile. However, where an employee alleges that he made underlying complaints about the harassment at issue (as here), the issue regarding conflicting evidence becomes one of credibility. The Court is not permitted to engage in credibility determinations at summary judgment; this is the province of the jury. *Harris v. Mayor and City Council of Baltimore*, 429 Fed. App'x 195, 202 (4th Cir. 2011). Accordingly, there is a factual dispute to Mr. Robinson's perception of his working environment, and NNI's Motion for Summary Judgment as to Mr. Robinson's hostile work environment claim is DENIED. ECF No. 141.

19

S.    Donyelle Pierce

Mr. Pierce asserted a claim for hostile work environment in the Second Amended Complaint. ECF No. 15. The Report concluded that Mr. Pierce could not establish a claim for hostile work environment that was not time barred. ECF No. 294 at 11. Mr. Pierce objected to the Report's conclusion, arguing that there were constituent acts that were part of a continuing violation such that his claim is not time barred. ECF No. 317 at 21–22.

Having reviewed Mr. Pierce's objections, the Court finds that Mr. Pierce did not identify any specific racially hostile act which occurred during the limitations period. Accordingly, this Court OVERRULES Mr. Pierce's objection regarding this claim and adopts the Report's recommendation to GRANT summary judgment to NNI. ECF No. 171.

## II.    DISPARATE TREATMENT CLAIMS

The plaintiffs below have asserted claims for disparate treatment. This section addresses these claims, and their related objections.

### 1.    LEGAL STANDARDS

To establish a *prima facie* case of discrimination for a pay disparity claim, a plaintiff must show that (i) the plaintiff is a member of a protected class; (ii) had satisfactory job performance; (iii) suffered an adverse employment action; and (iv) was treated differently than similarly situated employees outside of his or her protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187,190 (4th Cir. 2010).

To establish a *prima facie* case of discrimination for a promotion disparity claim, a plaintiff must show that (1) the plaintiff is a member of a protected class; (2) applied or sought to apply to an open position; (3) was qualified for the position; and (4) was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Evans v. Techs.*

*Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996). To establish a *prima facie* case of discrimination for an overtime disparity claim, a plaintiff must demonstrate that he or she (1) is a member of a protected class; (2) is performing his or her job satisfactorily; (3) was "not offered the opportunity to work overtime"; and (4) "similarly-situated individuals outside of [their] protected class received more favorable treatment." *Guion v. Mabus*, No. 4:11cv159, 2012 WL 1340117, at *4 (E.D.N.C. Apr. 17, 2012).

To establish a *prima facie* case of discrimination for a training disparity claim, a plaintiff must show that (1) he or she is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances that give rise to an inference of discrimination. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649–50 (4th Cir. 2002).

The United States Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) "established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). This framework, the application of which is challenged in many objections advanced to the Reports at issue here, has been reviewed and recognized in myriad decisions.

As the Supreme Court summarized in a subsequent ruling, the *McDonnell Douglas* framework involves the shifting of proof burdens:

> if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–253 (1981).

2.   ANALYSIS

A.   Anthony Alvarez

Mr. Alvarez asserted a claim for disparate treatment regarding pay in the Second Amended Complaint. ECF No. 15 at 111. Mr. Alvarez asserts he was paid $17.50 per hour when he started as a fitter and that he had four years of previous fitter experience. ECF No. 15 at 111. He claims that Mr. Burton, a white employee with no prior experience in the same job, was promoted over him and was given a raise to $18 per hour. ECF No. 15 at 111.

The Report concluded that NNI failed to move for summary judgment specifically on Mr. Alvarez's pay disparity claim, and that counsel failed to address any facts regarding this issue. ECF No. 296 at 47. NNI objects to the Report's conclusion, arguing that the evidence Mr. Alvarez advanced is insufficient as a matter of law, and that summary judgment should be granted in NNI's favor. ECF No. 316 at 2–3.

To establish a *prima facie* case of discrimination for a pay disparity claim, a plaintiff must show that the plaintiff had satisfactory job performance. *Coleman v. Md. Court of Appeals*, 626 F.3d 187,190 (4th Cir. 2010). NNI produced evidence to show that Mr. Alvarez could not meet this element of his disparate treatment claim. NNI specifically addressed Mr. Alvarez's claims of race discrimination and established that Mr. Alvarez was frequently disciplined regarding attendance. ECF No. 110 at 5. Accordingly, this Court SUSTAINS NNI's objection and GRANTS summary judgment to NNI as to this claim. ECF No. 109.

B.   Ian Blow

Mr. Blow asserted a claim for disparate pay treatment in the Second Amended Complaint. ECF No. 15 at 230. The Report concluded that Mr. Blow cannot show that his raises were an adverse employment action, and recommended granting NNI's motion for summary

judgment. ECF No. 296 at 56. Mr. Blow objects to the Report's conclusion, arguing that he established adequately that there were differences in his starting pay. ECF No. 317 at 28–31.

Having reviewed Mr. Blow's objections, the Court finds that Mr. Blow's raises were not an adverse action, and that the evidence proffered is insufficient to raise a genuine issue of material fact in dispute. Accordingly, the Court OVERRULES Mr. Blow's objection and GRANTS summary judgment to NNI as to this claim. ECF No. 111.

C.     Ernest Chesson

Mr. Chesson asserted a claim for disparate treatment in pay and overtime. ECF No. 15 at 230–33. The Report concluded that Mr. Chesson failed to establish the denial of his overtime claim, and recommended granting summary judgment to NNI. ECF No. 296-1 at 2. Mr. Chesson objects to the Report's conclusion that he did presented insufficient evidence of discrimination in pay. ECF No. 317 at 31.

Having reviewed the record, the Court concludes that Mr. Chesson failed to proffer evidence of discriminatory animus related to pay, and cannot establish *prima facie* claims. Accordingly, the Court OVERRULES Mr. Chesson's objection in regards to his disparate treatment allegations, and adopts the Report's recommendation to GRANT summary judgment to NNI as to this claim. ECF No. 115.

D.     Marchello Fields

Mr. Fields asserted a claim for disparate pay treatment in the Second Amended Complaint. ECF No. 15 at 230–32. The Report found that Mr. Fields did not proffer evidence of discrimination regarding his pay, and the Report applied the *McDonnell Douglas* framework in recommending granting summary judgment on this claim to NNI. ECF No. 296-1 at 4. The Report concluded that Mr. Fields failed to proffer evidence of a substantially similar comparator.

ECF No. 296-1 at 7. Mr. Fields objects, arguing that the Report incorrectly applied the *McDonnell Douglas* framework and that he has proffered sufficient evidence to raise a question of material fact. ECF No. 317 at 33–34.

Having reviewed the record, the Court finds that the Report correctly applied the *McDonnell Douglas* framework and that Mr. Fields failed to proffer evidence of a substantially similar comparator. Accordingly, the Court OVERRULES Mr. Fields' objections and adopts the Report's recommendation to GRANT summary judgment to NNI as to this claim. ECF No. 117.

E.     Willie Kershaw

Mr. Kershaw asserted a claim for disparate treatment in pay and training in the Second Amended Complaint. The Report found that Mr. Kershaw failed to demonstrate that there were material facts in dispute with respect to his claims, and recommended granting summary judgment to NNI. ECF No. 296-1 at 12. Mr. Kershaw objects to the Report's conclusion, arguing that he presented evidence of racist language that creates an issue of fact as to the disparate treatment in pay claim. ECF No. 317 at 34–35. Mr. Kershaw further objects to the Report's conclusion, arguing that there is a jury question as to whether Mr. Kershaw was paid less because of his race. ECF No. 317 at 35.

Having reviewed the record, the Court finds that Mr. Kershaw has failed to demonstrate that there were material facts in dispute sufficient to defeat summary judgment. Mr. Kershaw has not shown that the two alleged statements made to him "bear directly on the contested employment decision," or that there was any nexus between the alleged statements and any pay decisions. *See Rayyan v. Virginia Dept. of Transportation*, No. 17-1132, 2018 WL 834709, at *3–4 (4th Cir. Feb. 13, 2018). Accordingly, the Court OVERRULES Mr. Kershaw's objections and GRANTS summary judgment to NNI as to the disparate treatment claim. ECF No. 119.

F.     Derrick Cross

Mr. Cross asserted a claim for disparate treatment in pay, training, and promotion in the Second Amended Complaint. ECF No. 15 at 230–31. The Report recommended granting summary judgment as to these disparate treatment claims. ECF No. 296-1 at 17–24. Mr. Cross does not object to the Report's recommendation. Finding no clear error, the Court adopts the Report and GRANTS summary judgment to NNI as to the disparate treatment claim. ECF No. 121.

G.     Ronald Valentine

Mr. Valentine asserted a claim for disparate treatment in overtime pay in the Second Amended Complaint. ECF No. 15 at 230–31. The Report concluded that Mr. Valentine failed to establish a claim for racially disparate pay based on a single comparator, and recommended granting summary judgment to NNI. as to this claim. ECF No. 296-1 at 27. Mr. Valentine objects to the Report's conclusion, arguing that the Report incorrectly applied the *McDonnell Douglas* framework and that Mr. Valentine proffered comparators sufficient to survive summary judgment. ECF No. 317 at 35–37.

Having reviewed the record, the Court finds that the Report correctly applied the *McDonnell Douglas* framework and that Mr. Valentine failed to establish a *prima facie* case of racial discrimination. *See Rayyan*, No. 17-1132, 2018 WL 834709, at *3–4. Accordingly, this Court OVERRULES Mr. Valentine's objections and GRANTS summary judgment to NNI as to the disparate treatment claim. ECF No. 123.

H.     Jonathan Dantes

Mr. Dantes asserted a claim for disparate treatment in pay in the Second Amended Complaint. ECF No. 15 at 201–02. The Report concluded that Mr. Dantes had failed to provide

proof as to any adverse action, and also failed to provide sufficient evidence regarding an alleged comparator, and recommended granting NNI's motion for summary judgment as to this claim. ECF No. 296-1 at 38.

Having reviewed the record, this Court finds that Mr. Dantes has not met his burden regarding his disparate pay claim. Mr. Dantes was found sleeping during working hours on several occasions. ECF No. 264, attach. 3 at 2. Mr. Dantes cannot show that he had satisfactory job performance, and he failed to make a *prima facie* case for disparate treatment in pay. *See Coleman*, 626 F.3d at 190. Accordingly, this Court OVERRULES Mr. Dantes' objections and adopts the Report's recommendation to GRANT summary judgment to NNI as to the disparate treatment claim. ECF No. 125.

I.      Franz Edouard

Mr. Edouard asserted a claim for disparate treatment in pay, promotion, and training in the Second Amended Complaint. ECF No. 15 at 231–33. As to Mr. Edouard's disparate treatment in pay claim, the Report applied the *McDonnell Douglas* framework and found that Mr. Edouard failed to demonstrate that there were material facts in dispute with respect to his claim, and recommended granting summary judgment to NNI. ECF No. 296-1 at 48. As to Mr. Edouard's disparate treatment in training claim, the Report concluded that Mr. Edouard set forth vague, conclusory allegations in support of this claim, and recommended granting summary judgment to NNI. ECF No. 296-1 at 49. As to Mr. Edouard's failure to promote claim, the Report concluded that this claim failed for the same reason as his disparate treatment in training claim failed. ECF No. 296-1 at 50–51.

Mr. Edouard does not object to the Report's recommendations regarding his disparate treatment claims. *See* ECF No. 317 at 20–21. Finding no clear error, this Court ADOPTS the

Report's findings and the Report's recommendation to GRANT summary judgment to NNI as to the disparate treatment claims. ECF No. 129.

      J.     Reggie Holliman

Mr. Holliman asserted claims for disparate treatment in pay and overtime in the Second Amended Complaint. ECF No. 15 at 230–33. As to Mr. Holliman's pay disparity claim, the Report applied the *McDonnell Douglas* framework and concluded that Mr. Holliman failed to demonstrate material facts in dispute, and recommended granting summary judgment to NNI. ECF No. 296-1 at 55–56. As to Mr. Holliman's denial of overtime claim, the Report concluded that Mr. Holliman proffered no evidence regarding how much overtime was available (among other relevant considerations), and recommended granting summary judgment to NNI. ECF No. 296-2 at 1. Mr. Holliman objects to the Report's recommendations, arguing that he put forth sufficient evidence of racial discrimination to defeat summary judgment. ECF No. 317 at 39.

Having reviewed the record, this Court finds that Mr. Holliman presented insufficient evidence to support his claims. Mr. Holliman proffered no evidence about alleged derogatory comments regarding Mr. Holliman's pay or raises. Furthermore, Mr. Holliman failed to establish that James Adam and Ricky Penrod were similarly situated comparators. Accordingly, this Court OVERRULES Mr. Holliman's objections and adopts the Report's recommendation to GRANT summary judgment to NNI as to the disparate treatment claims. ECF No. 131.

      K.     Lamar Holloman

Mr. Holloman asserted a claim for disparate treatment in pay, promotion/transfer and training in the Second Amended Complaint. ECF No. 15 at 230–33. As to the pay disparity claim, the Report applied the *McDonnell Douglas* framework and found that Mr. Holloman failed to establish that he was paid less than an employee outside the protected class and that the

higher paid employee was performing a substantially similar job, and recommended granting summary judgment to NNI. ECF No. 296-2 at 7. As to Mr. Holloman's denial of promotion/transfer claim, the Report concluded that Mr. Holloman is unable to make out a *prima facie* claim, and recommended granting summary judgment to NNI. ECF No. 296-2 at 8–9. As to Mr. Holloman's denial of training claim, the Report concluded that insufficient evidence was presented, and recommended granting summary judgment to NNI. ECF No. 296-2 at 11. Mr. Holloman objects to the Report's recommendations, arguing that Mr. Holloman put forth sufficient evidence of comparators.

Having reviewed the record, this Court finds that Mr. Holloman failed to present evidence of a similarly situated comparator. Accordingly, this Court OVERRULES Mr. Holloman's objections and adopts the Report's recommendation to GRANT summary judgment to NNI as to Mr. Holloman's disparate treatment claims. ECF No. 133.

L.      Alfred Joyner, Jr.

Mr. Joyner asserted a claim for disparate treatment in pay and promotion in the Second Amended Complaint. ECF No. 15 at 230–31. The Report concluded that Mr. Joyner offered no direct evidence of discrimination in pay or promotion. The Report also applied the *McDonnell Douglas* framework and recommended granting summary judgment to NNI. ECF No. 296-2 at 16–17. Mr. Joyner did not object to the Report's recommendations. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 135.

M.      Willie Nichols

Mr. Nichols asserted a claim for disparate treatment in pay, promotion and overtime based on race. ECF No. 15 at 230–31. As to Mr. Nichols' disparate treatment in pay claim, the Report concluded that Mr. Nichols failed to establish adverse action against him and failed to

establish that a similarly situated employee outside his protected class was paid more than him. ECF No. 296-2 at 22–23. Mr. Nichols did not object to the Report's recommendations. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 139.

N.      Robert Robinson

Mr. Robinson asserted a claim for disparate treatment in pay, training and overtime based on race in the Second Amended Complaint. ECF No. 15 at 230–32. As to pay disparity, the Report applied the *McDonnell Douglas* framework, found that Mr. Robinson failed to demonstrate material facts in dispute, and recommended granting summary judgment to NNI. ECF No. 296-2 at 34. As to the claim regarding denial of training, the Report concluded that Mr. Robinson failed to establish that he was denied training, and recommended granting summary judgment to NNI. ECF No. 296-2 at 36.

Mr. Robinson filed no objections to the Report's recommendations regarding his disparate treatment claims. *See* ECF No. 317 at 7–10. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 141.

O.      Roderick Waddell, Sr.

Mr. Waddell asserted a claim for disparate treatment in pay and training based on race in the Second Amended Complaint. ECF No. 15 at 230–31. The Report concluded that Mr. Waddell failed to establish that he suffered any adverse employment action, and further failed to identify comparators outside the protected class that were treated more favorably than he regarding any delay or pay increases, and recommended granting summary judgment to NNI. ECF No. 296-2 at 43. Mr. Waddell objected to the Report's conclusion regarding his pay claim. ECF No. 317 at 43.

Having reviewed the record, the Court finds that Mr. Waddell's alleged delays in evaluations did not constitute adverse action. Further, Mr. Waddell failed to identify proper comparators, as those he proffered also experienced delays in their evaluations. Accordingly, this Court OVERRULES Mr. Waddell's objections and adopts the Report's recommendation to GRANT summary judgment to NNI as to this claim. ECF No. 143.

P.     Brandon Walker

Mr. Walker asserted a claim for disparate treatment in pay and training based on race in the Second Amended Complaint. ECF No. 15 at 230–31. The Report concluded that Mr. Walker cannot establish an adverse employment action, and recommended granting summary judgment to NNI as to Mr. Walker's pay disparity claim. ECF No. 296-2 at 48.

As to Mr. Walker's denial of training claim, the Report concluded that Mr. Walker did not produce admissible evidence to make a *prima facie* claim, and recommended granting summary judgment to NNI. ECF No. 296-2 at 49.

Mr. Walker objects only to the Report's recommendation regarding his disparate pay claim. ECF No. 317 at 44–45. Mr. Walker argues he produced sufficient evidence of discrimination because his supervisor, Mr. Jackson, was responsible for setting Mr. Walker's pay initially and provided his probationary raises that were smaller than Levi Cluts, a similarly situated white employee. ECF No. 317 at 44.

Having reviewed the record, the Court finds that Mr. Walker failed to put forth evidence that he suffered an adverse employment action. Mr. Walker's alleged raise discrepancies are insufficient to establish an adverse action. Accordingly, this Court OVERRULES Mr. Walker's objections and adopts the Report's recommendation to GRANT summary judgment to NNI as to this claim. ECF No. 145.

Q.      Richard Bostic

Mr. Bostic asserted a claim for disparate treatment in failing to accommodate based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that there were no material facts in dispute that would permit a reasonable jury to conclude that Mr. Bostic was subject to disparate treatment based on a failure to accommodate, and the Report recommended granting summary judgment to NNI. ECF No. 296-3 at 2. Mr. Bostic does not object to the Report's recommendation. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 147.

R.      Herbert Broughton

Mr. Broughton asserted a claim for disparate treatment in pay and training based on race in the Second Amended Complaint. ECF No. 15 at 230–31. As to Mr. Broughton's disparate pay claim, the Report concluded that Mr. Broughton failed to show he was treated less favorably regarding his benefits than comparators, and recommended granting summary judgment to NNI. ECF No. 296-3 at 10–11. As to Mr. Broughton's denial of training claim, the Report concluded that Mr. Broughton failed to establish a *prima facie* claim, and recommended granting summary judgment to NNI. ECF No. 296-3 at 11.

Mr. Broughton does not object to the Report's recommendations. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 149.

S.      Steven Gordon

Mr. Gordon asserted claims for disparate treatment in pay, overtime and promotions based on race in the Second Amended Complaint. ECF No. 15 at 230–31. As to Mr. Gordon's disparate pay claim, the Report concluded that NNI failed to meet its burden of demonstrating

31

the absence of a factual dispute, and recommended denying summary judgment to NNI. ECF No. 296-3 at 15. As to Mr. Gordon's denial of overtime claim, the Report concluded that Mr. Gordon did not produce direct evidence of discrimination with respect to his overtime claim, and recommended granting summary judgment to NNI. ECF No. 296-3 at 16–17.

NNI objects to the denial of summary judgment as to the pay disparity claim, arguing that Mr. Gordon cannot sustain this claim because deposition testimony establishes that he does not believe others were paid at higher rates, and that he admitted he received the same benefits package as others when he was hired. ECF No. 316 at 22–23.

Having reviewed the record, the Court agrees that NNI failed to address these claims sufficiently in its summary judgment memorandum. The party seeking summary judgment must inform the Court of the basis for its motion. NNI failed to do so here. Accordingly, the Court OVERRULES NNI's objections and adopts the Report's recommendation to DENY summary judgment to NNI as to Mr. Gordon's disparate treatment in pay claim.

Mr. Gordon does not object to the Report's conclusions as to his denial of overtime claim. Finding no clear error, this Court ADOPTS the Report's conclusions as to this claim and GRANTS summary judgment to NNI. ECF No. 151.

T.    Chris Payton

Mr. Payton asserted claims for disparate treatment in pay, promotion, and training based on race. ECF No. 15 at 230–33. As to the disparate pay claim, the Report concluded that Mr. Payton failed to show that he suffered an adverse employment action or that comparators were treated more favorably than he, and recommended granting summary judgment to NNI. ECF No. 296-3 at 24. As to Mr. Payton's denial of promotion claim, the Report concluded that Mr. Payton could not establish that there were welding positions available, and recommended

granting summary judgment to NNI. ECF No. 296-3 at 26. As to Mr. Payton's training claim, the Report concluded that he abandoned this claim. ECF No. 296-3 at 21.

Mr. Payton does not object to the Report's conclusions. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 153.

U.    Dennis Smith

Mr. Smith asserted a claim for disparate treatment in pay based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that Mr. Smith failed to show evidence of adverse employment actions, and recommended granting summary judgment to NNI. ECF No. 296-3 at 35. Mr. Smith does not object to the Report's conclusion. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 155.

V.    David Swain

Mr. Swain asserted claims for disparate treatment in pay, overtime, job assignment, training and promotion based on race. ECF No. 15 at 230–33. As to Mr. Swain's disparate pay claim, the Report concluded that Mr. Swain failed to identify comparators and failed to put forth evidence of an adverse employment action, and recommended granting summary judgment to NNI. ECF No. 296-3 at 45. Mr. Swain objects to the Report's conclusion, arguing that he suffered adverse employment action and that he correctly identified comparators sufficient to defeat summary judgment. ECF No. 317 at 45–47. Having reviewed the Record, the Court finds that Mr. Swain's alleged comparators were not similarly situated, because their pay was much less than Mr. Swain's.

As to Mr. Swain's denial of promotion claim, the Report concluded that Mr. Swain did not produce admissible evidence of discrimination to support this claim and recommended

33

granting summary judgment to NNI. ECF No. 296-3 at 47–49. Mr. Swain objects to the Report's conclusion here, arguing that he established pretext by submitting evidence of NNI's false and shifting explanations as to why he was not hired into the make-up supervisor position. ECF No. 317 at 47. Having reviewed the Record, the Court finds that NNI offered a legitimate, nondiscriminatory reason for deciding to not appoint Mr. Swain as a make-up supervisor. Accordingly, this Court OVERRULES Mr. Swain's objections and adopts the Report's recommendation to GRANT summary judgment to NNI. ECF No. 159.

W.     Gilbert Wiltz

Mr. Wiltz asserted a claim for disparate pay treatment in the Second Amended Complaint. ECF No. 15 at 230–31. The Report concluded that Mr. Wiltz cannot show that he suffered an adverse employment action and failed to identify similarly situated comparators, and recommended granting summary judgment to NNI. ECF No. 296-3 at 51–55; ECF No. 296-4 at 1–5. Mr. Wiltz objects to the Report's conclusions, arguing that he presented evidence of an adverse action and that he sufficiently identified comparators. ECF No. 317 at 48. Having reviewed the Record, the Court finds that Mr. Wiltz did not suffer an adverse employment action. *See Lovell v. BBNT Solutions, LLC*, 295 F. Supp. 2d 611, 626 (E.D. Va. 2003). The Court further adopts the Report's findings that Mr. Wiltz failed to establish a proper comparator. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). Accordingly, this Court OVERRULES Mr. Wiltz's objections and adopts the Report's recommendation to GRANT summary judgment to NNI. ECF No. 161.

X.     Mark Barnett

Mr. Barnett asserted a claim for disparate treatment in pay and promotion in the Second Amended Complaint. ECF No. 15 at 230–32. As to the disparate pay claim, the Report

34

concluded that Mr. Barnett produced insufficient evidence to make a *prima facie* case and recommended granting summary judgment to NNI. ECF No. 296-4 at 6–10. Mr. Barnett objects to the Report's conclusion, arguing that he presented sufficient evidence of discrimination, and that various supervisors imposed obvious double standards, which creates a jury question as to the motive for the challenged treatment. ECF No. 317 at 49.

Having reviewed the Record, the Court finds that Mr. Barnett failed to establish that he is similarly situated to any of the purported comparators. Accordingly, the Court OVERRULES Mr. Barnett's objections as to the disparate pay claim, and adopts the Report's recommendation to GRANT summary judgment to NNI.

As to the promotion claim, the Report concluded that Mr. Barnett failed to plead a *prima facie* claim because he never applied for a permanent position. ECF No. 296-4 at 11. Mr. Barnett does not object to the Report's conclusion in regards to his promotion claim. Finding no clear error, the Court ADOPTS the Report's findings as to the promotion claim and GRANTS summary judgment to NNI. ECF No. 163.

Y. Jamesina Crawford

Ms. Crawford asserted claims for disparate treatment in pay and overtime based on race in the Second Amended Complaint. ECF No. 15 at 230–34. As to the disparate treatment in pay claim, the Report applied the *McDonnell Douglas* framework, concluded that Ms. Crawford failed to identify similarly situated comparators, and recommended granting summary judgment to NNI. ECF No. 296-4 at 21–24. Ms. Crawford objects to the Report's conclusions, arguing that she presented sufficient evidence to raise a reasonable inference of discrimination, and that the Report erred in finding that Ms. Crawford's comparators were not similarly situated. ECF No. 317 at 50. Having reviewed the record, the Court finds that Ms. Crawford failed to identify

similarly situated comparators. *See Smith v. U.S. Cong.*, No. 312cv45, 2015 WL 1011545, at \*3 (E.D. Va. Mar. 6, 2015) (the court is not required to sift through the record searching for evidence to support opposition to summary judgment). Accordingly, as to the disparate pay claim, the Court OVERRULES Ms. Crawford's objections and adopts the Report's recommendation to GRANT summary judgment to NNI.

As to the disparate treatment in overtime claim, the Report recommended granting summary judgment to NNI. ECF No. 296-4 at 24–25. Ms. Crawford did not object to the Report's conclusions regarding this claim. Finding no clear error, the Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 165.

Z.    John Harris

Mr. Harris asserted claims for disparate pay, training and training. ECF No. 15. The Report recommended granting summary judgment to NNI as to these claims. ECF No. 296-4 at 32–35. Mr. Harris does not object to the Report's conclusions regarding his disparate treatment claims. Finding no clear error, the Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 167.

AA.    Tourke Hooker

Mr. Hooker asserted claims for disparate treatment in pay and training in the Second Amended Complaint. ECF No. 15. As to the disparate treatment in pay claim, the Report concluded that Mr. Hooker failed to identify similarly situated comparators, and recommended granting summary judgment to NNI. ECF No. 296-4 at 40. Mr. Hooker objects to the Report's findings, arguing that there is substantial evidence of racial animus and that he identified similarly situated comparators. ECF No. 317 at 52–54. Having reviewed the record, this Court finds that Mr. Hooker failed to show that comparably-qualified employees outside of Mr.

Hooker's protected class were treated more favorably. *See Haywood*, 387 F. App'x at 359 (holding that an actual comparator means an individual in the same position with the same supervisor and alike with respect to performance, experience, and qualifications in all material respects). Accordingly, as to the disparate treatment in pay claim, this Court OVERRULES Mr. Hooker's objections and adopts the Report's recommendation to GRANT summary judgment to NNI.

As to the disparate treatment in training and assignments claims, the Report recommended granting summary judgment to NNI. Mr. Hooker does not object to the Report's findings. Finding no clear error as to these claims, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 169.

BB.    Theo Pierce

Mr. Pierce asserted claims for disparate treatment in pay, benefits and training in the Second Amended Complaint. ECF No. 15 at 230–31.

As to the disparate treatment in pay claim, the Report concluded that Mr. Pierce failed to identify similarly situated comparators and recommended granting summary judgment to NNI. ECF No. 296-4 at 52–55.

Mr. Pierce objects to the Report's findings, arguing that he raised a reasonable inference that his supervisors discriminated against him with respect to his pay, and that he identified comparators. ECF No. 317 at 59–60.

Having reviewed the record, the Court finds that Mr. Pierce failed to demonstrate that identified comparators were similarly situated. Accordingly, as to the disparate treatment in pay claim, the Court OVERRULES Mr. Pierce's objections and adopts the Report's recommendation to GRANT summary judgment to NNI.

As to Mr. Pierce's disparate treatment in benefits and training claims, the Report concluded that Mr. Pierce abandoned these claims. ECF No. 296-4 at 49. Mr. Pierce does not object to the Report's findings as to these claims. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 173.

CC.    Lamar Joyner

Mr. Joyner asserted claims for disparate treatment in pay and discipline in the Second Amended Complaint. ECF No. 15 at 203–06. The Report recommended granting summary judgment as to the disparate treatment claims to NNI. ECF No. 296-5 at 22. Mr. Joyner did not object to the Report. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 175.

DD.    Ronald Stewart

Mr. Stewart asserted claims for disparate treatment in pay, promotion and overtime in the Second Amended Complaint. ECF No. 15 at 188–93.

As to the disparate treatment in pay and promotion claims, the Report concluded that Mr. Stewart failed to identify comparators, and failed to proffer evidence that he applied to a make-up supervisor position, and recommended granting summary judgment to NNI. ECF No. 296-5 at 29–34.

Mr. Stewart objects to the Report's findings, arguing that there was sufficient evidence of racial animus and that he identified comparators. ECF No. 317 at 54–57.

Having reviewed the record, the Court finds that Mr. Stewart's alleged comparators are not similarly situated.    Accordingly, as to the disparate treatment claims, this Court OVERRULES Mr. Stewart's objections and adopts the Report's recommendation to GRANT summary judgment to NNI.

38

As to Mr. Stewart's disparate treatment in overtime claim, the Report recommended granting summary judgment to NNI. ECF No. 296-5 at 34–36. Mr. Stewart does not object to this recommendation. Finding no clear error, this Court ADOPTS the Report's findings as to the overtime claim and GRANTS summary judgment to NNI. ECF No. 177.

EE.     Roderick Waddell, Jr.

Mr. Waddell asserted claims for disparate treatment in pay, overtime, failure to give light duty, assignment and training in the Second Amended Complaint. ECF No. 15 at 197–99. As to the disparate pay claim, the Report concluded that Mr. Waddell failed to identify similarly situated comparators, and recommended granting summary judgment to NNI. ECF No. 296-5 at 38–41.

Mr. Waddell objects to the Report's conclusions, arguing that he presented evidence of racial animus, and that the Report erred in applying the *McDonnell Douglas* framework, and that he sufficiently identified similarly situated comparators. ECF No. 317 at 57–58.

Having reviewed the record, this Court finds that Mr. Waddell has failed to demonstrate any nexus between supervisor actions and his pay discrimination claim. Furthermore, Mr. Waddell failed to identify a similarly situated comparator. Accordingly, as to the disparate pay claim, this Court OVERRULES Mr. Waddell's objections and adopts the Report's recommendation to GRANT summary judgment to NNI.

As to Mr. Waddell's remaining claims (disparate treatment in overtime, failure to give light duty, assignments and training), the Report concluded that Mr. Waddell abandoned these claims. ECF No. 296-5 at 36–37. Mr. Waddell does not object to this recommendation. Finding no clear error, this Court ADOPTS the Report's findings and finds that these remaining claims were abandoned. ECF No. 181.

FF.    Donyelle Pierce

Mr. Pierce asserted a claim for disparate treatment based on race with respect to pay in the Second Amended Complaint. ECF No. 15. The Report concluded that Mr. Pierce failed to produce direct evidence of discrimination, and recommended granting summary judgment to NNI. ECF No. 294 at 14.

Mr. Pierce objects to the Report's conclusions, arguing that he sufficiently identified comparators. ECF No. 317 at 59.

Having reviewed the Record, the Court finds that Mr. Pierce failed to demonstrate that his identified comparators were similarly situated. Mr. Pierce's only evidence was presenting the pay rates of his alleged comparators, which is insufficient to defeat summary judgment. Accordingly, Mr. Pierce's objections as to this claim are OVERRULED and the Report's recommendation to GRANT summary judgment to NNI is ADOPTED. ECF No. 171.

Mr. Pierce also asserted a claim for disparate treatment based on race with respect to assignments. ECF No. 15. The Report concluded that Mr. Pierce abandoned this claim and recommended granting summary judgment to NNI. ECF No. 294 at 9–10. Mr. Pierce did not object to the Report's findings as to this claim. Finding no clear error, this Court ADOPTS the Report's findings as to this claim and GRANTS summary judgment to NNI. ECF No. 171.

III.    TERMINATION AND CONSTRUCTIVE DISCHARGE CLAIMS

The plaintiffs below have asserted claims for termination and constructive discharge. This section addresses these claims, the Reports' recommendations, and the related objections.

1.    LEGAL STANDARDS

A plaintiff may establish a claim for race discrimination by demonstrating through direct or circumstantial evidence that the plaintiff's race was a motivating factor in an employer's

40

adverse employment action. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).

Alternatively, as reviewed above, under the *McDonnell Douglas* framework a plaintiff may establish a *prima facie* case of disparate treatment based upon an alleged discriminatory discharge. To do so, a plaintiff must show that (1) he or she was a member of a protected class; (2) his or her employment was terminated; (3) at the time of the plaintiff's termination, he or she was performing at a level that met the employer's legitimate expectations; and (4) the plaintiff's position remained open or was filled by a similarly qualified individual outside the protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004)).

After a plaintiff meets this burden, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the termination. *Derrickson*, 84 F. Supp. 2d at 693. If the defendant can make this showing, the burden shifts back to the plaintiff to show that this reason is pretextual. *Id.*

Plaintiffs not terminated can make out a *prima facie* case of constructive discharge by showing that the employer deliberately made working conditions so difficult that a reasonable person in the employee's position would be compelled to resign. *See Green v. Brennan*, 136 S. Ct. 1769, 1777 (2017).

2.     ANALYSIS

A.     Ernest Chesson

Mr. Chesson asserted a claim for termination based on constructive discharge in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that material facts

41

are disputed regarding whether Mr. Chesson's working conditions were intolerable, and the Report recommended denying summary judgment to NNI. ECF No. 296-1 at 2–3.

NNI objects to the Report's conclusion, arguing that no reasonable jury could find that Mr. Chesson found the conditions so intolerable that he had to resign. ECF No. 316 at 10. NNI argues that Mr. Chesson worked at NNI for three years, applied to become a permanent employee, and testified that he chose to quit because of scheduling issues. ECF No. 3016 at 10–11.

NNI's first objection fails. Whether Mr. Chesson chose to apply to become a permanent employee during his tenure does not preclude the possibility that working conditions later become intolerable. Furthermore, whether Mr. Chesson was also motivated to quit because of a schedule change does not preclude a viable claim that the working conditions became so intolerable that a reasonable person in the position would not have felt compelled to resign. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). Accordingly, NNI's objections are OVERRULED and the Court adopts the Report's recommendation to DENY summary judgment to NNI. ECF No. 115.

B.     Marchello Fields

Mr. Fields asserted a claim for termination based on constructive discharge in the Second Amended Complaint. ECF No. 15 at 230–32. The Report concluded that material facts are in dispute about whether Mr. Fields' working conditions were intolerable, and recommended denying summary judgment to NNI. ECF No. 296-1 at 7–8.

NNI objects to this conclusion, arguing that Mr. Fields testified to engaging in a lengthy job search before quitting for a higher paying job. ECF No. 316 at 9. Having reviewed the record, the Court finds that Mr. Fields' job search before leaving for another job does not

42

preclude a claim that he suffered objectively intolerable working conditions. *See Honor*, 383 F.3d at 186.

Accordingly, NNI's objections are OVERRULED, and this Court adopts the Report's recommendation to DENY summary judgment to NNI. ECF No. 117.

C.    Jonathan Dantes

Mr. Dantes is construed as having pled a claim for discriminatory termination in the Second Amended Complaint. ECF No. 296-1 at 35. The Report concluded that Mr. Dantes failed to identify a suitable comparator outside his protected class who was treated differently regarding the failure to turn in safety check cards and sleeping during lunch or working hours, and recommended granting summary judgment to NNI. ECF No. 296-1 at 40. Mr. Dantes objects to the Report's conclusions, arguing that the Report overlooked direct evidence of NNI's discriminatory motive. ECF No. 317 at 17.

Having reviewed the record, this Court finds that insufficient evidence was presented that race was a motivating factor in Mr. Dantes' termination. As such, under the *McDonnell Douglas* framework, Mr. Dantes is unable to make a *prima facie* claim, because he cannot show that at the time of his termination he was performing at a level that met the employer's expectations. Mr. Dantes was found sleeping on the job repeatedly, and he failed to turn in his safety check cards as required. *See* ECF No. 296 at 94, 96–98.

Accordingly, this Court OVERRULES Mr. Dantes' objections and adopts the Report's recommendation to GRANT summary judgment to NNI. ECF No. 125.

D.    Franz Edouard

Mr. Edouard asserted a claim for termination based on race in the Second Amended Complaint. ECF No. 15 at 231–33. The Report concluded that Mr. Edouard asked to be laid off

43

at the completion of the "Pin Jig project" because he was offered better employment elsewhere, and the Report recommended granting summary judgment to NNI. ECF No. 296-1 at 51–52.

Mr. Edouard objects to the Report's conclusions, arguing that the Report adopted NNI's version of events erroneously and that he presented evidence of unlawful discrimination. ECF No. 317 at 20–21.

Having reviewed the record, this Court finds that there is undisputed evidence that Mr. Edouard was hired to work on the Pin Jig project, and that when that project ended, he was offered work. *See* ECF No. 130-2 at 29–33. Mr. Edouard cannot make out a *prima facie* case, because he was not terminated. Accordingly, this Court OVERRULES Mr. Edouard's objections and adopts the Report's recommendation to GRANT summary judgment to NNI. ECF No. 129.

### E.     Reggie Holliman

Mr. Holliman asserted a claim for termination based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that the undisputed material facts established that Mr. Holliman was terminated for using drugs, and recommended granting summary judgment to NNI. ECF No. 296-2 at 4. Mr. Holliman does not object to the Report's conclusions regarding this claim. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 131.

### F.     Lamar Holloman

Mr. Holloman asserted a claim for termination by constructive discharge based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that material facts are in dispute about whether Mr. Holloman's working conditions were intolerable, and recommended denying summary judgment to NNI. ECF No. 296-2 at 11–12.

Having reviewed the record, the Court finds that although Mr. Holloman took another job, this fact does not preclude allegations that he suffered objectively intolerable working conditions at NNI. *See Honor*, 383 F.3d at 186. Accordingly, NNI's objections as to constructive discharge are OVERRULED, and this Court adopts the Report's recommendation to DENY summary judgment to NNI. ECF No. 133.

G.    Robert Robinson

Mr. Robinson asserted a claim for constructive discharge based on race in the Second Amended Complaint. ECF No. 15 at 230–32. The Report concluded that Mr. Robinson did not perceive his working conditions to be infused with severe and pervasive harassment such that no reasonable jury could find Mr. Robinson was constructively discharged, and recommended granting summary judgment to NNI. ECF No. 296-2 at 39.

Mr. Robinson objects to the Report's conclusions, arguing that the Report impermissibly resolves factual questions and makes improper credibility determinations. ECF No. 317 at 7.

Having reviewed the record, the Court concludes that this claim raises factual issues. *See Honor*, 383 F.3d at 186. Accordingly, this Court SUSTAINS Mr. Robinson's objections and DENIES summary judgment to NNI. ECF No. 141.

H.    Richard Bostic

Mr. Bostic asserted a claim for termination resulting from constructive discharge based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that material facts are in dispute regarding whether Mr. Bostic's working conditions were intolerable, and recommended denying summary judgment to NNI. ECF No. 296-3 at 2.

NNI objects to this conclusion, arguing that Mr. Bostic testified that he resigned because of his commute and because of a supervisor's alleged denial and monitoring of breaks. ECF No.

45

316 at 11. Having reviewed the record, the Court finds that the determination about whether Mr. Bostic suffered objectively intolerable working conditions remains unresolved. *See Honor*, 383 F.3d at 186. Accordingly, NNI's objections as to termination are OVERRULED and this Court adopts the Report's recommendation to DENY summary judgment to NNI. ECF No. 147.

I.     Chris Payton

Mr. Payton asserted a claim for termination based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that material issues of fact existed as to whether Mr. Payton was terminated due to his race, and the Report recommended denying summary judgment to NNI. ECF No. 296-3 at 30.

NNI objects to the Report's conclusions, arguing that Mr. Payton was terminated for cause and that Mr. Payton did not put forth evidence to dispute this. ECF No. 316 at 12–13.

In order to establish a *prima facie* case for termination based on race, Mr. Payton needed to show that he was performing at a level that met NNI's legitimate expectations, and that his position remained open or was filled by a similarly qualified individual outside his protected class. *See McDonnell Douglas Corp.*, 411 U.S. at 792. A review of the record establishes that Mr. Payton was terminated for photographing inside NNI against policy and posting photographs on social media. *See* ECF No. 176. Mr. Payton did not present evidence that this proffered nondiscriminatory reason was pretextual. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998) (holding that plaintiffs must prove that the employer's legitimate, non-discriminatory reason was false and that the real reason they were fired was discriminatory or retaliatory animus to state a triable issue of fact). Accordingly, as to the alleged termination based on race, this Court SUSTAIN'S NNI's objections and GRANTS summary judgment. ECF No. 153.

46

J.    Dennis Smith

Mr. Smith asserted a claim for termination based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report recommended granting summary judgment to NNI as to this claim. ECF No. 296-3 at 38. Mr. Smith does not object to the Report. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 155.

K.    David Swain

Mr. Swain asserted a claim for termination based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that material facts are in dispute regarding whether Mr. Swain's working conditions were intolerable, and the Report recommended denying summary judgment to NNI. ECF No. 296-3 at 49.

NNI objects to the Report's conclusions, arguing that Mr. Swain did not present evidence that the conditions were so intolerable that a reasonable person would be forced to resign. ECF No. 316 at 10.

Having reviewed the record, this Court finds that whether objectively intolerable working conditions existed is an issue of material fact. *See Honor*, 383 F.3d at 186. Accordingly, NNI's objections as to termination are OVERRULED, and this Court adopts the Report's recommendation to DENY summary judgment to NNI. ECF No. 159.

L.    Mark Barnett

Mr. Barnett asserted a claim for termination based on race in the Second Amended Complaint. ECF No. 15 at 230–32. The Report concluded that Mr. Barnett failed to demonstrate that he was terminated because of his race, and recommended granting summary judgment to NNI. ECF No. 296-4 at 14. Mr. Barnett does not object to the Report's conclusions. Finding no

clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 163.

M.    John Harris

Mr. Harris asserted a claim for termination based on race in the Second Amended Complaint. ECF No. 15 at 111–15. The Report recommended granting summary judgment to NNI. ECF No. 296-4 at 34. Mr. Harris does not object to the Report's conclusions regarding this claim. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 167.

N.    Theo Pierce

Mr. Pierce asserted a claim for termination based on race in the Second Amended Complaint. ECF No. 15 at 137–42. The Report recommended granting summary judgment to NNI. ECF No. 296-5 at 9. Mr. Pierce does not object to the Report's conclusions regarding this claim. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 173.

O.    Lamarr Joyner

Mr. Joyner asserted a claim for termination based on race in the Second Amended Complaint. ECF No. 15 at 203–06. The Report concluded that material issues of fact existed as to whether Mr. Joyner was terminated due to his race, and recommended denying summary judgment to NNI. ECF No. 296-5 at 28.

NNI objects to the Report's conclusions, arguing that Mr. Joyner was terminated for cause and that Mr. Joyner did not put forth any evidence to dispute this. ECF No. 316 at 12–13.

To establish a *prima facie* case for termination based on race, Mr. Joyner needed to show that he was performing at a level that met NNI's legitimate expectations, and that his position

48

remained open or was filled by a similarly qualified individual outside his protected class. *See McDonnell Douglas Corp.*, 411 U.S. at 792. A review of the record establishes that Mr. Joyner was terminated for photographing inside NNI against policy and posting photographs on social media. *See* ECF No. 176. Mr. Joyner did not present evidence that this proffered nondiscriminatory reason was pretextual. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998) (holding that plaintiffs must prove that the employer's legitimate, non-discriminatory reason was false and that the real reason they were fired was discriminatory or retaliatory animus in order to state a triable issue of fact). Accordingly, as to termination based on race, this Court SUSTAIN'S NNI's objections and GRANTS summary judgment. ECF No. 175.

P.    Donyelle Pierce

Mr. Pierce asserted a claim for constructive discharge in the Second Amended Complaint. ECF No. 15. The Report found that Mr. Pierce abandoned this claim. ECF No. 294 at 9–10. Mr. Pierce did not object to this finding. Finding no clear error as to this claim, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 171.

IV.    RETALIATION CLAIMS

The plaintiffs below have asserted claims for retaliation. This section addresses the Reports' recommendations regarding these claims and their related objections.

1.    LEGAL STANDARDS

Section 1981 provides a remedy for a plaintiff claiming retaliation in response to complaining about a Section 1981 violation. *See e.g. Humphries*, 553 U.S. at 451. A plaintiff may prove a claim of retaliation "either through direct or indirect evidence of retaliatory animus, or through the burden-shifting framework" set forth in *McDonell Douglas*. *Foster v. Univ of*

*Maryland-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

As reviewed above, the *McDonnell Douglas* framework requires a plaintiff to establish a *prima facie* case of retaliation by showing that (i) the plaintiff engaged in a protected activity; (ii) the employer took an adverse employment action against the plaintiff; and (iii) there was a causal link between the protected activity and the adverse employment action. *Guessons v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016); *Foster*, 787 F.3d at 250; *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005). If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to "show that its purported retaliatory action was in fact the result of legitimate non-retaliatory reason." *Foster*, 787 F.3d at 250. If the employer does so, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's "purported nonretaliatory reasons 'were not [their] true reasons, but were a pretext'" for retaliation. *Id.*

2.    ANALYSIS

A.    Ernest Chesson

Mr. Chesson asserted a claim for retaliation based on race in the Second Amended Complaint. ECF No. 15. The Report concluded that NNI's counsel failed to address Mr. Chesson's retaliation claim in its memorandum, and recommended denying summary judgment to NNI. ECF No. 296-1 at 3.

NNI objects to the Report's conclusions, arguing that Mr. Chesson did not plead a retaliation claim and that even if he did, no actionable claim exists. ECF No. 316 at 23–24. Having reviewed the record, this Court finds that NNI failed to address Mr. Chesson's retaliation claim in its memorandum in support of summary judgment. Accordingly, as to Mr. Chesson's

relation claim, this Court OVERRULES NNI's objections and adopts the Report's recommendation to DENY summary judgment to NNI. ECF No. 115.

### B. Willie Kershaw

Mr. Kershaw asserted a claim for retaliation based on termination in the Second Amended Complaint. ECF No. 15 at 230–32. The Report concluded that Mr. Kershaw failed to establish a *prima facie* claim of retaliation, and recommended granting summary judgment to NNI. ECF No. 296-1 at 15. Mr. Kershaw does not object to the Report's conclusions as to his retaliation claim. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 119.

### C. Ronald Valentine

Mr. Valentine asserted a claim for retaliation in the Second Amended Complaint. ECF No. 15. The Report concluded that Mr. Valentine failed to establish a *prima facie* case because his employer was unaware of the protected activity, and recommended granting summary judgment to NNI. ECF No. 296-1 at 28–31. Mr. Valentine does not object to the Report's conclusions as to his retaliation claim. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 123.

### D. Jonathan Dantes

The Report concluded that Mr. Dantes did not assert a claim for retaliation. ECF No. 266-1 at 33. Mr. Dantes does not object to this conclusion. Finding no clear error, this Court ADOPTS the Report's finding that Mr. Dantes never raised a retaliation claim. ECF No. 125.

### E. Lamar Holloman

Mr. Holloman asserted a claim for retaliation based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that Mr. Holloman failed to make a

*prima facie* case of retaliation, and recommended granting summary judgment to NNI. ECF No. 296-2 at 14. Mr. Holloman does not object to the Report's conclusions regarding his retaliation claim. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 133.

F.     Willie Nichols

Mr. Nichols asserted a claim for retaliation based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that Mr. Nichols failed to make a *prima facie* case of retaliation and recommended granting summary judgment to NNI. ECF No. 296-2 at 28. Mr. Nichols does not object to the Report's conclusions regarding his retaliation claim. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 139.

G.     Richard Bostic

Mr. Bostic asserted a claim for retaliation based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that Mr. Bostic failed to make a *prima facie* case of retaliation, and that even if he had, NNI had produced a legitimate, nonretaliatory explanation, and the Report recommended granting summary judgment to NNI. ECF No. 296-3 at 2–7. Mr. Bostic does not object to the Report's conclusions. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 147.

H.     Chris Payton

Mr. Payton asserted a claim for retaliation based on race in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that Mr. Payton demonstrated a genuine dispute of material fact as to his retaliation claim, and recommended denying summary

judgment to NNI. ECF No. 296-3 at 30. NNI objects to the Report's conclusions, arguing that Mr. Payton failed to put forth evidence of facts that specifically refute NNI's reason for terminating Mr. Payton's employment (taking photographs inside the facility and posting them on social media, against company policy). ECF No. 316 at 13.

Having reviewed the record, the Court finds that Mr. Payton failed to put forth sufficient evidence that refutes NNI's proffered reason for terminating Mr. Payton. *See Bryan v. Prince George's Cty. Md.*, No. DKC 10-2452, 2011 WL 2650759, at *6 (D. Md. July 5, 2011), *aff'd*, 484 F. App'x 775 (4th Cir. 2012) ("A litigant cannot simply dub an employer's explanation false without supporting evidence. Instead, [the litigant] must point to facts that render the employer's reason so questionable as to raise an inference of deceit."). Accordingly, this Court SUSTAINS NNI's objection, and GRANTS summary judgment to NNI. ECF No. 153.

I.      Dennis Smith

Mr. Smith asserted a claim for retaliation in the Second Amended Complaint. ECF No. 15 at 230–33. The Report concluded that NNI proffered a legitimate, nonretaliatory reason for terminating Mr. Smith, and recommended granting summary judgment to NNI. ECF No. 296-3 at 39. Mr. Smith does not object to the Report's conclusions. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 155.

J.      David Swain

Mr. Swain asserted a claim for retaliation in the Second Amended Complaint. ECF No. 15. The Report concluded that Mr. Swain failed to make a *prima facie* case of retaliation and recommended granting summary judgment to NNI. ECF No. 296-3 at 51. Mr. Swain does not object to the Report's conclusions regarding his retaliation claim. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 159.

53

K.     Jamesina Crawford

Ms. Crawford asserted claims for race and gender retaliation in the Second Amended Complaint. ECF No. 15. As to race retaliation, the Report applied the *McDonnell Douglas* framework and concluded that NNI proffered a legitimate and nonretaliatory reason for Ms. Crawford's termination, and recommended granting summary judgment to NNI. ECF No. 296-4 at 26–27. As to gender retaliation, the Report recommended that this claim should fail for the same reason, and recommended granting summary judgment to NNI. ECF No. 296-4 at 27.

Ms. Crawford objects to the Report's conclusions, arguing that she put forth sufficient evidence that NNI's proffered reasons were pretextual. ECF No. 317 at 10–12. Having reviewed the record, the Court finds that Ms. Crawford was terminated for persistent absences and refusing to return to work despite being cleared by a medical provider to do so. Accordingly, this Court OVERRULES Ms. Crawford's objections and adopts the Report's recommendation to GRANT summary judgment to NNI. ECF No. 165.

L.     John Harris

Mr. Harris asserted a claim for retaliation based on race in the Second Amended Complaint. ECF No. 15. The Report concluded that because NNI's decision to terminate Mr. Harris was decided before Mr. Harris complained about racial discrimination, he has failed to make a *prima facie* showing of retaliation, and the Report recommended granting summary judgment to NNI. ECF No. 296-4 at 34–35.

Having reviewed the record, the Court finds that Mr. Harris did not make out a case of retaliation based on race. Furthermore, Mr. Harris was never an employee of NNI and cannot be held liable for retaliation. Accordingly, this Court OVERRULES Mr. Harris' objections and adopts the Report's recommendation to GRANT summary judgment to NNI. ECF No. 167.

M.    Tourke Hooker

Mr. Hooker asserted a claim for retaliation based on race in the Second Amended Complaint. ECF No. 15. The Report concluded that Mr. Hooker failed to proffer evidence of an adverse employment action, and recommended granting summary judgment to NNI. ECF No. 296-4 at 48–49. Mr. Hooker does not object to the Report's conclusions regarding retaliation. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 169.

N.    Lamarr Joyner

Mr. Joyner asserted a claim for retaliation in the Second Amended Complaint. ECF No. 15. The Report concluded that Mr. Joyner demonstrated a genuine dispute of material fact regarding his retaliation claim, and recommended denying summary judgment to NNI. ECF No. 296-5 at 22–28.

NNI objects to the Report's conclusions, arguing that Mr. Joyner failed to put forth evidence that specifically refutes NNI's reason for terminating Mr. Joyner's employment (taking photographs inside the facility and posting them on social media, against company policy). ECF No. 316 at 14.

Having reviewed the record, the Court finds that Mr. Joyner failed to put forth evidence that refuted NNI's proffered reason for terminating Mr. Joyner. *See Bryan v. Prince George's Cty. Md.*, 2011 WL 2650759, at *6 (D. Md. July 5, 2011), *aff'd*, 484 F. App'x 775 (4th Cir. 2012) ("A litigant cannot simply dub an employer's explanation false without supporting evidence. Instead, [the litigant] must point to facts that render the employer's reason so questionable as to raise an inference of deceit."). Accordingly, this Court SUSTAINS NNI's objection and GRANTS summary judgment to NNI. ECF No. 175.

O.    Donyelle Pierce

Mr. Pierce asserted a claim for retaliation in the Second Amended Complaint. ECF No. 15. The Report found that Mr. Pierce abandoned this claim. ECF No. 294 at 9–10. Mr. Pierce did not object to this finding. Finding no clear error as to this claim, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 171.

V.    FAMILY MEDICAL LEAVE ACT CLAIMS

Dennis Smith is the only plaintiff to bring a claim under the Family Medical Leave Act ("FMLA"). This section addresses the applicable standards regarding his claim, the Report's recommendation, and this Court's adoption of this recommendation.

1.    LEGAL STANDARDS

The FMLA provides covered employees with two kinds of rights and protections. First, covered employees who take a leave of absence for family or medical reasons qualify for numerous substantive entitlements. These employees are "entitled to a total of 12 workweeks of leave during any 12–month period" for matters related to the employees' family and health, 29 U.S.C. § 2612(a)(1), and each of these employees has a right "to be restored by the employer to the position of employment held by the employee when the leave commenced," or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* § 2614(a)(1)(A)–(B). Leave taken under the FMLA "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." *Id.* § 2614(a)(2).

However, a restored employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." *Id.* § 2614(a)(3)(B).

56

These substantive rights, and their accompanying protections, *see id.* § 2615(a)(1), are prescriptive, "set[ting] substantive floors for conduct by employers, and creating entitlements for employees." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998) (quoting *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712–13 (7th Cir. 1997)) (internal quotation marks omitted) (amendment in original); *see also Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) (explaining that "in §§ 2612–2615, the Act contains prescriptive protections for employees that are expressed as substantive statutory rights"). Claims of alleged violations of these prescriptive rights—known as "interference" or "entitlement" claims—arise under 29 U.S.C.A. § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

To state a claim of interference with FMLA rights, a plaintiff must establish that (1) the employee was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) the plaintiff was entitled to leave under the FMLA, (4) the employee gave the employer notice of the intention to take leave, and (5) the employer denied the employee FMLA benefits to which the employee was entitled. *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 975 (E.D. Va. 2012) (*quoting Bullock v. Kraft Foods, Inc.*, No. 3:11cv36, 2011 WL 5872898, at *4 (E.D. Va. Nov. 22, 2011) (unpublished)) (internal quotation marks omitted); *accord Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

### 2. ANALYSIS

Dennis Smith is the only plaintiff to bring a claim under the FMLA. *See* ECF No. 15 at 235. The Report concluded that Mr. Smith failed to state a claim upon which relief can be granted and also failed to refute NNI's claim for summary judgment, thus constituting waiver of

this claim. ECF No. 296-3 at 40. The Report recommended granting summary judgment to NNI. ECF No. 296-3 at 40. Mr. Smith did not object to the Report's conclusions. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 155.

## VI.   GENDER DISCRIMINATION CLAIMS

Ms. Crawford is the only plaintiff to bring a gender discrimination claim. This section addresses the applicable standards regarding her claim, the Report's recommendation, and this Court's adoption of this recommendation.

### 1.   LEGAL STANDARDS

A plaintiff may establish a case of gender discrimination through direct evidence of discrimination. *See Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 240 (4th Cir. 1982). Alternatively, a plaintiff may attempt to establish a *prima facie* case of gender discrimination through use of the *McDonnell Douglas* burden shifting framework. *Id.*

Absent direct evidence of discrimination, a plaintiff must demonstrate (1) membership in a protected class; (2) satisfactory job performance; (3) infliction of an adverse employment action; and (4) that similarly situated employees outside the plaintiff's protected class were treated differently. *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015).

If a plaintiff can establish such a *prima facie* case, the burden shifts to the employer to show some legitimate, nondiscriminatory reason for the employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). Upon such a showing, the burden shifts back, and the employee has the burden of proof to show by a preponderance of the evidence that the legitimate reasons offered by the employer were not true reasons, but were pretext. *Id.*

2.    ANALYSIS

Ms. Crawford is the only plaintiff to bring a gender discrimination claim. ECF No. 15 at 234. The Report concluded that Ms. Crawford failed to address the gender discrimination claim and therefore waived her claim. ECF No. 296-4 at 29. The Report recommended granting summary judgment to NNI. ECF No. 296-4 at 29. Ms. Crawford does not object to the Report's conclusions regarding her gender discrimination claim. Finding no clear error, this Court ADOPTS the Report's findings and GRANTS summary judgment to NNI. ECF No. 165.

VII.   CONCLUSION

The Court has conducted a *de novo* review of the record and has carefully examined recommendations of the Reports and the objections filed to those recommendations. Objections filed by NNI regarding the recommendations on hostile work environment claims raised by the following Plaintiffs are SUSTAINED: Anthony Alvarez, Marchello Fields, Willie Kershaw, Derek Cross, Herbert Broughton, Gilbert Wiltz, John Harris, Tourke Hooker, Lamarr Joyner, and Roderick Waddell, Jr.

The Objections filed by Donyelle Pierce as to hostile work environment are OVERRULED.

The Objections filed by NNI regarding Anthony Alvarez's disparate treatment claim are SUSTAINED.

The Objections filed by NNI regarding Chris Payton and Lamarr Joyner's termination and retaliation claims are SUSTAINED.

The following Plaintiffs filed Objections regarding recommendations on disparate treatment claims that are OVERRULED: Ian Blow, Ernest Chesson, Marchello Fields, Willie Kershaw, Ronald Valentine, Jonathan Dantes, Reggie Holliman, Lamar Holloman, Roderick

Waddell, Sr., Brandon Walker, David Swain, Gilbert Wiltz, Jamesina Crawford, Tourke Hooker, Theo Pierce, Roderick Waddell, Jr., and Donyelle Pierce.

NNI's Objections regarding Steven Gordon's disparate treatment claim are OVERRULED.

Objections filed by NNI regarding recommendations on termination claims brought by the following plaintiffs are OVERRULED: Ernest Chesson, Marchello Fields, Lamar Holloman, Richard Bostic, David Swain.

The following Plaintiffs' objections regarding recommendations concerning termination claims are OVERRULED: Jonathan Dantes, Frantz Edouard.

NNI's Objections regarding Ernest Chesson's retaliation claim is OVERRULED.

Plaintiffs Jamesina Crawford and Tourke Hooker's objections regarding retaliation are OVERRULED.

All other findings and recommendations of the Reports are ADOPTED AND APPROVED.

Accordingly, NNI's Motions for Summary Judgment regarding Anthony Alvarez (ECF No. 109), Willie Kershaw (ECF No. 119), Derek Cross (ECF No. 121), Herbert Broughton (ECF No. 149), Gilbert Wiltz (ECF No. 161), John Harris (ECF No. 167), Tourke Hooker (ECF No. 169), Lamarr Joyner (ECF No. 175), Roderick Waddell, Jr. (ECF No. 181) and Donyelle Pierce (ECF No. 171) are GRANTED. By this Final Order as to these Plaintiffs, their actions are DISMISSED WITH PREJUDICE.

NNI's Motions for Summary Judgment regarding Ian Blow (ECF No. 111), Ernest Chesson (115), Marchello Fields (ECF No. 117), Ronald Valentine (ECF No. 123), Jonathan Dantes (ECF No. 125), Franz Edouard (ECF No. 129), Reggie Holliman (ECF No. 131), Lamar

60

Holloman (ECF No. 133), Alfred Joyner, Jr. (ECF No. 135), Willie Nichols (ECF No. 139), Robert Robinson (ECF No. 141), Roderick Waddell, Sr. (ECF No. 143), Brandon Walker (ECF No. 145), Richard Bostic (ECF No. 147), Steven Gordon (ECF No. 151), Chris Payton (ECF No. 1553), Dennis Smith (ECF No. 155), David Swain (ECF No. 159), Mark Barnett (ECF No. 163), Jamesina Crawford (ECF No. 165), Theo Pierce (ECF No. 173), and Ronald Stewart (ECF No. 177) are GRANTED IN PART DENIED IN PART.

The Clerk of the Court is REQUESTED to please forward a copy of this Order to counsel of record for these Plaintiffs and for Defendant NNI.

IT IS SO ORDERED.

Arenda L. Wright Allen
United States District Judge

June 11, 2018
Norfolk, Virginia