**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

**JAMESINA CRAWFORD,** *et al.***,**

      Plaintiffs,

vs.

                       **Case No. 4:14-cv-00130–AWA-RJK**

**NEWPORT NEWS
INDUSTRIAL CORPORATION**

      Defendant.

**PLAINTIFFS' AMENDED RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
<u>EVIDENCE OF WITNESSES WHO WERE NOT TIMELY DISCLOSED</u>**

      Defendant's motion to preclude testimony by witnesses who were not timely disclosed should be denied because Plaintiffs' June 2020 Rule 26 disclosures were not untimely as to the witnesses Plaintiffs may call at trial. Of the 75 witnesses at issue, 28[1] have information related to events that occurred before discovery closed. Plaintiffs properly disclosed under Rule 26 all but seven[2] of these witnesses during discovery. Each of the remaining witnesses at issue who Plaintiffs may call at trial[3] have knowledge of events that occurred after the close of discovery,

---

[1] With respect two witnesses, Plaintiff Smith's emotional distress witnesses, Rosa Lee Peavy and Christina Smith Peavy, neither Plaintiff Smith nor the witnesses can recall whether the relevant conversations took place before or after discovery closed. To err on the side of caution, Plaintiffs will not treat these witnesses as solely related to post-discovery events.

[2] Plaintiffs will not call five of these witnesses at trial who are records custodians from (1) Sentara and (2) Patient First for treatment Plaintiff Smith received while discovery was still open, and(3) Dr. Stevens, (4) Dr. Snyder, and (5) Dr. Valareo who treated Plaintiff Nichols during discovery. The remaining two are the witnesses discussed in note 1, above.

[3] (1) Billie Cook,  (2) Mickey Smith,  (3) Nick Ford,  (4) Andy Knopp,  (5) Brian Briggs,  (6) Alexandra Taylor,  (7) Nelson McQuillon,  (8) Orry Hatton,  (9) Nate Lantrip, (10) Scott Galloway, (11) Louis Pierce, (12) Raymond Godsey, (13) Tim Brodie, (14) Tina Davis, (15) Lamar LNU, (16) Jennifer Boykin, (17) Bill Ermatinger, (18) Kevin Cedric, (19) Moises

and therefore, could not have been disclosed during discovery. But, as discussed below, Plaintiffs timely supplemented their Rule 26 disclosures as required by Rule 26(e).

Even if the Court determined that Plaintiffs' disclosures were untimely, the late disclosure would be both harmless and substantially justified, and granting Defendant's motion would be a severe and inequitable sanction considering the significant prejudice Plaintiffs would suffer as to those witnesses they intend to call at trial, particularly in light of Defendant's own disclosure practices.

## AUTHORITIES

Rule 26(a)(1)(A)(i) requires parties to identify "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses[.]" Rule 26(e)(1)(a) requires parties to supplement Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and **if** the additional or corrective information [1] has not otherwise been made known to the other parties during the discovery process or [2] in writing." (emphasis and numbering supplied). "There is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition . . ." Fed. R. Civ. P. 37(c)(1) Advisory Committee Notes (1993); *Quesenberry v. Volvo Grp. N. Am., Inc.,* 267 F.R.D. 475, 478-79 (W.D. Va. 2010) (denying motion to exclude witnesses who were not listed in Rule 26 disclosures but otherwise known to the parties).

---

Ledesma, (20) "Coach", (21) Johnny G, (22) Leon Parker, (23) Rick LNU, (24) Pastor Frank Holloman, (25) Cliff Pervis, (26) Kezia Swain.

Even if a party fails to properly disclose witnesses under Rule 26(a) or (e), and the information has not otherwise been made known during the discovery process, the party may still use that witness at trial if the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). The non-disclosing party need not show both: "nondisclosure can be excused if substantially justified *or* harmless."). *Quesenberry,* 267 F.R.D. at 482 (emphasis in original) ("[Although I did not find the delay substantially justified, I did find it harmless and permitted the testimony of Pratt and Collins at trial.").

"The purpose of Rule 37(c)(1) is to prevent a party from surprising and, thus, prejudicing the opposing party." *Ace American Ins. Co. v. McDonald's Corp.,* Civil Action No. GLR-11-3150, at *12 (D. Md. June 28, 2012) (citing *Southern States*, 318 F.3d at 596). The Court has broad discretion to determine whether the nondisclosure was either harmless or substantially justified. *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co*., 318 F.3d 592, 597 (4th Cir. 2003). Guiding its determination are five, non-individually dispositive factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* While exclusion is an automatic sanction under Rule 37(c)(1), the "substantial justification" or "harmless" analysis are intended serve as a limiting device to the automatic sanction, which "is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties[ or] the failure to list as a trial witness a person so listed by another party. . . ." Fed. R.

Civ. P. 37(c)(1) Advisory Committee Notes (1993); *see also Quesenberry,* 267 F.R.D. at 478-79.[4]

---

[4] Defendant cites three cases for the generic proposition that Rule 37(c)(1) operates to exclude undisclosed evidence, unless the disclosure was substantially justified and harmless. *See* Dkt. 424 at 7 (citing *Gomez v. Haystax Tech., Inc*., 761 F. App'x 220, 233 (4th Cir. 2019); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329 (4th Cir. 2011); *Quesenberry v. Volvo Grp. N. Am., Inc*., 267 F.R.D. 475, 481 (W.D. Va. 2010)). However, these cases are largely inapposite to the instant issues, as they largely deal with parties' failure to disclose witnesses who should have been disclosed.

In *Gomez*, the 4th Circuit affirmed the trial court's exclusion of untimely expert witnesses. The trial court held that Gomez knew of the witnesses but "did not indicate any desire to call such witnesses until the very last day of discovery," which was untimely under the scheduling order, and two months after the deadline for expert disclosures. *Id.* at 232. Moreover, the Court noted that Gomez did not even attempt to argue that the untimely disclosure was substantially justified or harmless . . . and the ability to simply cross-examine an expert concerning a new opinion at trial is not the ability to cure, . . . [because] the rules of expert disclosure are designed to allow an opponent to examine an expert opinion for flaws and to develop counter-testimony through that party's own experts." *Id.* at 232-22.

In *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 329 (4th Cir. 2011), the 4th Circuit upheld the trial court's exclusion of a witness when the disclosing party was "well aware" of the untimely witness, yet "chose not" to list the witness as a potential witness "in response to discovery requests that expressly sought identification of potential witnesses and persons with relevant knowledge," then notified defendant of a declaration from the witness after the close of discovery and after dispositive motion practice. *Id*.at 329-30.

In *Quesenberry v. Volvo Grp. N. Am., Inc*., 267 F.R.D. 475, 481 (W.D. Va. 2010), Defendant moved to exclude 29 witnesses. The court determined that 22 of the witnesses were untimely, and excluded twenty of them, including one witness who plaintiffs expressly removed from their Rule 26 disclosures only to add the witness to their trial list without correcting their prior removal, and 19 witnesses who "were never disclosed in any way to the defendants" prior to being listed as trial witnesses. The court held that five witness who did not appear on plaintiffs' Rule 26 disclosures were not untimely because "defendants were clearly aware of the identity of the class representatives" and plaintiffs were therefore not required to include these individuals in its initial disclosers. *See id.* at 478-79. The Court further declined to exclude two witnesses who plaintiffs did not learn had relevant information until after discovery closed and who were timely disclosed thereafter. *Id.* at 480. Finally, the Court declined to exclude two additional witnesses because defendants knew of the document about which they were called to testify and "a thorough cross-examination, therefore, could still be conducted without a deposition, given the limited purpose of the testimony and the defendants' previous knowledge of the documents." *Id.* at 482.

## ARGUMENT

### I.  PLAINTIFFS' DISCLOSURES WERE NOT UNTIMELY

While Plaintiffs June 2020 Supplemental Rule 26 disclosures (Exh. A) included 75 names that had not previously appeared on Plaintiffs' Rule 26 disclosure list (Exh. B), it does not automatically follow that the formal identification of witnesses were untimely, or that witnesses had not been previously disclosed. With the exception of the two witnesses discussed in note 1, supra, all the witnesses at issue who could have been disclosed during discovery who Plaintiffs may call at trial were disclosed to Defendant during the discovery process and/or made known to Defendant in writing. For the balance of the witnesses who Plaintiffs may call at trial, they could **not** have been disclosed during discovery because they did not gain relevant information until after discovery closed, and pursuant to Rule 26(e)(1), Plaintiffs provided timely supplements.

#### A.  Plaintiffs Made Known to Defendant 21 Witnesses During the Discovery Process And Therefore They Should Not Be Precluded From Testifying

Under Rule 26, Plaintiffs were not required to serve a formal Rule 26 supplement for witnesses where "the additional or corrective information has … otherwise been made known to the other parties during the discovery process or in writing." Fed. R. 26(e)(1)(a); *see also Quesenberry,* 267 F.R.D. at 478-79; *Lentz v. Mason,* 32 F. Supp.2d 733, 740-41 (D.N.J. 1999); *URS Corp. v. Travelers Indem. Co.,* 501 F. Supp.2d 968, 974 (E.D. Mich. 2007) (denying plaintiff's Rule 37(c)(1) motion to exclude evidence for failure to supplement an interrogatory response under Rule 26(e) "[b]ecause [since]Defendant disclosed this defense in writing, it [therefore] met the requirements of the rule.")

In *Lentz,* the court denied defendant's motion in limine to exclude nine witnesses who plaintiffs did not list in Rule 26 disclosures, but of whom Defendant had notice because they were "identified either in response to interrogatories or . . . in [a] deposition". *Id.* at 741. The

court held "Defendants were on notice of the existence of these witnesses months prior to the commencement of trial and to the filing of the JFPO. The Defendants had the chance to pursue their own investigation of these witnesses and they failed to do so." *Id.* Only in the absence of notice to the opposing party is formal supplementation required. Here, there are 21 witnesses/entities on Plaintiffs' June 2020 Rule 26 (Exh. A) disclosures who were disclosed during the course of discovery but who do not formally appear on Plaintiffs' prior Rule 26 disclosures. (Exh. B)[5] These 21 witnesses are not obscure individuals vaguely identified in a deposition or in a random document buried in a substantial document production. These were individuals of whom the parties were well aware.

Specifically, eight of these witnesses, who are Defendant supervisors and members of management, were actually deposed (Exh. H), appear in Defendant's own 2016 Rule 26 disclosures (Exh. I) and appear on Defendant's Rule 26(a)(3) trial witness list (Exh. C). Four of these eight, Nelson Ferrar, Dashana Kemp, Lisa Lindsey[6], and Keith Meadows, are listed as "expected to be called" by Defendant; the other four, Corey Beddingfield, Isaac Pruden, Bev Simmons and Mike Deboard, "may be called" by Defendant. These witnesses were members of Defendant's upper management team, human resources, or supervisors who engaged in or responded to central allegations of harassment and discrimination, not limited to Deshana Kemp,

---

[5] 1. Nelson Ferrar, 2. Dashana Kemp, 3. Keith Meadows, 4. Corey Beddingfield, 5. Isaac Pruden, 6. Bev Simmons, 7. Mike Deboard, 8. Lisa Lindsey, 9. Dr. William Collins, 10. Keitha Austin Therapy Associates, 11. Rock Landing Psychological Group, 12. I & O Medical Center, 13. Orthopedic & Spine Center, 14. Tidewater Physical Therapy, 15. Parham Doctor's Hospital, 16. Oyster Point Family Practice, 17. Augustin Dantes, 18. Herb Henry, 19. Jackie Joyner, 20. Jamie Valentine, 21. Dr. John Brady.

[6] (Plaintiffs identify her as Lisa Lesley but they are the same person.)

who was the head of Defendant's Human Resources department for much of the relevant time period of this case. Given that they were actually deposed and were clearly known to Defendant during discovery (and identified in investigations and multiple documents produced by Defendant), Plaintiffs were not required to provide a formal supplement during discovery. Fed. R. 26(e)(1)(a); *see also Quesenberry,* 267 F.R.D. at 478-79. In these circumstances, a motion to exclude should be denied. *Lentz v. Mason,* 32 F. Supp. 2d 733, 740-41 (D.N.J. 1999).

Nine witnesses/entities, treating physicians or institutions,[7] were disclosed through interrogatory responses and/or medical records that were produced during discovery, and the reality is that with a stipulation entered into by the parties concerning records custodians, Defendant's motion is moot except with respect to two of these treating physicians or institutions, Rock Landing and Dr. Austin. Even if Plaintiffs intended to call all nine, Defendant served executed authorization for medical records on at least five of these treating physicians/entities during discovery (Exh. D),[8] deposed one of them (Exh. E),[9] and used records from two more during Plaintiffs Blow's and Crawford's depositions. (Exh. F, Exh. G)[10] While Plaintiffs' inadvertently did not formally identify these individuals on Rule 26(a) disclosures, the witnesses were nonetheless properly disclosed under Rule 26(e)(1) during the course of discovery. The parties' treatment of the witnesses during discovery speaks to the effectiveness of

---

[7] 9. Dr. William Collins, 10. Keitha Austin Therapy Associates, 11. Rock Landing Psychological Group, 12. I & O Medical Center, 13. Orthopedic & Spine Center, 14. Tidewater Physical Therapy, 15. Parham Doctor's Hospital, 16. Oyster Point Family Practice, 21. Dr. John Brady.

[8] 12. I & O Medical Center, 13. Orthopedic & Spine Center, 14. Tidewater Physical Therapy, 15. Parham Doctor's Hospital, 16. Oyster Point Family Practice.

[9] 16. Oyster Point Family Practice.

[10] 9. Dr. William Collins, 11. Rock Landing Psychological Group.

Plaintiff's disclosures. Defendant was well-aware of these witnesses as potential trial witnesses and treated them accordingly. Defendant had ample time while discovery was open to investigate these witnesses, and for most of them, did.

With respect to Rock Landing therapy and Dr. Austin, mental health treatment providers for Plaintiff Crawford, the two providers who Plaintiff may call, these witnesses were clearly disclosed during discovery. Plaintiff Crawford identified both in her responses to Defendant's interrogatories, which she served on December 2, 2015. Exh. J. On this same date, Plaintiff identified and produced documents in response to Defendant's requests for production of documents related to her treatment at Rock Landing. *Id.* Plaintiff produced additional medical records for Rock Landing on February 10, 2016, and on April 11, 2016, produced medical records for Dr. Austin. Moreover, Plaintiffs' expert, Dr. Robert Goldstein, reviewed and identified these records in his expert disclosures for Plaintiff Crawford, and Defendant deposed Dr. Goldstein. All of these disclosures satisfy Rule 26(e) because the witnesses were "otherwise been made known to the other parties during the discovery process or in writing": they occurred several months before the close of discovery and before Defendant conducted any of its medical provider depositions. Defendant used records from Rock Landing as an exhibit in Plaintiff Crawford's deposition. Exh. F. Defendant could have taken depositions or served additional discovery related to these witnesses but chose not to.

The four remaining witnesses include emotional distress witnesses Augustin Dantes and Herb Henry who Plaintiff Dantes disclosed in his November 30, 2015 interrogatory responses; witness Jamie Valentine who Plaintiff Ron Valentine disclosed in his December 2, 2015 integratory responses, and emotional distress witness Jackie Joyner who Plaintiff Joyner disclosed during his deposition on March 1, 2016.

Based on the express language of Rule 26, Plaintiffs timely disclosed these 21 witnesses. Finally, Defendant's own Rule 26 disclosures contemplate this exact scenario by listing "[i]ndividuals identified by Plaintiff or Defendant throughout the course of discovery" as potential trial witnesses. Exhs. I, K. No facts better support the conclusion that these witnesses were adequately disclosed than the parties' treatment of the witnesses, which included depositions, written discovery responses, service of executed authorizations, and/or the exchange of documents.  Defendant's motion should be denied with respect to Nelson Ferrar; Dashana Kemp; Keith Meadows; Corey Beddingfield; Isaac Pruden; Bev Simmons; Mike Deboard; Lisa Lindsey; Dr. William Collins; Keitha Austin Therapy Associates;  Rock Landing Psychological Group; I & O Medical Center; Orthopedic & Spine Center; Tidewater Physical Therapy; Parham Doctor's Hospital; Oyster Point Family Practice, Dr. John Brady, Augustin Dantes, Herb Henry, Jackie Joyner, and Jamie Valentine.[11]

### B. Plaintiffs Timely Supplemented Their Rule 26 Disclosures for Witnesses Whose Source of Knowledge Did Not Occur Until After Discovery Closed

With the exception of the seven witnesses discussed in notes 1 and 2, above, all the remaining witnesses Defendant seeks to exclude could not have been disclosed during discovery because the source of their information did not occur until after discovery closed—in some cases years after discovery closed, even well into 2020. This is a critical fact, which Defendant ignores. It necessarily means that Plaintiffs' June 2020 disclosures were not in violation of Rule 26 and are merely supplements under Rule 26(e). *See Luma Corp. v. Stryker Corp.*, 226 F.R.D. 536, 544 (S.D.W. Va. 2005) ("If the expert reports in issue are deemed supplements in

---

[11] And, as set forth above, with respect to the nine medical providers, Defendant's motion is moot as to all but two.

conformity with Rule 26(e)(1), they were clearly filed timely."). While Defendant acknowledges Rule 26(e)(1)(a)'s supplementation obligation as relevant law, Dkt. 424 at 3, importantly, it *does not* argue that Plaintiffs supplements were "untimely." It has accordingly forfeited this argument. Rather, Defendant argues that "Plaintiffs should be precluded from calling any witness who was not timely identified before the close of discovery." Dkt. 424 at 1. As discussed above, this simply was not possible.

Sixteen[12] of the witnesses/entities at issue are medical providers who relate to medical treatment Plaintiffs received subsequent to the close of discovery. Plaintiffs could not have provided the names of these custodians during discovery because Plaintiff had not yet sought the treatment for which the witnesses/entities relate. In any event, Plaintiff does not intend to call any of these custodians at trial, as the parties have reached an agreement with respect to medical records, which may be challenged at trial as to relevance or double hearsay. *See* Proposed Joint Final Pretrial Order at 18. Defendant's argument is moot.

Seven of the witnesses at issue[13] are believed to have information largely pertaining to discussions about Plaintiffs' emotional distress since the close of discovery. Plaintiff gathered this information as part of the Parties' agreement negotiated between January and March 2020 to supplement written discovery with information between the close of discovery and present. With

---

[12] (1) Plaintiff Robinson's Treating Physicians Hampton VA Medical Center, (2) Dr. Christopher Chambers, (3) Dr. Henderson, (4) Dr. Jenkins, (5) Dr. John M. Sayles, (6) Dr. Pedro Hasas, (7) Biospine Institute, (8) Tampa Family Health, (9) Riverside Brentwood Family Medicine, (10) Cora Physical Therapy Temple Terrace, (11) Dr. Claude Louis, (12) Lexington Medical Center Rdlgy, (13) Gastroenterology East, (14) TPMG: The Village Doctor, ( ) (15) James River Family Practice, (16) Dr. Katherine Roberts.

As discussed above, two entities listed on Plaintiffs' June 2020 Rule 26 disclosures (Nos. 15 and 16, above) could have been disclosed during discovery but were not.

[13] (1) Leon Parker, (2) Rick LNU, (3) Pastor Frank Holloman, (4) Rosa Lee Peavy, (5) Christina Smith Peavy, (6) Cliff Pervis, (7) Kezia Swain,

the exception of the two witnesses discussed in note 1 who potentially had relevant information during discovery, Plaintiffs could not have provided these witnesses during the course of discovery because they did not yet have relevant information. Plaintiffs provided their supplemental discovery responses on a rolling basis, largely in late-May 2020, in which these witnesses were identified. Within weeks of Plaintiffs' counsel learning the identity of these new witnesses and determining that Plaintiffs may use them at trial, Plaintiffs then formally updated their June 2020 Supplemental Rule 26 Disclosures to include them. Exh. A.

Twenty-one of the witnesses[14] at issue relate to harassment at NNI between 2018 and 2020, well after discovery closed. Since discovery closed, Plaintiffs submitted written complaints to NNI Human Resources and their supervisors, HII Resources, and Jennifer Boykin, President of HII's shipyard, identifying many of the witnesses and their subjects of information. Counsel for the parties also exchanged written correspondence between March and May 2020, in which the parties discussed 13 witnesses (12 by name) and the facts surrounding the basis of their knowledge.[15] Exhs. L, M. Four more witnesses were named in or received Plaintiffs' written complaints to Defendant about ongoing harassment.[16] Exhs. N, O, P. Three more of the witnesses relate to events that occurred in May 2020 and were named in a statement that

---

[14] (1) Billie Cook, (2) Mickey Smith, (3) Nick Ford, (4) Andy Knopp, (5) Brian Briggs, (6) Alexandra Taylor, (7) Nelson McQuillon, (8) Orry Hatton, (9) Nate Lantrip,  (10) Scott Galloway,  (11) Louis Pierce,  (12) Raymond Godsey,  (13) Tim Boddie (misidentified by Plaintiffs as Brodie),  (14) Tina Davis,  (15) Lamar LNU [Johnson],  (16) Jennifer Boykin,  (17) Bill Ermatinger,  (18) Kevin Cedric,  (19) Moises Ledesma,  (20) "Coach",  (21) Johnny G.

[15] (1) Billie Cook, (2) Mickey Smith, (3) Nick Ford, (4) Andy Knopp, (5) Brian Briggs, (6) Alexandra Taylor, (8) Orry Hatton, (9) Nate Lantrip,  (10) Scott Galloway,  (12) Raymond Godsey, (14) Tina Davis,  (16) Jennifer Boykin,  (19) Moises Ledesma.

[16] (13) Tim Brodie,  (15) Lamar LNU [Johnson], (18) Kevin Cedric, (17) Bill Ermatinger.

Defendant asked Plaintiff Blow to write.[17] Exh. Q. That is, almost every post-discovery witness who Plaintiffs may call at trial was disclosed to Defendant in writing, in most cases contemporaneous writings prior to Plaintiffs' June 2020 Supplemental Rule 26 disclosures. Just one witness was not named in writing, Nelson McQuillon, who Plaintiffs first learned of when Defendant served *its* May 2020 Disclosures. Exh. K. Evidencing the effectiveness of Plaintiffs' written identification of these witnesses at providing notice to Defendant that Plaintiffs may use them at trial is the fact that Defendant listed 15 of these witnesses in either its May 2020 Rule 26 disclosures or its trial list.[18]  Exhs. K, C.

Plaintiffs obligation to supplement their Rule 26 supplementation requirement was not triggered until they learned of the new witnesses and determined they "may use" them at trial. "A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use. . . . [A] party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use." Fed. R. Civ. P. 26 Advisory Committee Notes (2000).

Because all of the 75 witnesses that Plaintiffs listed in their supplemental disclosures in June 2020 who they may call at trial, except the two witnesses discussed in note 1, either were previously disclosed during the discovery process and/or in writing, or could not have been disclosed during the course of discovery but were timely supplemented, the witnesses at issue are not untimely under Rule 26. Exhs. A, R. Defendant's motion should be denied under Rule 26.

---

[17] (19) Moises Ledesma,  (20) "Coach",  (21) Johnny G.

[18] (1) Billie Cook, (2) Mickey Smith, (3) Nick Ford, (4) Andy Knopp, (5) Brian Briggs, (6) Alexandra Taylor, (7) Nelson McQuillon, (8) Orry Hatton, (9) Nate Lantrip,  (10) Scott Galloway,  (11) Louis Pierce,  (12) Raymond Godsey,  (13) Tim Brodie,  (14) Tina Davis,  (15) Lamar LNU [Johnson]. Defendant will not call these witnesses if it successfully moves in limine to exclude all instances of continuing hostile work environment occurring after June 2016.

## II.     EVEN IF PLAINTIFFS' WITNESSES WERE NOT TIMELY IDENTIFIED, THE DELAY IS HARMLESS AND SUBSTANTIALLY JUSTIFIED

Defendant paints a picture of an ambush of 75 previously unknown witnesses on the eve of trial without any warning whatsoever. As discussed above, the majority of these witnesses are believed to have knowledge related to post-discovery facts that simply could not have been disclosed during discovery but were timely supplemented in writing. With the exception of two witnesses,[19] all of the remaining witnesses at issue who Plaintiffs may call at trial[20] who have relevant information relating to issues that occurred during discovery were properly disclosed during discovery.

Defendant muddies the effect of Plaintiffs' disclosures by lumping all 75 witnesses together to make the sweeping argument that "Plaintiffs should be precluded from calling any witness who was not timely identified before the close of discovery." Dkt. 424 at 1. Because the Court has broad discretion to determine whether the nondisclosure was either harmless or substantially justified, *Southern States Rack & Fixture, Inc., supra,* by evaluating five factors as appropriate, ((1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence), it becomes clear in evaluating the context, that any prejudice that Defendant claims is revealed to be either moot, disingenuous, or an almost purely abstract proposition that either has been, could have been, or can be easily cured.

---

[19] *See supra* note 1 (discussing two witnesses who potentially could have been disclosed during discovery who Plaintiffs may call at trial).

[20] *See supra* note 2 (discussing five medical providers who could have been disclosed during discovery, but who Plaintiffs will not call at trial).

When the witnesses are broken down into 3 distinct categories—(1) witnesses who will
<u>not</u> testify at trial, (2) witnesses who also appear on Defendant's trial witness list; (3) witness
with post-discovery knowledge—the *Southern States* analysis shows that Plaintiffs' disclosures
are harmless and substantially justified.

### *Group 1*

**A.      Defendant's Motion is Moot as to the 33 Witnesses Who Will Not be Called at Trial**

Group 1 consists of 33 witnesses who will not appear at trial. It includes 28 record
custodians,[21] four witnesses who Plaintiffs withdrew from the trial list,[22] and one witness who
Plaintiffs believe inadvertently appears twice on their witness list.[23] The witnesses who are listed
solely to authenticate records will not be called at trial because, the Parties have agreed to
stipulate to the authenticity and business records nature of medical records, thereby obviating the
need for these witnesses. *See* PTO at 18. Since these witnesses will not provide testimony at trial,
there is no threat of prejudice to Defendant, and no further explanation is warranted to show how
Defendant's Motion with respect to these 33 witnesses is moot.

---

[21]      (1) Dr. Snyder,    (2) Dr. Stevens,    (3) Dr. Valareo,    (4) Plaintiff Robinson's Treating
Physicians Hampton VA Medical Center,    (5) Dr. Christopher Chambers,    (6) Dr. Henderson,
(7) Dr. Jenkins,    (8) Dr. John M. Sayles,    (9) Dr. Pedro Hasas,  (10) Biospine Institute,  (11)
Tampa Family Health,  (12) Riverside Brentwood Family Medicine,  (13) Cora Physical Therapy
Temple Terrace,  (14) Dr. Claude Louis,  (15) Patient First,  (16) Sentara,  (17) Lexington
Medical Center Rdlgy,  (18) Gastroenterology East,  (19) TPMG: The Village Doctor,  (20) Dr.
John Brady,  (21) James River Family Practice,  (22) Dr. Katherine Roberts,  (23) Dr. William
Collins,  (24) I & O Medical Center,  (25) Orthopedic & Spine Center,  (26) Tidewater Physical
Therapy,  (27) Parham Doctor's Hospital,  (28) Oyster Point Family Practice,

[22] (1) Jimmy LNU, (2) James Graves, (3) Serge Evans, (4) Jeffrey Gregory.

[23] Lewis LNU and Louis Pierce.

*Group 2*[24]

**B.    Plaintiffs' Disclosure of 23 Witnesses Who Also Appear on Defendant's Trial List is Harmless and Substantially Justified**

Group 2 consists of 23 witnesses who appear on both parties' trial witness lists.[25] Exhs. C, R. These Plaintiffs satisfy the *Southern State* test, because there is no surprise to Defendant, given that they are on Defendant's list, Defendant could cure any surprise by interviewing its own employees, if Plaintiffs are permitted to introduce evidence of post-discovery events, there will be no disruption to trial, (and Plaintiffs have previously offered to stipulate to depositions), at least some of the evidence is very important to proving Defendant's response to the allegations of continuing hostile work environment, and Plaintiffs could not have disclosed these witnesses before they had relevant information. While Defendant cites to the advisory committee notes to the 1993 amendments to Rule 37(c)(1) to argue that failure to disclose witnesses results in the automatic exclusion, Dkt. 424 at 3, it omits the next paragraph of the advisory committee notes, which discusses the need to limit the automatic sanction in situations that much more analogous to the instant circumstances than the picture Defendant paints:

> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from

---

[24] In fact, unlike Plaintiffs, Defendant never disclosed 3 of these witnesses in Rule 26 disclosures whatsoever. That is, if anything, Plaintiffs will suffer prejudice with respect to the Group 2 witnesses.

[25] (1) Nelson Ferrar,   (2) Dashana Kemp,   (3) Keith Meadows,   (4) Isaac Pruden,   (5) Bev Simmons,   (6) Mike Deboard,   (7) Lisa Lesley,   (8) Billie Cook,   (9) Mickey Smith, (10) Nick Ford, (11) Andy Knopp, (12) Brian Briggs, (13) Alexandra Taylor, (14) Nelson McQuillon, (15) Orry Hatton, (16) Nate Lantrip, (17) Scott Galloway, (18) Louis Pierce, (19) Raymond Godsey, (20) Tim Brodie, (21) Tina Davis, (22) Lamar LNU [Johnson], (23) Cory Beddingfield.

a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; *the failure to list as a trial witness a person so listed by another party* . . .

Fed. R. Civ. P. 37(c)(1) Advisory Committee Notes (1993) (emphasis supplied).

In addition, as discussed in Section I(A), eight of the witnesses in Group 2 were deposed during discovery and appeared on Defendant's prior Rule 26 disclosures.[26] Exh. H, I. Defendant argues that Plaintiffs should be precluded from calling these witnesses because Defendant did not take their depositions with a trial in mind. *See* Dkt. 424 at 5 n.3. However, Defendant identified each of these individuals in its own Rule 26 disclosures as potential trial witnesses. Exh. I. And, accordingly, it now lists them on its trial witness list. Exh. C. This is exactly the sort of circumstances that the advisory committee cautioned against when limiting Rule (37)(c)(1)'s automatic sanction: the eight deponents were clearly known to all parties and they now appear on Defendant's trial list. *See also Quesenberry,* 267 F.R.D. at 478-79 (denying motion to preclude as to witnesses who did not appear on plaintiffs' Rule 26 disclosures but who were well known to the parties as potential trial witnesses). Defendant cannot argue it will be prejudiced by the inclusion of these eight witnesses because it did not take their depositions with a trial in mind while simultaneously listing the witnesses as potential trial witnesses in its own Rule 26 disclosures—and trial list. Even if Defendant could identify some surprise, it is unclear what more Defendant would need to cure. These witnesses have already been deposed. To Plaintiffs' knowledge, their basis of knowledge has not significantly changed since their depositions. To the extent Defendant did not to ask certain questions during their deposition, these are Defendant's agents—supervisors and members of management—Defendant clearly can obtain whatever

---

[26] (1) Nelson Ferrar,   (2) Dashana Kemp,   (3) Keith Meadows,   (4) Isaac Pruden,   (5) Bev Simmons,   (6) Mike Deboard,   (7) Lisa Lesley, (23) Cory Beddingfield.

information it needs to cure any surprise. *Schwartz v. Clark Cnty.,* No. 2:13-CV-709 JCM (VCF), at *6 (D. Nev. Apr. 4, 2018) ("While Clark County has not yet deposed Perez, Perez is an employee of Clark County. Accordingly, any information Perez could potentially offer as a witness is likely to be known by Clark County and thus unlikely to be prejudicial or harmful.").

With respect to the remaining 15 witnesses who appear on both parties' trial lists,[27] neither party listed them on a Rule 26 disclosure prior to their 2020 disclosures. Exhs. B, I. For Plaintiffs' part, this is because the source of their information occurred between 2018 and 2020, well after the close of discovery. It is disingenuous for Defendant to now claim surprise, inability to cure, disruption of trial, lack of importance, and no substantial justification for the timing of the disclosure, when it, too, did not disclose these witnesses until its most recent supplement before listing them in its trial list.

Nonetheless, Defendant has known about these witnesses for quite some time because Plaintiffs have provided written notice— largely contemporaneous—of these witnesses, identifying them by name and the nature of information that they possess. Not only has Defendant been aware of these witnesses, they are Defendant's employees over whom it exercises control, as it claims to have investigated many of the issues to which these witnesses relate, which speaks both to the lack of surprise and Defendant's cure of any pretrial surprise. Even without formal discovery, it could adequately prepare for trial (and likely has) at any time by freely speaking with these individuals. *Schwartz, supra,* at *6 (D. Nev. Apr. 4, 2018) (holding

---

[27] (8) Billie Cook,   (9) Mickey Smith,  (10) Nick Ford,  (11) Andy Knopp,  (12) Brian Briggs,  (13) Alexandra Taylor,  (14) Nelson McQuillon,  (15) Orry Hatton,  (16) Nate Lantrip, (17) Scott Galloway,  (18) Louis Pierce,  (19) Raymond Godsey,  (20) Tim Brodie,  (21) Tina Davis,  (22) Lamar LNU [Johnson]. Plaintiffs believe the Lamar LNU on their list is actually Lamar Johnson on Defendant's list.

that an undisclosed employee of the moving party will not cause prejudice or harm because any information the employee "could potentially offer as a witness is likely to be known by" the moving party).

While the notion that Defendant is surprised by any of these witnesses is undercut by the fact that it lists these witnesses on its own list, even if it were surprised, Plaintiffs offered to allow additional depositions. Defendant has refused to engage in any discovery of post-discovery harassment. It cannot genuinely claim inability to cure while also refusing opportunities to do just that. There is no requirement that Defendant must have the opportunity to depose these witnesses in order to prepare for their testimony at trial. *See generally id.* In any event, Defendant is obviously prepared for trial since these witnesses are on its trial list, and will likewise, not cause a disruption of trial since both parties seemingly agree that these witnesses should appear at trial, and are accordingly prepared.

As a whole, the Group 2 witnesses possess important information related the claims and defenses at issue in this case. The Group 2 witnesses include, for example: Dashana Kemp, the former director of Human Resources who was involved in several investigations related to Plaintiffs' and others' complaints of harassment; Billie Cook, the current head of Human Resources who has been involved with investigations and allegations related to ongoing issues of racial harassment since the close of discovery; Supervisors and Management, who have either harassed Plaintiffs, participated in investigations, or made employment decisions related to Plaintiffs' claims, including Nelson Farrar, Keith Meadows, Isaac Pruden, Cory Beddingfield, Bev Simmons, Mike Deboard, Nick Ford, Andy Knopp, and Brian Briggs; Employees alleged to have harassed Plaintiffs, including Mickey Smith, Orry Hatton, Scott Galloway, and Louis Pierce, and Witnesses of harassment against Plaintiffs, including Nate Lantrip, Raymond

Godsey, Tim Brodie, Tina Davis, and Lamar LNU (Johnson). The importance of these witnesses is perhaps no better qualified than the fact that they appear on each parties' witness list. Plaintiffs will be significantly prejudiced if they are precluded from calling these witnesses at trial as they have important information related to, *inter alia,* racial harassment that occurred before and during discovery, post-discovery racial harassment, and ongoing sources of emotional distress.

Finally, Plaintiffs were substantially justified in disclosing these witnesses when they did. With respect to the eight witnesses who were disclosed during discovery, as set forth above, there is no genuine argument that Plaintiffs' disclosures were untimely. Plaintiffs nonetheless adequately identified these witnesses under Rule 26. *See* Fed. R. Civ. P. 26(e)(1); *Quesenberry,* 267 F.R.D. at 478-79. With respect to the remaining 15 witnesses, Plaintiffs could not have disclosed these witnesses during discovery because they have information related to post-discovery—events that occurred between January 2018-May 2020. Plaintiffs disclosed these witnesses to Defendant in writing though contemporaneous written complaints submitted to Defendant and correspondence to Defendant's counsel, thereby fulfilling its Rule 26 obligations, and additionally providing a timely Rule 26 supplement—which Defendant does not dispute in its motion. *Quesenberry,* 267 F.R.D. at 480 (denying motion to exclude and concluding witnesses who were first disclosed after discovery closed when plaintiffs did not learn of their existence until after discovery were timely under Rule 26).

There was no surprise with respect to the Group 2 witnesses, and even if there were, there has been no shortage of opportunities for Defendant to cure. The parties' collective inclusion of these witnesses on their respective pretrial witness lists shows that the parties are prepared for their testimony at trial, that the testimony is important to the claims and defenses at issue, and that there is a minimal risk, if any, that these witnesses will disrupt trial. The timing of the

disclosure of these witnesses is substantially justified. Many of them were actually disclosed during discovery and the rest have been disclosed to Defendant in writing. Defendant's motion as to the Group 2 witnesses should be denied.

***Group 3***

### C.   Plaintiffs Disclosure of 11 Witnesses Who Have Information Related to Events that Occurred After the Close of Discovery is Harmless and Substantially Justified.

Group 3 consists of 11 witnesses,[28] including three who did not become relevant until May 2020 relating to post-discovery harassment and sources of emotional distress (Moises Ledesma, "Coach" and Johnny G), three witnesses of whom Defendant has known about for years due to written correspondence relating to post-discovery harassment and sources of emotional distress (Boykin, Ermatinger, and Cedric), and 5 witnesses that have information solely related to post-discovery events, largely emotional distress.[29]

With respect to the three witnesses who did not become relevant until 2020, Moises Ledesma, "Coach" and Johnny G, Plaintiff could not have disclosed these witnesses much sooner than it did. In May 2020, Plaintiff Blow had an incident at NNI where a white worker made disparaging remarks relating to a news story involving a Black man killed by homeowners in Georgia. NNI subsequently investigated the incident and required Plaintiff Blow to submit a written statement, which he delivered to Defendant on May 18, 2020. He identified all three individuals in his statement. Exh. Q. In addition to the written notice, within 21 days, Plaintiffs

---

[28] (1) Jennifer Boykin,   (2) Bill Ermatinger,   (3) Kevin Cedric,   (4) Moises Ledesma, (5) "Coach",   (6) Johnny G,   (7) Leon Parker,   (8) Rick LNU,  (9) Pastor Frank Holloman, (10) Cliff Pervis,  (11) Kezia Swain.

[29] (7) Leon Parker,    (8) Rick LNU,  (9) Pastor Frank Holloman,  (10) Cliff Pervis,  (11) Kezia Swain.

provided these names in their June 8, 2020 Rule 26 disclosures. Exh. A. *See Quesenberry,* 267 F.R.D. at 480. While Defendant has an opportunity to cure—as these are Defendant's employees within their control to question and test their knowledge—Plaintiffs, in contrast, have had no such opportunity. These witnesses will not disrupt trial. There are only three, and the extent of their knowledge is believed to be limited to singular set of circumstances. While these witnesses have a narrow universe of relevant knowledge, the information they are believed to possess is important to the claims and defenses at issue in Plaintiff Blow's ongoing hostile work environment, including ongoing sources of his emotional distress. Finally, the timing of Plaintiffs' disclosure was substantially justified. Indeed, they are not untimely in the first place. *Quesenberry,* 267 F.R.D. at 480. Plaintiff Blow contemporaneously disclosed this information in writing, and within 21 days the witnesses were listed in Plaintiffs June 2020 Supplemental Rule 26 disclosure.

With respect to the three witnesses[30] of whom Defendant has been aware since 2018-2019, Boykin, Ermatinger, and Cedric, given that these witnesses were disclosed to Defendant in contemporaneous written correspondence, Exhs. L-P. Plaintiffs satisfied their Rule 26 obligations and Defendant's surprise argument is fundamentally undercut. Any surprise that Defendant may have experienced is negated by the fact that Defendant either chose not or has already completely cured. As discussed above, Defendant refused to take any additional deposition of post-discovery harassment witnesses, and these witnesses are Defendant's own agents who Defendant is free to question at any time before or during trial. These witnesses will not disrupt trial. There are only three, and the information they are believed to have relates to a

---

[30] Cedric, Ermatinger, Boykin.

small set of issues. Kevin Cedric, who was identified by Plaintiffs Valentine's 2018 complaint regarding Nazi salutes at NNI, is believed to have information related to a single issue, Nazi salutes at NNI. Exh. P. Ermatinger and Boykin (Boykin was disclosed to Defendant's counsel in March 2020) received complaints of ongoing harassment from Plaintiffs Valentine and Gordon in July 2019, and have information related to these complaints and any response they took. Exh. N, O. These are important witnesses to the claims and defenses at issue in this case, including Plaintiffs Valentine's and Gordon's ongoing hostile work environment and ongoing sources of emotional distress. Finally, the timing of Plaintiffs' disclosures is substantially justified. Plaintiffs fulfilled their Rule 26 obligations. Prior to timely listing supplementing their Rule 26 disclosures to include these individuals, Plaintiffs identified these witnesses in a timely manner in writing to Defendant.

With respect to the five remaining witnesses,[31] these individuals all have information related to post-discovery events, largely Plaintiffs' ongoing emotional distress, and were discovered after the parties supplemented their discovery in spring 2020 with post-discovery information. However, as Defendant notes in the Proposed Final Pretrial Order at 15-16, options exist to readily cure this surprise. While Plaintiffs are not agreeing to depose these five individuals, because Plaintiffs will winnow down which of these witnesses they are truly likely to call at trial, any disruption to trial relating to these witnesses would likely be minimal as they relate to emotional distress or non-complex post-discovery issues for four Plaintiffs. Preclusion of all these witnesses will hamstring Plaintiffs ability to prove to a jury the ongoing emotional fallout caused by the racial harassment they endured at NNI. Finally, the timing of the Plaintiffs'

---

[31] (7) Leon Parker,   (8) Rick LNU,  (9) Pastor Frank Holloman,  (10) Cliff Pervis,  (11) Kezia Swain.

disclosure of these witnesses was substantially justified because these witnesses could not have been disclosed during discovery and Plaintiffs supplemented their Rule 26 disclosures in a timely manner upon learning of the witnesses and determining they may use them at trial.

### *Plaintiff Crawford's Providers,*
### *and Witnesses for Plaintiffs Dantes, Joyner, Smith, and Valentine*

Just eight of the 75 witnesses at issue do not fall into one of the above groups: Plaintiff Crawford's mental health treatment providers, Rock Landing and Dr. Austin; Plaintiff Dantes' emotional distress witnesses, Herb Henry and Augustine Dantes; Plaintiff Joyner's emotional distress witness, Jackie Joyner; Plaintiff Smith's emotional distress witnesses, Rosa Lee Peavy and Christina Smith Peavy; and Plaintiff Valentine's witness, Jamie ValentineYet, as explained above in Section I(A), with the exception of Rosa Lee Peavy and Christina Smith Peavy who could potentially have information related to discussions that occurred during discovery, the rest of these witnesses were fully known during discovery. Defendant is trying to use Rule 37(c)(1) as a crutch, not a mechanism of fairness. Under the auspice of surprise and cure, Defendant is simply trying to alleviate the effect of the decisions it made not to depose these witnesses or serve additional discovery. Plaintiff Crawford's providers may testify to important information to Plaintiff Crawford's emotional distress case, as they were her treating providers for mental health issues related to the harassment Plaintiff Crawford experienced at NNI. Plaintiffs Dantes', Joyner's, Smith's, and Valentine's witnesses may also potentially provide important information related to their emotional distress cases. Plaintiffs will be prejudiced if they are is unable to offer these witnesses at trial. These witnesses will not disrupt trial. The parties have known about most of them for over four years, and have generally had more than enough time to adequately prepare for potential testimony related to Plaintiffs' emotional distress. Plaintiffs' disclosure is substantially justified because during the course of discovery, Plaintiffs complied with Rule 26

when it served discovery responses that identified the witnesses, produced the associated medical records, or disclosed the witnesses during deposition. With respect to Rosa Lee Peavy and Christina Smith Peavy, Plaintiff's disclosure is substantially justified because Plaintiffs served a supplemental Rule 26 disclosure identifying these witnesses in a timely manner after they learned of them and determined they may use them at trial. Defendant's motion with respect to these witnesses should be denied.

## III.   PRECLUDING PLAINTIFFS' WITNESSES UNDER RULE 37(C)(1) WOULD BE A SEVERE AND UNFAIR SANCTION BECAUSE IT WOULD SIGNFICANTLY PREJUDICE PLAINTIFFS

When discovery closed almost four years ago, Plaintiffs' lives were not paused. In that time, Plaintiffs have seen new doctors, confided with new friends and family, and for Plaintiffs who remained employed at Defendant, experienced new racial harassment. Naturally, new witnesses became relevant to this case. Since 2016, neither party formally updated their Rule 26 disclosures until their respective 2020 disclosures. However, while Plaintiffs kept Defendant abreast of many of these issues in writings wherein witnesses and their basis of knowledge were identified, Defendant did not do the same.

The parties conferred in January 2020 and agreed to supplement their Rule 26 disclosures and select discovery requests with post-discovery information. Both parties contemplated that a certain amount of new or additional information, otherwise there would have been no need to supplement in the first place. Indeed, both parties identified witnesses for the first time in their 2020 Rule 26 disclosures who now appear on the parties' respective trial witness lists. Defendant required that 22 Plaintiffs update a total of 570 written discovery requests. Each Plaintiff was required to answer no less than 6 distinct discovery requests aimed at obtaining information about potential witnesses. Again, Defendant contemplated a certain amount of new witness information would flow from this discovery. Through answering these requests, Plaintiffs

identified additional witnesses, most of whom gained relevant information since the close of the discovery,[32] including some new medical providers, new emotional distress witnesses, and new fact witnesses related to ongoing racial harassment. When Plaintiffs' counsel determined some of these witnesses may be used at trial, Plaintiffs timely served their June 2020 Supplemental Rule 26 Disclosures, which included them.

Defendant's instant trial list contains 33 witnesses[33] who it either never disclosed or who it disclosed for the first time in May 2020. Exhs. C, I, K. While 75 is obviously greater than 33, on balance, considering there are 22 Plaintiffs, each with unique lives, the disparity between the parties' respective lists is not significant. In fact, upon closer look, it is clear that Defendant's trial witness list itself reflects violations of Rule 26. Defendant trial list contains nine witnesses[34] who it never disclosed in its Rule 26 disclosures, but who Defendant intends to call for trial. Four of these witnesses (Madlock, Pucket, Mitchell, and Harwick) do not relate to post-discovery issues at all. Similarly, Defendant disclosed Brandon Higgs[35] for the first time in May 2020, yet Higgs' basis of knowledge (his display of Confederate flags at NNI) arose during discovery at which time he should have been disclosed. With the exception of Mitchell (see Section IV, below), Plaintiffs do not oppose these witnesses appearance at trial since they were known to Plaintiffs and in most cases deposed; however, Plaintiffs note this contradiction between

---

[32] *See supra* notes 1 and 2 (discussing seven witnesses who had or potentially had relevant information during discovery).

[33] Bonneau, Briggs, Brunson, Carry, Cerar, Cook, D'alessio, Davis, Doherty, Ford, Galloway, Gillespie, Godsey, Harwick, Hatton, Higgs, Jackson (Brian), Johnson (Joe), Johnson (Lamar), Knopp, Lantrip, Lipscomb, Madlock, Mcquillan, Mitchell (William), Nichols (John), Pearce (Lewis), Puckett, Scott (Antonio), Slack, Smith (Micky), Sorenson, Taylor.

[34] Brunson, Carry, Clark, Godsey, Harwick, Knopp, Madlock, Nichols, and Pucket.

[35] Higgs is not on Defendant's trial list.

Defendant's own disclosure practices and its instant arguments against Plaintiffs to demonstrate the unreasonableness of its motion. By contrast, Plaintiffs do not intend to call a single witness who does not appear in their Rule 26 disclosures. Defendant's motion should be denied.

## IV. PLAINTIFFS CROSS MOVE IN LIMINE TO EXCLUDE DEFENDANT'S WITNEESSES, CARRY, MITCHELL AND BRUNSON

While none of the Plaintiffs' witnesses should be excluded, the Court should bar three witnesses on Defendant's list, Carry, Brunson, and Mitchell who appear on Defendant's trial list but whom Defendant failed to include in any disclosures under Rule 26. Exhs. I, K. Defendant has no basis to argue that these witnesses were timely disclosed. They come as a complete surprise to Plaintiffs. The extent of Plaintiffs' knowledge with respect to Carry and Brunson is that Defendant claims they relate to post-discovery matters. Exh. C. Plaintiffs have no idea what Mitchell's knowledge base is, aside from the fact that it apparently does not relate to post-discovery matters. Plaintiffs do not know if they are employees of Defendant, or third parties, and Plaintiffs have no other source of knowledge they may possess. Plaintiffs have had no opportunity to cure this surprise. Defendant has provided no information whatsoever to suggest these witnesses possess important information, and its failure to include these witnesses in any of its Rule 26 disclosures or otherwise supplement its disclosures speaks to the fact that there is no substantial justification for not disclosing them.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court deny Defendant's motion and permit the witnesses at issue to testify at trial.

By:     _/s/ James H. Shoemaker, Jr._
James H. Shoemaker, Jr.
Virginia State Bar No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602

26

Telephone:  (757) 223-4500
Fax:  (757) 223-4518
jshoemaker@pwhd.com
*Local Counsel for Plaintiffs*


By:      /s/ *Rebecca Houlding*
         Joshua Friedman
         Rebecca Houlding
         **Friedman & Houlding LLP**
         1050 Seven Oaks Lane
         Mamaroneck, NY 10543
         Telephone:  (888) 369-1119 x 5
         Facsimile:  (866) 731-5553
         rebecca@friedmanhoudingllp.com

**CERTIFICATE OF SERVICE**


I hereby certify that on August 21, 2020, I will electronically file the foregoing,

Plaintiffs' Amended Response in Opposition to Defendant's Motion *in Limine* (dkt. 423), with

the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF)

to all counsel of record.

　*/s/ James H. Shoemaker, Jr.*
James H. Shoemaker, Jr.
Virginia State Bar No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone:  (757) 223-4500
Fax:  (757) 223-4518
jshoemaker@pwhd.com