**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

|  |  |
|---|---|
| JAMESINA CRAWFORD, *et al*., | |
| Plaintiffs, | |
| vs. | Case No. 4:14-cv-00130–RCY-LRL |
| NEWPORT NEWS INDUSTRIAL CORPORATION | |
| Defendant. | |

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Pursuant to Local Rule 51, Plaintiffs submit the following proposed jury instructions. In accordance with the Court's 16(b) Scheduling Order, counsel will also deliver to the Clerk two typewritten sets of these proposed instructions, one set with authorities in support thereof, and one set without authorities.

The Plaintiffs submit their preliminary jury instructions and post-testimony jury instructions.

Respectfully submitted,
By: /s/ James H. Shoemaker, Jr.
    Of Counsel
    James H. Shoemaker, Jr., Esq.
    Virginia State Bar No. 33148
    Patten, Wornom, Hatten & Diamonstein, L.C.
    12350 Jefferson Avenue, Suite 300
    Newport News, Virginia 23602
    Telephone: (757) 223-4580
    Facsimile: (757) 249-1627

# TABLE OF CONTENTS

**PRELIMINARY INSTRUCTIONS**

INSTRUCTION NO. 1

**Before Voir Dire** ............................................................................................................... **1**

INSTRUCTION NO. 2

**Recess at End of Voir Dire** ................................................................................................ **4**

INSTRUCTION NO. 3

**General; Nature of Case; Duty of Jury** ............................................................................. **5**

INSTRUCTION NO. 4

**Evidence; Limitations** ....................................................................................................... **7**

INSTRUCTION NO. 5

**Limiting Instructions** ........................................................................................................ **9**

INSTRUCTION NO. 6

**Stipulations** ..................................................................................................................... **10**

INSTRUCTION NO. 7

**Bench Conferences and Recesses** .................................................................................... **11**

INSTRUCTION NO. 8

**Conduct of Counsel** ......................................................................................................... **12**

INSTRUCTION NO. 9

**Contact With Others** ........................................................................................................ **13**

INSTRUCTION NO. 10

**Note-Taking By Jury** ....................................................................................................... **15**

INSTRUCTION NO. 11

**Publicity – Preliminary Statement** .................................................................................. **16**

INSTRUCTION NO. 12

**Burden of Proof — Plaintiffs' Claims** ............................................................................ **17**

INSTRUCTION NO. 13

**Burden of Proof — Individual Plaintiffs** ........................................................................ **18**

INSTRUCTION NO. 14

**Burden of Proof — Affirmative Defense [If Applicable]** ............................................... **19**

INSTRUCTION NO. 15

   **Preponderance of The Evidence** ........................................................................ **20**

INSTRUCTION NO. 16

   **Direct and Circumstantial Evidence** ................................................................... **22**

INSTRUCTION NO. 17

   **Inference Defined** ................................................................................................. **24**

INSTRUCTION NO. 18

   **Party's Failure to Testify (If Applicable)** ........................................................... **25**

INSTRUCTION NO. 19

   **Party's Failure to Produce Evidence (If Applicable)** .......................................... **26**

INSTRUCTION NO. 20

   **Use of Interrogatories** .......................................................................................... **27**

INSTRUCTION NO. 21

   **Deposition Testimony** ........................................................................................... **28**

INSTRUCTION NO. 22

   **Witness Credibility** .............................................................................................. **30**

INSTRUCTION NO. 23

   **Discrepancies in Testimony** ................................................................................. **32**

INSTRUCTION NO. 24

   **Expert Witness** ..................................................................................................... **34**

INSTRUCTION NO. 25

   **Joint Employers [If Applicable]** .......................................................................... **35**


**COUNT I**

INSTRUCTION NO. 26

   **Hostile Work Environment** .................................................................................. **38**

INSTRUCTION NO. 27

   **Unwelcome Conduct – Defined** ........................................................................... **41**

INSTRUCTION NO. 28

   **Because of Race** .................................................................................................... **42**

INSTRUCTION NO. 29

   **Severe or Pervasive** .............................................................................................. **45**

INSTRUCTION NO. 30

**Me Too Evidence** .................................................................................... **49**

INSTRUCTION NO. 31

**Conduct Imputable to Employer – Knowledge and Constructive Knowledge** ............... **51**

INSTRUCTION NO. 32

**Prompt and Adequate Action** ..................................................................... **56**

INSTRUCTION NO. 33

**Conduct Imputable to Employer — Supervisor Harassment** ........................................ **59**

INSTRUCTION NO. 34

**Compensatory Damages—Emotional Distress** ................................................... **64**

INSTRUCTION NO. 35

**Punitive Damages** .................................................................................... **67**

**COUNT II**                                                                                                    **71**

INSTRUCTION NO. 36

**Constructive Discharge** ............................................................................. **71**

INSTRUCTION NO. 37

**Compensatory Damages—Emotional Distress & Lost Wages** ..................................... **74**

INSTRUCTION NO. 38

**After-Acquired Evidence [If Applicable]** ....................................................... **77**

INSTRUCTION NO. 39

**Front Pay (Future Lost Earnings)** ................................................................ **78**

INSTRUCTION NO. 40

**Punitive Damages** .................................................................................... **79**

**COUNT III**                                                                                                   

INSTRUCTION NO. 41

**Retaliation** ............................................................................................ **80**

INSTRUCTION NO. 42

**Compensatory Damages—Emotional Distress & Lost Wages** ..................................... **83**

INSTRUCTION NO. 43

**Punitive Damages** .................................................................................... **84**

## COUNT IV

INSTRUCTION NO. 44

**Discrimination Based on Race (Disparate Pay and Promotion)**......................................... 85

INSTRUCTION NO. 45

**Compensatory Damages—Emotional Distress & Lost Wages** ........................................ 87

INSTRUCTION NO. 46

**Front Pay** ...................................................................................................................... 88

INSTRUCTION NO. 47

**Punitive Damages**........................................................................................................... 89

## PTO INSTRUCTIONS

INSTRUCTION NO. 48

**PTO — Other Claims Against NNI**.................................................................................. 90

INSTRUCTION NO. 49

**PTO—Prior Complaints** ................................................................................................. 92

INSTRUCTION NO. 50

**PTO — Second-Hand Harassment** ................................................................................... 93

INSTRUCTION NO. 51

**PTO — NNI Ex. 3215** ...................................................................................................... 94

INSTRUCTION NO. 52

**PTO — NNI Ex. 3216** ...................................................................................................... 95

INSTRUCTION NO. 53

**PTO — NNI Ex. 3377** ...................................................................................................... 96

INSTRUCTION NO. 54

**PTO — NNI Ex. 3380** ...................................................................................................... 97

INSTRUCTION NO. 55

**PTO — NNI Ex. 3381** ...................................................................................................... 98

INSTRUCTION NO. 56

**PTO — NNI Ex. 3385** ...................................................................................................... 99

INSTRUCTION NO. 57

**PTO — NNI Ex. 3387** .................................................................................................... 100

INSTRUCTION NO. 58

**PTO — NNI Ex. 3389** .................................................................................................... 101

INSTRUCTION NO. 59

**PTO — Def. Ex. G (Crawford Designation 151:17-155:8)** ............................................. **102**


**FINAL INSTRUCTIONS**

INSTRUCTION NO. 60

**Introduction** ................................................................................................................. **104**

INSTRUCTION NO. 61

**Additional Instructions** ............................................................................................... **106**

INSTRUCTION NO. 62

**Judge's Opinion** ........................................................................................................... **107**

INSTRUCTION NO. 63

**Juror Attentiveness** ..................................................................................................... **108**

INSTRUCTION NO. 64

**Role of the Court** ......................................................................................................... **109**

INSTRUCTION NO. 65

**Role of the Jury** ........................................................................................................... **110**

INSTRUCTION NO. 66

**Juror Oath** .................................................................................................................... **112**

INSTRUCTION NO. 67

**Corporate Party** .......................................................................................................... **113**

INSTRUCTION NO. 68

**Publicity—Final Charge** ............................................................................................. **114**

INSTRUCTION NO. 69

**Reprimand of Counsel for Misconduct [If Applicable]** .............................................. **115**

INSTRUCTION NO. 70

**Election of Foreperson; Duty to Deliberate; Communications With Court; Cautionary; Unanimous Verdict [If Applicable]; Verdict Form** ...................... **116**

**PRELIMINARY INSTRUCTIONS**

INSTRUCTION NO. 1

**Before Voir Dire[1]**

From now until you are discharged from the case, and for those who are selected to try

the case, from now until you retire to deliberate on a verdict at the end of the trial, you may not

discuss this case with anyone, even the other jurors. You may tell your family, close friends, and

other people about your participation in this trial so that you can explain when you are required

to be in court. If you do so, you should warn them not to ask you about this case, tell you

anything they know or think they know about it, or discuss this case in your presence.

Furthermore, you must not post any information on any social media or any social

network, or communicate with anyone about the parties, witnesses, participants, claims, charges,

evidence or anything else related to this case.

After you retire to deliberate on a verdict at the end of the trial, you must discuss the case

with only the other jurors. You must not tell anyone else anything about the jury's deliberations

in this case until after I accept your verdict or until I give you specific permission to do so. If you

discuss the case with someone other than the other jurors during deliberations, you may be

influenced in your verdict by their opinions. That would not be fair to the parties, and it would

result in a verdict that is not based entirely on the evidence and the law.

Also, while you are in the courthouse and until you are discharged in this case, do not

provide any information to anyone by any means about this case. Thus, for example, do not talk

---

[1] Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit §
1.01 (October 22, 2020) [hereinafter "Eighth Circuit Civil Jury Instructions"].

1

face-to-face or use any electronic device or social media or in any other way communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror.

Those of you who are selected for the jury in this case must decide this case based only on the evidence received by the court here in the courtroom and the instructions on the law that I give the jury. Do not do any research — on the Internet, through social media, in libraries, in the newspapers, or in any other way — or make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other device to search for or to view any place discussed in the testimony. Also, do not research any information about this case, the law, the people involved, including the parties, the witnesses, the lawyers, or the judge until you have been excused as jurors.

The important reason for your not talking with anyone about the case is that the parties have a right to have this case decided only on evidence they know about and that has been presented here in court. If you do some research or investigation or experiment that we don't know about, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the Rules of Evidence, the trial process, including the oath to tell the truth and by cross-examination. Each of the parties is entitled to a fair trial, rendered by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide a case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions, and indeed any instructions the court gives you throughout the trial could result in the case having to be retried. And failure to follow these and the court's other instructions could

result in you being held in contempt of the court and punished accordingly.

Are there any of you who cannot or will not abide by these rules concerning communication with others during this trial?

INSTRUCTION NO. 2

**<u>Recess at End of Voir Dire</u>**[2]

During this recess, and every other recess, do not discuss this case among yourselves or with anyone else, including your family and friends. Do not allow anyone to discuss the case with you or within your hearing. "Do not discuss" also means do not e-mail, send text messages, blog or engage in any other form of written, oral or electronic communication, as I instructed you earlier.

You must decide this case only from the evidence received by the court here in the courtroom and the instructions on the law that I give you. Do not read any newspaper or other written account, watch any televised account or streamed video account, or listen to any streamed internet or radio program on the subject of this trial. Do not conduct any internet research or consult with any other sources about this case, the people involved in the case, or its general subject matter.  You must keep your mind open and free of outside information.  Only in this way will you be able to decide the case fairly based solely on the evidence received in court and my instructions on the law. If you decide this case on anything else, you will have done an injustice. It is very important that you follow these instructions.

I may not repeat these things to you before every recess, but keep them in mind until you are discharged.

---

[2] Eighth Circuit Civil Jury Instruction § 1.02

INSTRUCTION NO. 3

**General; Nature of Case; Duty of Jury**[3]

Members of the Jury: I am now going to give you some instructions about this case and about your duties as jurors. At the end of the trial, I will give you more instructions. I may also give you instructions during the trial. All instructions — those I give you now and those I give you later — are equally important and you must follow them all.

This is a civil case in which 21 Plaintiffs have claims against Defendant Newport News Industrial Corporation ("NNI" or "Defendant") for hostile work environment. Among other claims, and in brief, Plaintiffs contend that while they were employed by NNI their coworkers and supervisors used racial slurs and derogatory language and stereotypes, such as using the word "n*****r" or referring to them as "boy" or "you people" or "lazy;' exposed them to offensive racial symbols and graffiti, such as nooses, confederate flags, and racial graffiti; and exposed them to worse working conditions than Caucasian employees, such as assigning them undesirable jobs, excessively scrutinizing their work performance, excessively monitoring their movements, and generally making their day-to-day experiences miserable.

Defendant NNI denies Plaintiffs' claims for reasons that apply to some or all Plaintiffs' claims, including: that the alleged harassment against some or all Plaintiffs did not constitute a racially hostile working environment; or that if it occurred, NNI is not legally responsible.

Your duty is to decide what the facts are from the evidence. You are allowed to consider the evidence in the light of your own observations and experiences. After you have decided what the facts are, you will have to apply those facts to the law that I give you in these and in my other

---

[3] Eighth Circuit Civil Jury Instruction § 1.03.

instructions. That is how you will reach your verdict. Only you will decide what the facts are. However, you must follow my instructions, whether you agree with them or not. You have taken an oath to follow the law that I give you in my instructions.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness says, or only part of it, or none of it.

In deciding what testimony to believe, consider the witnesses' intelligence, their opportunity to have seen or heard the things they testify about, their memories, any reasons they might have to testify a certain way, how they act while testifying, whether they said something different at another time, whether their testimony is generally reasonable, and how consistent their testimony is with other evidence that you believe.

Do not let sympathy, or your own likes or dislikes, influence you. The law requires you to come to a just verdict based only on the evidence, your common sense, and the law that I give you in my instructions, and nothing else.

Nothing I say or do during this trial is meant to suggest what I think of the evidence or I think your verdict should be.

INSTRUCTION NO. 4

**Evidence; Limitations[4]**

When I use the word "evidence," I mean the testimony of witnesses; documents and other things I receive as exhibits; facts that I tell you the parties have agreed are true; and any other facts that I tell you to accept as true.

Some things are not evidence. I will tell you now what is not evidence:

1.    Lawyers' statements, arguments, questions, and comments are not evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question. An example of this would be if a lawyer questioned of a professional baseball player: "when did you stop betting on your games?" You would not be permitted to consider as true the assumed fact that the baseball player ever bet on their own games, unless the witness themselves indicated they had bet on their own games, or unless there was some other evidence in the record that they had bet on their games.

---

[4] **Second Circuit:** United States v. Aluminum Co. of America, 1 F.R.D. 62 (S.D.N.Y. 1939); **Third Circuit:** Sims v. Greene, 161 F.2d 87 (3d Cir. 1947); **Fifth Circuit:** Rodriguez v. Olin Corp., 780 F.2d 491, 496 (5th Cir. 1986); **Seventh Circuit:** Seventh Circuit Pattern Civil Jury Instruction 1.06; **Eighth Circuit:** Haines v. Powermatic Houdaille, Inc., 661 F.2d 94 (8th Cir. 1981); Eighth Circuit Civil Jury Instruction 1.04; **Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 3.2-3.3; **Tenth Circuit:** Rasmussen Drilling, Inc., v. Kerr-McGee Nuclear Corporation, 571 F.2d 1144 (10th Cir. 1978); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 74-1

2.      Documents or other things that might be in court or talked about, but that I do not receive as exhibits, are not evidence.

3.      Objections are not evidence. Lawyers have a right – and sometimes a duty – to object when they believe something should not be a part of the trial. Do not be influenced one way or the other by objections. If I sustain a lawyer's objection to a question or an exhibit, that means the law does not allow you to consider that information. When that happens, you have to ignore the question or the exhibit, and you must not try to guess what the information might have been.

4.      Testimony and exhibits that I strike from the record, or tell you to disregard, are not evidence, and you must not consider them.

5.      Anything you see or hear about this case outside the courtroom is not evidence, and you must not consider it.

Also, I might tell you that you can consider a piece of evidence for one purpose only, and not for any other purpose. If that happens, I will tell you what purpose you can consider the evidence for and what you are not allowed to consider it for.

Some of you may have heard the terms "direct evidence" and "circumstantial evidence." You should not be concerned with those terms, since the law makes no distinction between the weight to be given to direct and circumstantial evidence.

INSTRUCTION NO. 5

**<u>Limiting Instructions</u>**[5]

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence or testimony has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

---

[5] Adapted from Pattern Jury Instructions (Civil Cases), Committee on Civil Pattern Jury Instructions District Judges Association Fifth Circuit §2.6 (June 2020); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Ninth Circuit Jury Instructions Committee §1.11 (2017 Ed., updated March 2021).

INSTRUCTION NO. 6

**<u>Stipulations</u>**[6]

Sometimes the parties have agreed that certain facts are true. This agreement is called a

stipulation. You must treat these facts as proven for this case.

---

[6] Eleventh Circuit Pattern Jury Instructions (Civil Cases) §2.1 (2020)

INSTRUCTION NO. 7

**<u>Bench Conferences and Recesses</u>**[7]

During the trial, I will sometimes need to talk privately with the lawyers. I may talk with them here at the bench while you are in the courtroom, or I may call a recess and let you leave the courtroom while I talk with the lawyers. Either way, please understand that while you are waiting, we are working. We have these conferences to make sure that the trial is proceeding according to the law and to avoid confusion or mistakes. We will do what we can to limit the number of these conferences and to keep them as short as possible.

---

[7] 8th Cir. Jury Instructions §1.05

INSTRUCTION NO. 8

## **Conduct of Counsel[8]**

As I instructed you at the outset of trial, it is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against the attorneys and parties in this case because an attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

---

[8] Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 71-6

INSTRUCTION NO. 9

## **Contact With Others[9]**

Before we start the trial, let me give you a few 'rules of the road."

First, please do not discuss the case with anyone. This includes discussing the case in person, in writing, by phone or electronic means, via text messaging, e-mail, Facebook, Twitter, blogging or any internet chats room, web site or other feature. If you have to tell someone such as your spouse or your employer that you are serving on a jury and that the trial may last as late as [date], that's okay. But when they inevitably ask you what the case is about, please tell them that you are under strict instructions from the judge not to discuss the case. The reason for this, obviously, is that we want you to decide this case solely on the evidence presented in this courtroom, and not on the basis of anything anyone who hasn't heard the evidence may think about the case. If you are asked or approached in any way about your jury service or anything about this case, you should respond that you have been ordered by the judge not to discuss the matter, and you should report the contact to the court as soon as possible.

Along the same lines, you should not try to access any information about the case or do research on any issue that arises in the case from any outside source, including dictionaries, reference books, or anything on the internet. And in the unlikely event you see anything in the media about this case, please turn away and pay it no heed. Your sworn duty is to decide this case solely and wholly on the evidence presented in this courtroom.

---

[9] **First Circuit:** *Richard v. United States*, 315 F.2d 331 (1st Cir. 1963); **Sixth Circuit:** *Briggs v. United States*, 221 F.2d 636 (6th Cir. 1955); **Ninth Circuit:** Los Angeles Memorial Coliseum Comm'n v. National Football League, 726 F.2d 1381 (9th Circ. 1984); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 71-15.

Finally, please do not discuss the case even among yourselves until all the evidence has been presented and the case has been given to you for your deliberations. The reason for this is that the evidence will be presented one witness and one exhibit at a time, and it is important that you keep an open mind until you have heard all the evidence.

INSTRUCTION NO. 10

**Note-Taking By Jury[10]**

At the end of the trial, you will have to make your decision based on what you recall of the evidence. You will not have a written copy of the testimony to refer to. Because of this, you have to pay close attention to the testimony and other evidence as it is presented here in the courtroom.

If you wish, however, you may take notes to help you remember what witnesses say. If you do take notes, be sure that your note-taking does not interfere with your listening to and considering all of the evidence. Also, if you take notes, do not discuss them with anyone before or during your deliberations. Your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror and your notes are not to be shown to any other juror during your deliberations. If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the official trial transcript which is being made of these proceedings be read to you.

---

[10] **First Circuit:** *United States v. Oppon*, 863 F.2d 141 (1st Cir. 1988); **Second Circuit:** *United States v. Bertolotti*, 529 F.2d 149 (2d Cir. 1975); **Third Circuit:** *United States v. Maclean,* 578 F.2d 64 (3d Cir. 1978); Third Circuit Model Civil Jury Instruction 1.9; **Fourth Circuit:** United States v. Wild, 47 F.3d 669 (4th Cir. 1995); **Fifth Circuit:** *United States v. Rhodes,* 631 F.2d 43 (5th Cir. 1980)*;* Fifth Circuit Pattern Civil Jury Instruction 2.21; **Sixth Circuit:** United States v. Johnson, 584 F.2d 148 (6th Cir. 1978); **Seventh Circuit:** United States v. Braverman, 522 F.2d 218 (7th Cir. 1975); **Eighth Circuit:** *United States v. Darden,* 70 F.3d 1507 (8th Cir. 1995); Eighth Circuit Civil Jury Instruction 1.04; **Ninth Circuit:** *Toles v. United States,* 308 F.2d 590 (9th Cir. 1962); Ninth Circuit Model Criminal Jury Instruction 1.11; **Tenth Circuit:** *United States v. Riebold,* 557 F.2d 697 (10th Cir. 1977); Tenth Circuit Criminal Pattern Jury Instruction 1.02; **Eleventh Circuit:** Eleventh Circuit Pattern Civil Jury Instructions, Preliminary Instructions Before Trial.

INSTRUCTION NO. 11

**<u>Publicity – Preliminary Statement</u>**[11]

There may be some newspaper attention given to this case, or there may be some talk about it on the radio or television. If there is that kind of media attention during the trial, you must insulate yourselves from all information about this case, except what comes to you in this courtroom through the rules of evidence. So, when you leave here and go to your home and pick up the paper, if you see something about the case, you must put the paper down right away. Do not read the article.

I will also tell you to avoid listening to or watching any radio or television discussion of the case.

---

[11] **First Circuit:** United States v. Porcaro, 648 F.2d 753 (1st Cir. 1981); **Fifth Circuit:** United States v. Harrelson, 754 F.2d 1153 (5th Cir. 1985); **Seventh Circuit:** United States v. Trapnell, 638 F.2d 1016 (7th Cir. 1980); **Ninth Circuit:** Los Angeles Memorial Coliseum Comm'n v. National Football League, 726 F.2d 1381 (9th Cir. 1984); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 71-12.

INSTRUCTION NO. 12

**<u>Burden of Proof — Plaintiffs' Claims</u>**[12]

This is a civil case and as such each Plaintiff has the burden of proving the material allegations of their claim or claims by a preponderance of the evidence. That means that each Plaintiff must produce evidence that, considered in the light of all the facts, leads you to believe that what they claim is more likely true than not.

If after considering all the evidence, you are satisfied that any or all Plaintiffs have carried his or her burden on each essential point to which they have the burden of proof, then you must find in favor of any such Plaintiff. If after such consideration you find the testimony of a Plaintiff and NNI to be in balance or equally probable, then that Plaintiff has failed to sustain their burden and you must find in favor for NNI regarding any such Plaintiff's claim.

---

[12] **Supreme Court:** *Rivera v. Minnich,* 483 U.S. 574, 107 S. Ct. 3001, 97 L. Ed. 2d 473 (1987); *Santosky v. Kramer*, 45 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); **First Circuit**: United States District Court, District of Maine, Jury Instructions §I, Burden of Proof.**Fifth Circuit** *Nowell v. Dick*, 413 F.2d 1204, 1211 (5th Cir. 1969); **Seventh Circuit:** *Celanese Corp. of America v. Vandalia Warehouse Corp*., 424 F.2d 1176, 1191 (7th Cir. 1970); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 73-1.

INSTRUCTION NO. 13

**<u>Burden of Proof — Individual Plaintiffs</u>**

This case has multiple Plaintiffs who have all brought claims against the same Defendant, NNI. To encourage convenience and efficiency, the law permits multiple parties to join a single lawsuit so long as the claims are reasonably related and a question of law or fact common to all Plaintiffs will arise in the action.[13]

While there are multiple Plaintiffs in this case, each Plaintiff must individually prove their own claims. These instructions often refer to a singular "Plaintiff;" however, each of these instructions apply to each Plaintiff in this case. However, even though each Plaintiff must individually prove his or her claim or claims, as I will instruct you in more detail later, you may rely on evidence concerning any of the Plaintiffs or concerning or from other witnesses or documents, in assessing each Plaintiff's claim.[14]

You may find in favor of one or more Plaintiffs against NNI, or conversely you may find in favor of NNI against one or more Plaintiffs. Even though each Plaintiff must individually prove their claims,[15] Plaintiffs may share evidence, evidence can be viewed collectively or otherwise apply to each Plaintiff's case, and Plaintiffs may rely on each other's experiences to prove their claims.[16]

---

[13] Fed. R. Civ. P. 20.
[14] Jennings v. Univ. of N.C., 482 F.3d 686, 694 (4th Cir. 2007) (en banc).
[15] *Honor v. Booz-Allen & Hamilton, Inc*., 383 F.3d 180, 190 (4th Cir. 2004).
[16] *See Jennings v. Univ. of N.C.,* 482 *F.3d* at 694*; Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 184 (4th Cir. 2001).

INSTRUCTION NO. 14

**<u>Burden of Proof — Affirmative Defense [If Applicable]</u>**[17]

In this case, NNI asserts affirmative defenses, which means even if some or all Plaintiffs proves their claims by a preponderance of the evidence, NNI can still prevail against any such Plaintiff's claim(s) if it proves an affirmative defense by a preponderance of the evidence.

It is NNI's burden to prove by the preponderance of evidence all the elements of its affirmative defenses as to each Plaintiff's claims. For NNI to prevail on an affirmative defense, it does not have to disprove a Plaintiff's claims; rather, it can prevail on an affirmative defense is if it proves all the elements of the defense by a preponderance of the evidence.

---

[17] Adapted from 11th Cir. Pattern Jury Instructions §3.7.2; 3rd Cir. Pattern Jury Instructions §1.10

INSTRUCTION NO. 15

**<u>Preponderance of The Evidence</u>**[18]

The party with the burden of proof on any given issue has the burden of proving every disputed element of that issue by a preponderance of the evidence. If you conclude that the party bearing the burden of proof has failed to establish the elements by a preponderance of the evidence, you must decide against that party on the issue you are considering. If you conclude that the party bearing the burden of proof has established the elements by a preponderance of the evidence, you must decide in their favor on the issue you are considering.

I will now describe the meaning of the "preponderance of evidence."

To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have

---

[18] **First Circuit:** *Romano v. U-Haul Int'l*, 233 F.3d 655 (1st Cir. 2000); **Second Circuit:** *Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997); *Larson v. JoAnn Cab Corp*., 209 F.2d 929 (2d Cir. 1954); **Third Circuit:** *Porter v. American Export Lines, Inc*., 387 F.2d 409 (3d Cir. 1968); *Virgin Islands Labor Union v. Caribe Construction Co*., 343 F.2d 364 (3d Cir. 1965); Third Circuit Model Civil Jury Instruction 1.10; **Fifth Circuit:** *Bartley v. Euclid, Inc*., 158 F.3d 261 (5th Cir. 1998); *Gardner v. Wilkinson*, 643 F.2d 1135 (5th Cir. 1981); **Sixth Circuit:** Williams v. Eau Claire Public Schools, 397 F.3d 441 (6th Cir. 2005); *Disner v. Westinghouse Electric Corp*., 726 F.2d 1106 (6th Cir. 1984); **Eighth Circuit:** Eighth Circuit Civil Jury Instruction 3.04; **Tenth Circuit:** *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033 (10th Cir. 2006), cert. denied, 550 U.S. 933 (2007); *Black v. M & M Gear Co*., 269 F.3d 1220 (10th Cir. 2001); **District of Columbia Circuit:** *Porter v. Natsios*, 414 F.3d 13 (D.C. Cir. 2005); **Federal Circuit:** *Jazz Photo Corp v. United States*, 439 F.3d 1344 (Fed. Cir. 2006); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 73-2.

produced them. You may believe one witness over multiple witnesses on an issue if you find that witness to be credible.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence—he or she must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

INSTRUCTION NO. 16

**Direct and Circumstantial Evidence**[19]

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something they know by virtue of their own senses—something the witness has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example:

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

---

[19] **United States Supreme Court:**  *Michalic v. Cleveland Tankers, Inc*., 364 U.S. 325, 330, 81 S. Ct. 6, 5 L. Ed. 2d 20 (1960); **Fourth Circuit:** *United Textile Workers of America, AFL-CIO, Local Union No. 120 v. Newberry Mills, Inc*., 238 F. Supp 366 (W.D.S.C. 1965); **Fifth Circuit:** Fifth Circuit Pattern Civil Jury Instruction 2.18; **Seventh Circuit:** Seventh Circuit Pattern Civil Jury Instruction 1.12; **Eighth Circuit:** *Ellis Fischel State Cancer Hosp. v. Marshall*, 629 F.2d 563 (8th Cir. 1980); **Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 3.5; **Eleventh Circuit:** *Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321 (11th Cir. 1982);* Eleventh Circuit Pattern Civil Jury Instructions, Basic Instruction 2.1; Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 74-2.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on (*e.g.,* a preponderance of) all the evidence presented.

INSTRUCTION NO. 17

**<u>Inference Defined</u>**[20]

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The Plaintiffs asks you to draw one set of inferences, while NNI asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

---

[20] **United States Supreme Court:** *Schulz v. Pennsylvania R. Co*., 350 U.S. 523, 76 S. Ct. 608, 100 L. Ed. 668 (1956); *Lavender v. Kurn*, 327 U.S. 645, 66 S. Ct. 740, 90 L. Ed. 916 (1946); **Second Circuit:** *Wilkins v. American Export Isbrandtsen Lines, Inc*., 446 F.2d 480 (2d Cir. 1971); **Third Circuit:** *EEOC v. Greyhound Lines*, 635 F.2d 188 (3d Cir. 1980); **Seventh Circuit:** *United States v. An Article of Device*, 731 F.2d 1253 (7th Cir. 1984); **Eleventh Circuit:** *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321 (11th Cir. 1982); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 75-1

INSTRUCTION NO. 18

**Party's Failure to Testify (If Applicable)**[21]

Counsel for Plaintiffs have argued that NNI failed to produce one or more witnesses who had material information about one or more Plaintiffs' claims or NNI's defenses and who were within NNI's control, for example a managerial employee.

If you find that NNI had a witness or witnesses within its control but failed to product that witness or those witnesses at trial, you are permitted, but not required to infer that the withheld witness would have been unfavorable to NNI.

You are reminded that any inference you may draw should be based on all the facts and circumstances in this case.

---

[21] **United States Supreme Court:** *International Brotherhood of Teamsters v. United States*, 291 U.S. 293, 54 S. Ct. 396, 78 L. Ed. 804 (1934); *Mammoth Oil Co. v. United States*, 275 U.S. 13, 48 S. Ct. 1, 72 L. Ed. 137 (1927); *Bilokumsky v. Tod*, 263 U.S. 149, 44 S. Ct. 54, 68 L. Ed. 221 (1923); **Second Circuit:** *Gray v. Great American Recreation Ass'n,* 970 F.2d 1081 (2d Cir. 1992); *N. Sims Organ & Co. v. SEC*, 293 F.2d 78 (2d Cir. 1961); **Fifth Circuit:** *Transcontinental Gas Pipe L. Corp. v. Mobile Drill Barge*, 424 F.2d 684, 37 O.&G.R. 87 (5th Cir. 1970); **Eighth Circuit:** *Barnett v. United States*, 319 F.2d 340 (8th Cir. 1963); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 75-6.

INSTRUCTION NO. 19

**Party's Failure to Produce Evidence (If Applicable)[22]**

You have heard testimony about evidence which has not been produced. Counsel for Plaintiffs have argued that this evidence was in NNI's control and would have proven facts material to the matter in controversy.

If you find that NNI could have produced the evidence, that the evidence was within its control, and that this evidence would have been material in deciding among the facts in dispute in this case, then you are permitted, but not required, to infer that the evidence would have been unfavorable to NNI.

In deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether NNI had a reason for not producing this evidence, which was explained to your satisfaction. Again, any inference you decide to draw should be based on all the facts and circumstances in this case.

---

[22] **District of Columbia Circuit**: *International Union (UAW) v. NLRB*, 459 F.2d 1329 (D.C. Cir. 1972); **Second Circuit:** *Zimmermann v. Associates First Capital Corp*., 251 F.3d 376 (2d Cir. 2001); **Third Circuit:** *Cromlin v. Pittsburgh & Lake Erie R.R. Co*., 327 F.2d 142 (3d Cir. 1963); **Fourth Circuit:** *Vodusek v. Bayliner Marine Corp*., 71 F.3d 148 (4th Cir. 1995); **Seventh Circuit:** Seventh Circuit Pattern Civil Jury Instruction 1.20; **Eighth Circuit:** *Stevenson v. Union Pacific R.R. Co*., 354 F.3d 739 (8th Cir. 2003); *Brown v. Sandals Resorts Int'l*, 284 F.3d 949 (8th Cir. 2002); **Ninth Circuit:** *Transue v. Aesthetech Corp*., 341 F.3d 911 (9th Cir. 2003); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 75-7;

INSTRUCTION NO. 20

**<u>Use of Interrogatories</u>**[23]

Some of the testimony you have received is in the form of answers that Plaintiffs and NNI gave in response to written questions the other side submitted. These questions are called "interrogatories." Before the trial, the parties gave the answers in writing while under oath.

Answers to interrogatories are admissions by the party who answered the written questions, when the opposing party introduces them.

---

[23] Adapted from 11th Cir. Pattern Jury Instructions § 2.6

INSTRUCTION NO. 21

**Deposition Testimony**[24]

Members of the jury, some of the testimony that you will receive into evidence is in the form of depositions. A deposition is simply a procedure where the attorneys for one side may question a witness or a party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

Sometimes a deposition is offered as evidence at trial because a witness is not available to testify at trial in person. You may consider deposition testimony from any such witness for any purpose—just as if they testified in person at trial.

You may also consider the deposition testimony of the parties for any purpose. The parties include each of the Plaintiffs and Defendant's officers, directors, managing agents, or designees. When an opposing party offers the deposition testimony of a party, that testimony is considered an admission by the party who gave the testimony.

However, your consideration of deposition testimony from non-party witnesses who also testified at trial must be limited. Any deposition testimony from a non-party witness who also testified at trial may only be considered to determine whether the testimony that witness gave at

---

[24] **Third Circuit:** Third Circuit Model Civil Jury Instruction 2.5; **Fifth Circuit:** Fifth Circuit Model Civil Jury Instruction 2.23; **Seventh Circuit:** Seventh Circuit Pattern Civil Jury Instruction 2.08; **Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 2.6; **Tenth Circuit:** *Minshall v. McGraw Hill Broad. Co*., 323 F.3d 1273 (10th Cir. 2003); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 74-14; *Collins v. Omega Flex, Incorporated*, 210 Westlaw 2470944 at *3-4 (E.D.PA. June 15, 2010); Fed. R. Civ. P. 32(a)(3); Fed. R. Civ. P. 30(b)(6); Fed. R. Civ. P. 31(a)(4).

trial is consistent with the testimony they gave in their deposition, and to what extent any consistency or inconsistency impacts your assessment of the witnesses' credibility. You must not consider their deposition testimony for any other purpose.[25]

---

[25] Crawford et al. v. Newport News Industrial Corp., Order on Pls.' Motions *In Limine* 394, 396, Dkt. 500 at 1-2 (Oct. 8, 2020) ("Plaintiffs' motion in limine to preclude use of dismissed Plaintiffs' deposition testimony under Rule 32(a)(3), ECF No. 394, is GRANTED. Plaintiffs' motion in limine to preclude overbroad designations of deposition testimony under Rule 403, ECF No. 396, is GRANTED in part and DENIED in part. Defendant may use the depositions of former Plaintiffs for purposes of impeachment and contradiction. Assuming the former Plaintiffs are not unavailable as witnesses within the meaning of Fed. R. Civ. P. 32(a)(4), defendant may not use their depositions for other purposes, as those persons are no longer parties. To the extent that defendant seeks to use the depositions of the remaining Plaintiffs in lieu of recalling them to the witness stand and/or for rebuttal, the motion is denied without prejudice to objection at trial. Defendant may not show video deposition testimony during its opening statement. Defendant may, however, to the extent it deems such evidence will be admitted at trial, describe the same to the jury during its opening statement. Consistent with the Court's findings regarding the motions in limine above, the parties are directed to submit, as part of their proposed jury instructions, limiting instructions regarding the proper purpose(s) for which the jury may consider such evidence.").

INSTRUCTION NO. 22

**Witness Credibility**[26]

In deciding what the facts are, you must consider all the evidence, but that does not mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. You may believe or disbelieve any witness, in whole or in part.

To decide whether you believe any witness, I suggest that you ask yourself a few questions:

1.    Did the witness impress you as one who was telling the truth?

2.    Did the witness have any particular reason not to tell the truth?

3.    Did the witness seem to have a good memory?

4.    Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

5.    Did the witness appear to understand the questions clearly and answer them directly?

6.    Did the witness's testimony differ from other testimony or other evidence?

The weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. In other words, the number of witnesses testifying concerning a particular point does not necessarily matter. You must consider all the

---

[26] Adapted from 11th Cir. Pattern Jury Instructions §3.4; United States District Court, District of Maine, Jury Instructions §I, Credibility of Witnesses.

evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater weight than that of a larger number on the other or vice versa.

INSTRUCTION NO. 23

**Discrepancies in Testimony[27]**

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued in some scenarios that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness' testimony. On the other hand, discrepancies in a witness' testimony or between his testimony and that of others do not necessarily mean that the witness' entire testimony should be discredited.

Many of the events at issue in this case happened a long time ago, and naturally with time, people sometimes forget or remember things inaccurately. Memory failures and mistaken memories are common and may explain some inconsistencies and contradictions. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. There are many reasons why the case is being tried now, but the fact that witnesses' memories may sometimes falter based on the length of time that has passed should not be held against any party.

Even a truthful witness may be nervous and contradict themselves. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance, but a willful falsehood always is a matter of importance and should be considered seriously.

---

[27] *Quock Ting v. United States,* 140 U.S. 417, 11 S. Ct. 733, 35 L. Ed. 501 (1891); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 76-4; 11th Circuit Pattern Jury Instructions § 3.5.1

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

## INSTRUCTION NO. 24
### **Expert Witness**[28]

The rules of evidence provide that if scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify and state his or her opinion concerning such matters.

You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

In this case, Plaintiffs Bostic, Chesson, Crawford, Smith, and Swain have offered testimony from expert, Dr. Robert Goldstein, about the emotional distress that they suffered because of the harassment to which NNI subjected them. NNI has not offered an expert to rebut or otherwise oppose Dr. Goldstein's expert opinion.

---

[28] Adapted from Fed. R. Evid. 702; 11th Cir. Pattern Jury Instructions §3.6.1; 8th Cir. Pattern Jury Instructions §3.08.

INSTRUCTION NO. 25

**Joint Employers [If Applicable][29]**

It is not always clear whether the law considers someone an "employee," and it is not always clear who the law considers to be someone's "employer." Sometimes an employee may have more than one employer at the same time if both employers share or co-determine matters governing the essential terms and conditions of employment.[30]

In this case, there is no dispute that all Plaintiffs worked at NNI during their employment, and there is no dispute that the following Plaintiffs were employed by NNI during most or all of their tenure at NNI, as follows:

- Mark Barnett:               Nov.17, 2009 – Jan. 28, 2011
- Ian Blow:                   April 6, 2010 – Oct. 8, 2020
- Ernest Chesson:             July 9, 2012 ¬– April 6, 2015
- Jamesina Crawford:          Aug. 20, 2010 – Feb. 3, 2012
- Frantz Edouard:             July 12, 2010 – Jan. 28, 2011
- Steve Gordon:               July 30, 2012 – present
- Reggie Holliman:            Feb. 15, 2011 – Sept. 21, 2011
- Lamar Holloman:             May 4, 2006 – Nov. 9, 2006; Nov. 15, 2011 – May 2, 2012
- Alfred Joyner:              April 22, 2002 – present
- Willie Nichols:             Aug. 27, 2010 – Sep. 10, 2015
- Chris Payton:               Jan. 21, 2014 – April 15, 2015
- Theo Pierce:                Feb. 17, 2014 – Dec. 23, 2014
- Robert Robinson:            July 28, 2014 – October 24, 2014
- Dennis Smith:               May 13, 2013 – April 23, 2015
- Ron Stewart:                Jan. 26, 2004 – June 15, 2019.
- David Swain:                July 3, 2012 – Feb. 9, 2015
- Ron Valentine:              April 3, 2006 – July 2, 2007; Nov. 17, 2009 – present
- Roderick Waddell, Sr.:      Oct. 24, 2011 – present
- Brandon Walker:             Sep. 4, 2013 – present

---

[29] Adapted from 11th Cir. Pattern Jury Instructions §4.25
[30] *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 408 (4th Cir. 2015)

NNI disputes that Plaintiff Jonathan Dantes (January 27, 2014 – August 21, 2014) and Richard Bostic (July 9, 2012 – December 19, 2013) were ever its employees, and contends that it did not employ Plaintiff Gordon between July 2012 and November 17, 2014; Plaintiff Smith between June 2012 and May 2013; Plaintiff Stewart between 2002 until 2005; or Plaintiff Chesson between July 2, 2012 and September 11, 2013. NNI takes the position that the staffing agencies through which Plaintiffs Dantes, Bostic, Gordon, Chesson, Smith, and Stewart were placed at NNI should be considered their legal employer. Plaintiffs contend that NNI intended to and actually employed the foregoing Plaintiffs throughout the duration of their tenure at NNI. Specifically, Plaintiffs contend that NNI retained all actual and practical control over the terms and conditions of Plaintiffs' employment, including the ability to hire and fire them; the entire duration of Plaintiffs employment was exclusive to and performed at NNI's facilities; NNI exclusively oversaw the day-to-day supervision of Plaintiffs; Plaintiffs were assigned and performed the same duties as any other NNI employee; NNI provided their assignments, training, and necessary tools and equipment; and NNI maintained employment records for each of the Plaintiffs.

You must decide whether at any time while Plaintiffs Bostic, Chesson, Dantes, Gordon, Smith, and Stewart worked at NNI through staffing agencies, as indicated by the time periods above, they were also employed by NNI. In deciding whether these Plaintiffs were NNI's employees while they worked through staffing agencies, consider all the following factors to the extent you decide that each applies to this case:

1. NNI's authority to hire and fire;

2. NNI's day-to-day supervision of a Plaintiff;

3. whether NNI furnished the equipment a Plaintiff used and where they worked;

36

4.     whether NNI possessed and had responsibility over a Plaintiff's employment records, including payroll, insurance, and taxes;

5.     the length of time a Plaintiff worked at NNI;

6.     whether NNI provided formal or informal training to a Plaintiff;

7.     whether a Plaintiff's duties were akin to a regular employee's duties;

8.     whether a Plaintiff was assigned solely to the NNI; and

9.     whether a Plaintiff and NNI intended to enter into an employment relationship.[31]

Consideration of all the circumstances surrounding the work relationship is essential. While no one factor is determinative, NNI's control over these Plaintiffs is the principal guidepost in the analysis, and three factors are of primary importance: to what extent NNI supervised the employee's day-to-day activities, where and how the work took place, whether NNI, the staffing agency, or both, had the power to hire and fire the employee.[32]

---

[31] *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 414-15 (4th Cir. 2015)
[32] *Id.*

## COUNT I

INSTRUCTION NO. 26
### Hostile Work Environment

Question 1 on the verdict form prepared by the Court asks you to consider each Plaintiff's claims of hostile work environment based on their race, African American.

Each Plaintiff has claims under federal law, which makes it unlawful for an employer to intentionally discriminate against any individual because of their race with respect to his compensation, terms, conditions, or privileges of employment. Because an employee's workplace environment is one of the terms, conditions, or privileges of employment, federal law creates a cause of action for employees forced to work in a hostile workplace based on race, including a workplace where racial harassment occurs.[33]

A hostile work environment is one or more separate acts that collectively constitute one unlawful employment practice.[34] Several different people can contribute to a single hostile work environment. In other words, a Plaintiff may prove their claim based on the discriminatory conduct of one or more coworkers or supervisors.

Each Plaintiff alleges that NNI created a hostile work environment for each of them in a number of different ways. While not all the Plaintiffs had the same experience, some of the ways that Plaintiffs contend that NNI created a hostile work environment is through the frequent use of racial slurs and racially offensive conduct by both white coworkers and supervisors. Several Plaintiffs allege that they were called or heard other African American employees called or referred to as "n****r" and "n***a," and "boy;" heard racist jokes told to and in front them,

---

[33] *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993).
[34] *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 221 (4th Cir. 2016).

observed a white worker freely wearing a tee shirt with racist imagery; frequently saw racist graffiti in the bathrooms, and at times on their belongings; saw and heard of nooses hung in the workplace; and regularly saw confederate flags displayed on vehicles, tool boxes, clothing and hats. In addition, and at times concurrently to this racial treatment, several Plaintiffs contend they were exposed to severe double standards as to their expectations as to worker performance and the manner in which workers were supervised. For example, several Plaintiffs contend that Caucasian supervisors excessively scrutinized their work, constantly looked over their shoulders; regularly chastised them for their performance; followed them to the bathroom or timed in their bathroom usage; and disallowed African Americans to take breaks, congregate, or talk to each other. Several Plaintiffs and other African Americans contend they were banned from using a conference room for lunch while a Caucasian worker was permitted to continue doing so. Some Plaintiffs argue that this treatment was often accompanied by actual or threatened discipline, including termination. Plaintiffs contend that Caucasian workers were not treated the way that African Americans were. In comparison to Caucasian workers, Plaintiffs contend that they were treated in a way that was designed to make their experience at NNI demeaning and degrading.

To prevail on their claims for a hostile work environment based on race, each Plaintiff must prove four essential elements by a preponderance of the evidence. With respect to Question 1 on the verdict form that I will give you later, you are focused on the first three of the four elements, as follows:

1.  Each Plaintiff experienced unwelcome conduct;

2.  The conduct each Plaintiff experienced was because they are African American;

3.      The conduct was sufficiently severe or pervasive to alter the conditions of a Plaintiff's employment and create an abusive working environment.[35]

If you find that any or all Plaintiffs have established by a preponderance of the evidence the three elements described above, then it would be your duty to answer "Yes" to Question 1 on the verdict form for any such Plaintiff. If, on the other hand, you fail to so find, then it would be your duty to answer "No" to Question 1 on the verdict form for that Plaintiff.

I will now explain to you the meaning of the first three elements.

---

[35] *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir. 2001).

INSTRUCTION NO. 27
**Unwelcome Conduct – Defined**

With regard to the first element, "unwelcome conduct," whether the conduct was unwelcome is judged solely from a Plaintiff's point of view.[36]  Whether a given Plaintiff regarded conduct as undesirable may be proved in a variety of ways, including that a Plaintiff complained to the employer about some of the conduct, that a Plaintiff objected to the conduct, or that a Plaintiff discussed the conduct with others.[37] However, a Plaintiff need not complain about the conduct or voice any objection to the conduct to establish that she or he regarded it as undesirable.[38] A Plaintiff may prove that harassment was unwelcome solely through his or her testimony that they regarded it as such.[39] Moreover, certain conduct may be considered unwelcome by its very nature. For example, when an employee is personally subjected to derisive behavior aimed at their race, it is very likely unwelcome.[40]

---

[36]*Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) (stating the first element follows a subjective standard while the rest are objective).

[37] *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008).

[38] *See Sunbelt Rentals, Inc.*, 521 F.3d at 314.

[39] *See generally Hoyle v. Freightliner, LLC*, 650 F.3d 321, 333 (4th Cir. 2011) ("[O]nly a contrary credibility determination . . . could lead to a contrary finding as to the subjective prong of the applicable test.").

[40] *See Sunbelt Rentals, Inc.*, 521 F.3d at 314 ("[I]t is difficult to see how any employee would welcome derisive behavior directed at his faith."); *Shields v. Federal Exp. Corp.*, 120 Fed. Appx. 956, 961 (4th Cir. 2005) ("Of course, whether [the racial] slur was highly offensive, unwelcome, and racially motivated is not the issue--clearly, it was.").

INSTRUCTION NO. 28

**<u>Because of Race</u>**

With respect to the second element, a Plaintiff is discriminated against "because of" their race if they are subjected to harassing conduct that is motivated at least in part by the fact that they are African American.[41] Plaintiffs can prove they were harassed because of their race if a harasser's conduct was motivated, at least in part, by their race. In other words, their race need not be the sole reason for the offending conduct. Even if other reasons motivated the harasser's conduct, such as a Plaintiff's behavior, performance, disposition, or personality, so long as the harasser's conduct was also motivated by a Plaintiff's race, the "because of" element will have been met.[42] Similarly, an employer may not shield itself from liability by contending that all employees, no matter their race, are subjected to harassment.[43] So long as some of the employees were exposed to harassment at least in part because of their race, those employees will have met the "because of" element. [44] You must make this determination by evaluating the conduct under the totality of the circumstances framework, in context, and not in isolation.

In determining whether a Plaintiff was a target of harassment because of their race, you should of course look to whether they, or other African Americans, were targets of race-specific

---

[41] *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008); *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987).

[42] *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1743 (2020); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 226 (4th Cir. 2016).

[43] *Sunbelt Rentals, Inc.*, 521 F.3d 306 at 317 ("Although similar pranks were played on other Sunbelt employees, there is evidence suggesting that Ingram suffered such harassment more often than others and more likely because of his religion.").

[44] *Bostock,* 140 S. Ct. at 1744.

hostility or derogatory terms.[45] A racial slur is clearly "because of" race.[46] Conduct does not have to be explicitly racial to meet the second element, however,[47] and the employee engaging in the conduct need not intend to harm a Plaintiff or other employee, so long as the treatment is partially a result of race, this element will have been met. You may conclude that conduct was because of race if, as an example only, a Plaintiff or other African Americans experienced the offending conduct more frequently than Caucasian employees,[48] if the individual who engaged in the offending conduct made racial comments on other occasions,[49] or if the offending individuals lacked respect for the fact that their conduct was offensive to a Plaintiff or other African Americans.[50] For example, "[h]ostile conduct directed toward a plaintiff that might of itself be interpreted as isolated or unrelated to [race] might look different in light of evidence that a number of [African Americans] experienced similar treatment.[51]

Further, for conduct to be because of race does not require that the offending conduct come from an individual of the opposite race as Plaintiffs.[52] African Americans may be harassed because of their race by other African Americans.[53]

---

[45] *Ocheltree v. Scollon Prods.,* 335 F.3d 325, 331-32 (4th Cir. 2003).

[46] *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 242 (4th Cir. 2000); *Shields v. Federal Exp. Corp.*, 120 Fed. Appx. 956, 961 (4th Cir. 2005) ("Of course, whether [the racial] slur was highly offensive, unwelcome, and racially motivated is not the issue--clearly, it was.").

[47] *Sunbelt Rentals, Inc.,* 521 F.3d at 317; *Bostock,* 140 S. Ct. at 1743; *Guessous,* 828 F.3d at 226.

[48] *Sunbelt Rentals, Inc.,* 521 at 318 ("In light of the extensive, explicitly religious harassment by the same coworkers, a reasonable jury could infer that other harassing incidents were also motivated by a disdain for Ingram's faith."); *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 332 (4th Cir. 2011); *Brand v. Comcast Corp.*, 302 F.R.D. 201, 220 (N.D. Ill. 2014).

[49] *Sunbelt Rentals, Inc.,* 521 F.3d at 318.

[50] *Id.* at 314.

[51] *Ziskie v. Mineta,* 547 F.3d 220, 225 (4th Cir. 2008)

[52] *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78, 80 (1998).

[53] *Id.; Bostock,* 140 S. Ct. at 1743.

If you find that the conduct that a Plaintiff deemed offensive was directed at them at least in part because they are African American, then any such Plaintiff has satisfied the second element.

INSTRUCTION NO. 29

**Severe or Pervasive**

As to the third element, each Plaintiff must prove that the harassment was either sufficiently severe or pervasive to interfere with their work performance and created an intimidating, hostile, or offensive work environment.[54] There are both subjective and objective components to this element.[55]

With respect to the subjective component, each Plaintiff must demonstrate that they perceived their workplace to be hostile or abusive. They need not show that they suffered psychological injury; rather, they must only demonstrate that they perceived their workplace environment as hostile or abusive.[56] Plaintiffs are not required to offer additional evidence of subjective offense than what is required under the first prong, unwelcomeness.[57] In other words, Plaintiffs may rely on the same evidence to prove unwelcomeness to prove subjective offense.

With respect to the objective component, you must determine whether a Plaintiff's perception of his workplace as hostile or abusive was objectively reasonable.[58] That is, you must look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly sensitive person. Nor can you view the evidence from the perspective of someone who

---

[54]*Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 496 (4th Cir. 2015).

[55] *Ocheltree v. Scollon Prods.,* 335 F.3d 325, 331-32 (4th Cir. 2003) (citing *Harris v. Forklift Sys.,* 510 U.S. 17, 21-22 (1993)).

[56]*Harris*, 510 U.S. at 22.

[57] *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (holding that employer "could not" challenge subjective offense when plaintiff complained about harassment on several occasions, requested a transfer because of it, stated that he was "tired" of the harassment and the workplace was "unhealthy," protested the harassment when it occurred, took the harassment personally, and the harassment aimed directly at plaintiff made it "difficult to see how any employee would welcome" the behavior.).

[58]*Harris*, 510 U.S. at 22.

is never offended. Rather, the alleged harassing behavior must be such that a reasonable person in the same or similar circumstances as Plaintiffs would find the conduct offensive.[59]

You should consider the frequency of the conduct; its severity; whether it was physically threatening or humiliating, whether the conduct was repeated or a single incident, whether the conduct was by a supervisor, whether others joined in the conduct, whether the conduct was directed at more than one person, the nature and context of the conduct, or whether it unreasonably interfered with Plaintiffs' work performance.[60] The totality of the circumstances includes not only conduct directed at a Plaintiff, but also conduct directed at other African Americans.[61] Accordingly, if the offending conduct was directed at other African American employees, even if a Plaintiff did not witness the conduct, then you must also consider that evidence in evaluating the objective offensiveness of Plaintiffs' environment. The totality of the circumstances also includes conduct that may not be racial on its face, but is motivated, at least part, by a general hostility towards African Americans.[62]

---

[59] *Oncale*, 523 U.S. at 81.

[60] *Harris,* 510 U.S. at 23.

[61] *Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001) (rejecting the contention that only conduct directed at the plaintiff could be considered in evaluating a hostile work environment claim); *see also EEOC v. Fairbrook Medical Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010); J*ennings v. University of North Carolina*, 482 F.3d 686 (4th Cir. 2007) (en banc) (noting that in reviewing hostile environment cases "[a]ll the circumstances are examined . . . [and] [e]vidence of a general atmosphere of hostility toward those of the plaintiff's gender is considered in the examination of all the circumstances").

[62] *See, e.g., Ziskie v. Mineta*, 547 F.3d 220, 222 (4th Cir. 2008) (contributing to the severity and pervasiveness of the plaintiff's sexually hostile work environment was "[p]rofanity and other crude language and behavior, such as belching,. . . male controllers often refer[ing] to pilots as "dick head pilot[s] . . . a co-worker[s] call[ing] a supervisor a "stupidvisor"; another t[elling] a female supervisor to "fuck off[,]" [and m]ale controllers f[i]nding it amusing to intentionally pass gas in the presence of other employees, including Ziskie.").

There is no mathematically precise test to determine whether the offending conduct was severe or pervasive. It need not be both.[63] Plaintiffs must demonstrate either that one or more incidents of harassment was or were very severe or that a series of incidents taken together altered the conditions of their working environment.[64]

Regarding severity, even a single isolated incident of the offending conduct may be sufficient to support a claim of a hostile work environment if it is very serious—that is, if the single incident, by itself, transformed the workplace into a hostile or abusive environment, for example, by use of a racial slur.[65]  There is no requirement that the harassment be physically threatening; rather, severity may be found where the conduct is humiliating or demeaning.[66]

In considering the frequency of the offending conduct, you must look to whether a Plaintiff showed that the conduct was more than sporadic or occasional.[67] In evaluating the pervasiveness of harassment, you must evaluate how often the harassment occurred and view the conduct in light of its cumulative effect on Plaintiffs.[68] You may consider the overall hostility in the workplace to determine whether a Plaintiff experienced pervasive harassment.[69] In

---

[63] *Whitten v. Fred's, Inc*., 601 F.3d 231, 243 (4th Cir. 2010).

[64] *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 496 (4th Cir. 2015).

[65] *Pryor*, 791 F.3d at 496; *Spriggs,* 242 F.3d at 185.

[66] *Sunbelt Rentals, Inc.,* 521 F.3d at 318.

[67] *Ocheltree*, 335 F.3d at 333.

[68] *Zidan v. Maryland*, 2012 U.S. Dist. LEXIS 99295, 24-25 (D. Md. 2012)

[69] *Jennings v. Univ. of N.C., 482 F.3d 686, 694 (4th Cir. 2007) (en banc); Spriggs,* F.3d at 184; *McGinest v. GTE Service Corp*. 360 F. 3d 1103, 1117-18 (9th Cir. 2004) ("[I]f racial hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff.").

determining pervasiveness, you may consider evidence of harassment directed at other African American employees—even if a Plaintiff did not witness it.[70]

_____

[70] *Tawwaab v. Va. Linen Serv.*, 729 F. Supp. 2D 757, 778 (D. Md. 2010) ("[I]t is firmly established law that a hostile work environment may be supported by incidents of harassment that were witnessed by but not directed at a plaintiff."); *Spriggs*, 242 F.3d 179 (4th Cir. 2001) (rejecting the contention that only conduct directed at the plaintiff could be considered in evaluating a hostile work environment claim); *Rodgers v. W.-Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993) ("[A] court may consider . . . the lexicon of obscenity that pervaded the environment of the workplace both before and after the plaintiff's introduction into its environs[.]").

## INSTRUCTION NO. 30
## **Me Too Evidence**

In this case, several Plaintiffs contend that they witnessed or learned of racial harassment that other African American employees at NNI experienced. This type of evidence is sometimes called "me too" evidence. Plaintiffs may use "me too" evidence to prove that they experienced a hostile work environment.[71]

You may consider conduct that was not directed at Plaintiffs, but of which they were aware or learned of, to decide whether the harassment against any or all the Plaintiffs was because of race,[72] whether the harassment against Plaintiffs was severe or pervasive,[73] whether Plaintiffs are credible,[74] whether the fact that another employee was the object of a hostile

---

[71] *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) ("[T]he contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor."); *Tawwaab v. Va. Linen Serv*., 729 F. Supp. 2D 757, 778 (D. Md. 2010) ("[I]t is firmly established law that a hostile work environment may be supported by incidents of harassment that were witnessed by but not directed at a plaintiff."); *Jennings v. Univ. of N.C.*, 482 F.3d 686, 694 (4th Cir. 2007) (en banc); *Rodgers v. W.-Southern Life Ins. Co*., 12 F.3d 668, 674 (7th Cir. 1993) ("[A] court may consider . . . the lexicon of obscenity that pervaded the environment of the workplace both before and after the plaintiff's introduction into its environs[.]").

[72] *Ocheltree v. Scollon Prods*., 335 F.3d 325, 331-32 (4th Cir. 2003); *King v. McMillan*, 594 F.3d 301 (4th Cir. 2010) (citing *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008); *Bland v. Fairfax Cty., Va*., 2011 WL 2490995, at *2, 1:10CV1030 JCC/JFA, (E.D. Va. June 20, 2011).

[73] *Tawwaab*, 729 F. Supp. 2D at 778; *Spriggs*, 242 F.3d at 184; *King*, 594 F.3d 301 (4th Cir. 2010) ("[T]estimony from other employees describing their own experiences of harassment by the defendant is often relevant to a plaintiffs hostile work environment claim.") (citing *Fox v. CMC,* 247 F.3d 169, 179 (4th Cir. 2001); *See also* Bland v. Fairfax Cty., No. 1:10cv1030 (JCC/JFA), 2011 U.S. Dist. LEXIS 66911, at *14 (E.D. Va. June 20, 2011) (testimony from others is relevant to show the effect on the listener or listeners' state of mind.").

[74] *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 317 (4th Cir. 2008); *Ziskie,* 547 F.3d at 225 ("Even though the plaintiff had not experienced the specific conduct at issue in the customers' testimony, their statements were nonetheless relevant because they supported plaintiff's claims.").

environment makes it more likely that Plaintiff, too, was the object of a hostile environment,[75] and whether harassment against other African Americans caused or contributed to Plaintiff's emotional distress.[76]

You may also consider harassment against other African Americans in determining NNI's intent;[77] whether the harassment was part of a pattern or practice;[78] whether NNI had notice of a hostile environment;[79] whether NNI took prompt and appropriate remedial action that was reasonably calculated to end the harassment;[80] to prove the ineffectiveness of NNI's antidiscrimination policy;[81] and in evaluating punitive damages;[82] which I will discuss later.

---

[75] *Sunbelt Rentals, Inc.*, 521 F.3d at 317.

[76] *See, e.g., Bland v. Fairfax Cty., No.* 1:10cv1030 (JCC/JFA), 2011 U.S. Dist. LEXIS 66911, at *14 (E.D. Va. June 20, 2011) (testimony from others is relevant to show the effect on the listener or listeners' state of mind.").

[77] *Goldsmith v. Bagby Elevator Co*., 513 F.3d 1261, 1287 (11th Cir. 2008) ("T]he "me too" evidence was admissible both because it was probative of the intent of the supervisors of Bagby Elevator to discriminate against Goldsmith and was relevant to Goldsmith's hostile work environment claim.").

[78] *Goldsmith*, 513 F.3d at 1285.

[79] *Tademy v. Union Pac. Corp*., 520 F.3d 1149, 1164-65 (10th Cir. 2008).

[80] *Id.* at 1166.

[81] *Adams v. Austal, U.S.A., L.L.C.,* 754 F.3d 1240, 1258 (11th Cir. 2014

[82] *See, e.g., Phillips v. Smalley Maint. Servs., Inc.,* 711 F.2d 1524, 1532 (11th Cir. 1983 ("This evidence was properly admitted under Fed. R. Evid. 404(b) to prove appellant's "motive . . . intent . . . [or] plan. . . .").

INSTRUCTION NO. 31

**Conduct Imputable to Employer – Knowledge and Constructive Knowledge**

If you answer "Yes" in response to Question 1 on the Verdict Form finding that any or all Plaintiffs experienced a hostile work environment, then you must answer Question 2 to determine if NNI is legally responsible for the hostile work environment.

There are different ways for you to find that NNI is legally responsible. An employer will always be legally responsible for a hostile environment if you find that it was negligent concerning racial harassment.[83] That means if you find that NNI (1) knew or should have known about the hostile environment that a Plaintiff experienced—whether that environment was created in whole or in part by co-workers or by supervisors (or by both)—and that NNI (2) failed to take adequate remedial measures, then NNI is legally responsible for the hostile work environment and you must answer "Yes" to Question 2.[84]

Several Plaintiffs allege they were exposed to a racially hostile work environment caused by both coworkers and supervisors' conduct. Plaintiffs may always prove that Defendant was negligent as to Supervisor and/or coworker harassment. [85] Where Defendant knew or should have

---

[83] *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2452 (2013) (The employer will "always be liable when its negligence leads to the creation or continuation of a hostile work environment.").
[84] *Id.*
[85] *Id. see also, e.g.*, *Ocheltree v. Scollon Products, Inc.*, 335 F.3d 325, 334 (4th Cir. 2003) (where coworkers and supervisor were alleged to have engaged in harassment, the Court, sitting en banc limited its analysis to a negligence theory); *Sandoval v. American Building Maintenance Industries, Inc.*, 578 F.3d 787, 800 (8th Cir. 2009) (analyzing harassment claims against a supervisor under the negligence standard); *Phelan v. Cook County*, 463 F.3d 773, 783 (7th Cir. 2006)(accord); *Sharp v. City of Houston*, 164 F.3d 923, 928-29 (5th Cir. 1999) (in a case tried before Ellerth and Faragher were decided, but appealed afterward, where the jury was instructed only on the negligence theory, even though the harasser was the top manager in the plaintiff's unit, Fifth Circuit noted the negligence standard "was not disturbed" by either Ellerth or Faragher); *Davis v. Lakeside Motor Co.*, 2014 U.S. Dist. LEXIS 162478, at *16-18 (N.D. Ind.

known of this harassment, and failed to take appropriate corrective action, you must hold Defendant liable.

Plaintiffs may also prove Defendant is strictly liable for supervisor harassment. This is called vicarious liability. It is an additional basis for holding Defendant liable, but for supervisor harassment only.[86]

You must find that NNI knew of racial harassment if it was observed by or sufficient information concerning racial harassment was communicated to a person who had the authority to receive, address, or report the complaint, even if that person did not do so.  For example, you must find that NNI knew of the hostile environment under one or more of the following circumstances:

1.    The harassment was reported through any of the avenues or to any individuals listed in NNI's policy or policies concerning discrimination or conduct violations;[87]

_____

Nov. 20, 2014) ("Negligence sets a minimum standard for employer liability under Title VII . . . . Thus, even though Plaintiff alleged that Mr. Nichols was his supervisor, he is every bit as entitled to pursue a negligence theory as he is a vicarious liability theory[.]"); *Henderson v. Montgomery Cnty.*, 213 F. Supp. 2d 1262, 1275 n.13 (D. Kan. 2002) ("The affirmative defense set forth in Faragher and Ellerth is not available to an employer when a plaintiff seeks to hold that employer liable under a negligence theory.").

[86] *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998).

[87] *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003) ("When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, actual notice is established."); *Young v. Bayer Corp.*, 123 F.3d 672, 675 (7th Cir. 1997) ("[D]efendant argues absurdly, in the teeth of its own policies as well as of good sense" that it did not have actual notice when it authorized workers to complain to their department heads, which plaintiff did.); *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1364 (11th Cir. 1999) ("This inquiry is made easy by the fact that Sundor's own promulgated sexual harassment policy clearly specified the steps a victimized employee should take to alert the employer of harassment. . . . With this policy, Sundor itself answered the question of when it would be deemed to have notice of the

2.    The harassment was reported to a person who is not listed in NNI's policies but who is reasonably expected to receive, address, or otherwise refer the complaint to the appropriate channel to address the harassment;[88] or

3.    The harassment was observed or witnessed by a person who has the authority to receive, address, or otherwise refer or report harassment to the appropriate channel.[89]

An employee who reports harassment need not use "magic words" to put an employer on notice of hostile work environment. In other words, an employee does not need to complain specifically of "racial harassment" or "discrimination."[90] The employee need only provide sufficient information of the offending conduct so that an employer may adequately respond to the conduct.

---

harassment sufficient to obligate it or its agents to take prompt and appropriate remedial measures."); *West v. Tyson Foods*, 374 F. App'x 624, 634 (6th Cir. 2010) (holding defendant had actual notice when plaintiff complained to "one of the persons through whom an employee could report sexual harassment under Tyson's policy."); *Franklin v. King Lincoln-Mercury-Suzuki, Inc.*, 51 F. Supp. 2d 661, 665 (D. Md. 1999) ("Courts have held that where an employer sets up a 'point person' to accept complaints, 'this person becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case.'

[88] *Sandoval v. Am. Bldg. Maint. Indus.*, 578 F.3d 787, 802 (8th Cir. 2009) ("An employer has actual notice of harassment when sufficient information either comes to the attention of someone . . . who can reasonably be expected to report or refer a complaint to someone who can put an end to it.");

[89] *Smelter v. S. Home Care Servs.*, 904 F.3d 1276, 1287 (11th Cir. 2018) (holding defendant had actual notice when plaintiff testified that the branch manager laughed at some of the racial comments the harasser made, as the branch manager "could not have found the racist remarks humorous if she had not overheard them.")

[90] *Okoli v. City Of Baltimore*, 648 F.3d 216, 224, n.8 (4th Cir. 2011) (complaints need not include 'magic words' such as 'sex' or 'sexual' to be effective); *Mazloum v. District of Columbia*, 442 F. Supp. 2d 1, 13 (D.C. 2006) ("To alert the defendant that he is opposing discrimination, the "[plaintiff] need not . . . employ any `magic words,' such as `discrimination,' for the communication of a complaint of unlawful discrimination . . . may be inferred or implied from the surrounding facts"); *Olson v. Lowe's Home Ctrs*. Inc.,130 Fed. Appx. 380, 391 n. 22 (11th Cir.2005) (unpublished) ('There is no magic word requirement. That is, the employee need not label the events 'sexual harassment' in order to place an employer on notice of the offending behavior'").

In addition to actual knowledge, a Plaintiff may establish that NNI should have known of a hostile environment. Federal antidiscrimination laws require an employer to make reasonable efforts to know about what is going on in the workplace.[91] An employer cannot avoid liability by adopting a "see no evil, hear no evil" approach to its workplace.[92] As such, knowledge of harassment will be charged to an employer if a reasonable employer intent on complying with antidiscrimination laws would have known about the harassment.[93] In other words, even if human resources, a manager, or a supervisor, for example, did not witness the harassment or receive an complaint of harassment, you must still find that NNI is liable if the nature of the harassment was such that NNI _should have known_ about it.

NNI should have known about the harassment if 1) an employee provided it with enough information to raise a probability of racial harassment in the mind of a reasonable employer, or if 2) the harassment was so pervasive or open and obvious that any reasonable employer who exercised reasonable care would have known of it.[94] In determining whether NNI should have known about the harassment against Plaintiffs, you must consider the totality of the circumstances. You may consider evidence of various factors, including but not limited to: whether a Plaintiff—or other employees at NNI—complained of the racial harassment or similar conduct;[95] how many times NNI received complaints of harassment or similar conduct;[96] NNI's

---

[91] _Farley v. American Cast Iron Pipe Co.,_ 115 F.3d 1548, 1554 (11th Cir. 1997).

[92] _Freeman v. Dal-Tile Corp.,_ 750 F.3d 413, 422-23 (4th Cir. 2014).

[93]_Ocheltree_, 335 F.3d at 334 (internal quotation marks and citation omitted); _Spicer v. Virginia_, 66 F.3d 705, 710 (4th Cir. 1995).

[94] _See EEOC v. Greenbriar Pontiac- Oldsmobile-GMC Trucks-KIA_, Inc., 314 F. Supp. 2d 581, 587 (E.D. Va. 2004); _Collier v. Ram Partners, Inc._, 159 F. Supp. 2d 889, 900-01 (D. Md. 2001); _Gaskin_, 2005 U.S. Dist. LEXIS 37079, at *22 (E.D. Va., 2005).

[95] _Tademy v. Union Pac. Corp.,_ 520 F.3d 1149, 1164-65 (10th Cir. 2008).

[96] _See id._

responses to any such complaints;[97] whether the harassment occurred frequently, over a long period of time, or out in the open in plain sight or ear-shot of supervisors.[98] Moreover, an employer may be charged with constructive knowledge of harassment when it fails to provide reasonable procedures for victims to register complaints.[99]

---

[97] *See id.*

[98] *See EEOC v. Greenbriar Pontiac- Oldsmobile-GMC Trucks-KIA, Inc*., 314 F. Supp. 2d 581, 587 (E.D. Va. 2004).

[99] *Ocheltree,* 335 F.3d at 334.

INSTRUCTION NO. 32

**Prompt and Adequate Action**

If you find that any or all Plaintiffs have established by a preponderance of the evidence that NNI knew or should have known about the hostile work environment they experienced, then you must decide whether NNI failed to take prompt and adequate action to stop the harassing or offensive conduct against any or all Plaintiffs. In making this determination, you must look to whether NNI took prompt and adequate remedial action upon the <u>first</u> instance that it knew or should have known about harassment.[100]

"Prompt remedial action" is conduct by the employer that is reasonably calculated to stop the harassment and remedy the situation.[101] Whether the employer's actions were prompt and adequate depends on the totality of facts and circumstances. There is no "exhaustive list" or "particular combination" of remedial measures or steps that an employer need employ in order to avoid liability.[102] You may look at, among other things, whether NNI took any action at all when it knew or should have known about harassment in the workplace,[103] the effectiveness of

---

[100]EEOC v. Xerxes Corp., 639 F.3d 658, 669 (4th Cir. 2011) ("Once the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment.") (quoting  *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008)); *see also Mikels v. City of Durham*, 183 F.3d 323, 329 (4th Cir. 1999) ("[O]ur precedents ha[ve] long defined the basis for imposing liability . . . as being that after having acquired actual or constructive knowledge of the allegedly harassing conduct, the employer had taken 'no prompt and adequate remedial action to correct it.'").

[101] *Sunbelt Rentals, Inc.*, 521 F.3d at 319.

[102]*Xerxes Corp.*, 639 F.3d, at 670.

[103] *Amirmokri v. Balt. Gas & Elec. Co*., 60 F.3d 1126, 1131 (4th Cir. 1995) (holding failure to investigate complaint constituted of failure of employer's requirement to take prompt remedial action).

any actions taken,[104] the promptness of any actions taken,[105] any discipline or lack thereof that NNI meted out to employees who engaged in racial harassment,[106] and whether NNI failed to prevent harassment from taking place, including whether NNI monitored the workplace and provide a system for registering complaints, discouraged complaints from being filed or had an ineffective policy against racial discrimination or harassment.[107]

Accordingly, if you find that NNI took no action when it *first* knew or should have known about the harassment against any or all Plaintiffs, then mark "Yes" on your verdict sheet as to Question 2 for any such Plaintiff.

If you find that NNI took some action, but that that action did not end the harassment about which a Plaintiff complained, then you must determine whether its action was nevertheless reasonable. NNI is obligated to respond to any repeat conduct, and whether its next response is reasonable may depend upon whether it progressively stiffens its discipline or hopes that no response, or the same response as before, will be effective. Repeat conduct by a harasser may show unreasonableness of NNI's prior responses.[108]

If you determine that NNI's responses to conduct about which it knew or should have known was not reasonably calculated to end the harassment, then you must find that the offending conduct should be charged to NNI, and mark "Yes" on your verdict sheet as to Question 2 for any such Plaintiff.

---

[104] *Sunbelt Rentals, Inc.,* 521 F.3d at 320; *Waltman v. Int'l Paper Co.*, 875 F.2d 486, 479 (5th Cir. 1989).
[105] A*mirmokri*, 60 F.3d at 1131.
[106] *Sunbelt Rentals, Inc.*, 521 F.3d at 320.
[107] *Vance v. Ball State Univ*, 570 U.S. 421, 449 (2013).
[108] *Id.*

However, if you determine that NNI's responses were prompt <u>and</u> adequate, then mark

"No" on your verdict sheet as to Question 2 for any such Plaintiff.

INSTRUCTION NO. 33

**Conduct Imputable to Employer — Supervisor Harassment**

A moment ago, I described how you should mark "Yes" as to Question 2 if NNI was legally responsible for hostile work environment—that is, whether NNI knew or should have known about the hostile environment but failed to take prompt and adequate remedial measures to prevent and correct the harassment. Under a negligence framework, the status or job title of the NNI employee who engaged in the harassment does not matter.[109] In other words, irrespective of whether the hostile environment was caused by a coworker or supervisor—or both—NNI is legally responsible if it knew or should have known about harassing conduct but failed to take prompt remedial action.

In addition to what I just described, you may alternatively or also find that NNI is legally responsible for a hostile environment under a different framework called vicarious liability. Under this framework, NNI is automatically responsible if a Plaintiff proves he or she was exposed to a hostile work environment created by a supervisor.[110] Under this framework, Plaintiffs are neither required to prove that NNI knew or should have known, nor that NNI failed to take prompt remedial action.[111] The only way that NNI may avoid liability when a supervisor causes a hostile environment is if NNI proves by a preponderance of the evidence each of the following:

---

[109] *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2452 (2013) (The employer will "always be liable when its negligence leads to the creation or continuation of a hostile work environment.").

[110] *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998).

[111] *Id.*

59

1.    The hostile work environment did not result in a tangible employment action; and

2.    NNI exercised reasonable care to prevent racial harassment in the workplace, and also exercised reasonable care to promptly correct the harassing behavior that did occur; and

3.    That a Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by NNI.[112]

Unlike for the other issues in this case, NNI bears the burden of persuasion on these three elements, and it must prove all three by a preponderance of the evidence. I will now explain who is considered a "supervisor" and define the preceding three elements.

Regardless of an employee's title, he or she is considered a "supervisor" when the employer has given that employee authority to take tangible employment actions.[113] The requisite authority need not be actual, however, as an individual without actual authority but with significant input on employment decisions may also be considered a "supervisor."[114] Moreover, an employee who does not have actual authority may be considered a "supervisor" if a Plaintiff reasonably believed that employee had the power to take tangible employment actions because, for example, the chains of command are unclear, the harasser may be considered a supervisor.[115]

With respect to the first element, a "tangible employment action" means a significant change in employment status, such as hiring, firing, layoff, failure to promote, reassignment with

---

[112] *See Burlington Indus. v. Ellerth,* 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998); *Vance v. Ball State Univ.,* 570 U.S. 421, 424 (2013).

[113] *Vance v. Ball State Univ.,* 570 U.S. at 424.

[114] See *Vance*, 570 U.S. at 446-47.

[115] U.S. Equal Employment Opportunity Commission, Enforcement Guidance: Vicarious Liability for Unlawful Harassment by Supervisors III(B), https://www.eeoc.gov/laws/guidance/enforcement-guidance-vicarious-liability-unlawful-harassment-supervisors#_ftn25; *Llampallas v. Mini-Circuits, Lab., Inc*., 163 F.3d 1236, 1247 n.20 (11th Cir. 1998).

significantly different responsibilities, or a decision causing a significant change in wages or benefits. [116] A tangible employment action is not limited to monetary losses of benefits or wages, but it must be more than a mere inconvenience or minor alteration of job responsibility.[117] If you find that the first consideration, tangible employment action, is met, the inquiry ends and NNI is legally responsible.[118]

With respect to the second element, NNI must prove by a preponderance of the evidence, as to each Plaintiff, that it exercised reasonable care to prevent and correct harassment in the workplace. To do so, NNI must prove that

1.     it had established an explicit and effective antidiscrimination policy;

2.     the policy was effectively communicated to its employees, including Plaintiffs.

3.     the policy provided a reasonable way for employees to make a complaint or otherwise report harassment; and

4.     reasonable steps were taken to correct the harassment if it was reported.[119]

An antidiscrimination policy standing alone does not satisfy the second element.[120] An employer must develop and distribute an effective and comprehensive anti-harassment policy, thoroughly disseminate the information and procedures contained to its employees, and demonstrate a commitment to adhering to this policy.[121] Where there is an ineffective or incomplete policy, the employer remains liable for supervisor harassment.[122] Relevant

---

[116] *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998).
[117] *Id.*
[118] *Brown v. Perry*, 184 F.3d 388, 394 (4th Cir. 1999).
[119] *Lacasse v. Didlake, Inc.*, 712 F. App'x 231, 238 (4th Cir. 2018).
[120] *White v. BFI Waste Servs., LLC*, 198 F. App'x 283, 286 (4th Cir. 2006).
[121] *Lacasse,* 712 F. App'x at 238.
[122] *Sunbelt Rentals*, 521 F.3d at 320.

considerations in determining the effectiveness of an antiharassment policy include, whether NNI distributed the policy and how;[123] whether the policy was well known to employees;[124] whether the employer provided training on the policy;[125] whether the policy contained reasonable and multiple complaint avenues that encouraged victims to report;[126] the employer's size and structure; [127]whether the employer took prompt and thorough investigative efforts upon learning of harassment;[128] and whether the situation improved for employees after they complained of harassment.[129]

      With respect to the third element, NNI must prove by a preponderance of the evidence that a Plaintiff failed to take advantage of available preventive or corrective opportunities. In other words, NNI must prove by a preponderance of the evidence that it made available reasonable preventative or corrective opportunities, such as reasonable complaint procedures but that a Plaintiff nonetheless did not take steps to use those opportunities or otherwise avoid the harm.[130]

---

[123] *Lacasse,* 712 F. App'x at 238.

[124] *Id. Farley v. American Cast Iron Pipe Co.,* 115 F.3d 1548, 1554 (11th Cir. 1997).

[125] *Lacasse,* 712 F. App'x at 238.

[126] *Watkins v. Prof'l Sec. Bureau, Ltd*., No. 98-2555, 1999 U.S. App. LEXIS 29841, at *15 (4th Cir. Nov. 15, 1999); *Lacasse*, 712 F. App'x at 238; *Madray v. Publix Supermarkets, Inc*., 208 F.3d 1290, 1298 (11th Cir. 2000).

[127] *Faragher*, 524 U.S. at 808-09.

[128] *Lacasse v. Didlake, Inc*., 712 F. App'x 231, 238 (4th Cir. 2018); *Crockett v. Mission Hosp., Inc*., 717 F.3d 348, 357 (4th Cir. 2013); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 245 (4th Cir. 2000).

[129] *Brown v. Perry*, 184 F.3d 388, 396 (4th Cir. 1999); *Sunbelt Rentals*, 521 F.3d at 320; Smith, 202 F.3d at 246.

[130] *See EEOC v. Xerxes Corp.,* 639 F.3d 658, 674 (4th Cir. 2011).

If you find that NNI failed to prove any or all three elements above as it relates to any or all Plaintiffs, you must find in favor of those Plaintiffs and answer "Yes" to Question 2 for any such Plaintiffs.

INSTRUCTION NO. 34

**<u>Compensatory Damages—Emotional Distress</u>**[131]

If you find in favor of any or all Plaintiffs on Count 1 (hostile work environment), you must decide the amount of compensatory damages. In other words, if you answered "Yes" to Questions 2 as to any or all Plaintiffs, then you must answer Question 3 for those Plaintiffs.[132]

Compensatory damages represent the amount of money that will reasonably and fairly compensate a Plaintiff for any injury you find was caused by NNI's unlawful conduct.  A prevailing Plaintiff is entitled to compensatory damages for the emotional pain and suffering, inconvenience, mental anguish, shock and discomfort, stress and loss of enjoyment of life that he has suffered or will suffer in the future because of NNI's conduct.

It is each Plaintiff's burden to prove by a preponderance of the evidence the amount of compensatory damages to which they are entitled. You should consider the following:

1.      The nature and extent of the injuries, whether physical, emotional, or financial; and

2.      Past emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life experienced.[133]

3.      Continued suffered emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life experienced

There is no fixed formula for placing a value on physical pain and mental suffering.  You

---

[131] Adapted from 11th Circuit Pattern Jury Instruction §4.7; *Kolstad v. ADA*, 527 U.S. 526, 534 (1999).

[132]*Kolstad v. ADA*, 527 U.S. 526, 534 (1999).

[133]*EEOC v. Carter Behavior Health Servs.*, No. 4:09-CV-122-F, 2011 U.S. Dist. LEXIS 129493, at *16 (E.D.N.C. Oct. 7, 2011).

will determine what is fair compensation by applying logic and common sense to the evidence. Thus, no evidence of the value of such intangible things as emotional pain and mental anguish has been or need be introduced. In other words, Plaintiffs are not required to offer any particular form of evidence to recover compensatory damages for emotional distress. You may award damages for emotional distress on the basis of a Plaintiff's testimony alone, or in addition to other evidence.[134] Your award must be fair and just. You may not award any damages based upon speculation or conjecture.[135] It is not value you are trying to determine, but an amount that will fairly compensate a Plaintiff for their claims of damage.

When deciding what injuries NNI may have caused, the law says that a defendant takes a plaintiff as he finds him. For example, some people are more susceptible to stress than others. Consequently, a particular event might have a different effect on us than it would on many other people.

In every lawsuit, there is a phase of the case called "discovery" in which the parties exchange evidence. In this case, discovery closed on June 29, 2016. The Court previously ruled that Plaintiffs may not offer evidence of harassment or discrimination that occurred after June 29, 2016. Plaintiffs Blow, Gordon, Joyner, Stewart, Valentine, Walker, and Waddell, Sr. continued to work at NNI after June 29, 2016. Damages for emotional distress include continuing pain and suffering, which may include emotional distress through the date of trial and beyond. When considering whether Plaintiffs Blow, Gordon, Joyner, Stewart, Valentine, Walker, and Waddell, Sr. experienced emotional distress following June 29, 2016, you should not

---

[134] *Price v. City of Charlotte*, 93 F.3d 1241, 1251 (4th Cir. 1996); *Bryant v. Aiken Reg'l Med. Ctrs, Inc*., 333 F.3d 536, 546-47 (4th Cir. 2003); *Dennis v. Columbia Colleton Med. Ctr, Inc*., 290 F.3d 639, 653 (4th Cir. 2002).
[135] *Sloane v. Equifax Info. Servs.,* 510 F.3d 495, 503 (4th Cir. 2007).

consider these Plaintiffs' failure to offer evidence of a hostile work environment following June 29, 1916, in evaluating the evidence of emotional distress which they offer.

If you find by a preponderance of the evidence the amount of emotional distress damages for any or all Plaintiffs caused by NNI on Count 1, hostile work environment, then it would be your duty to write that number in the blank space provided in Question 3 for any such Plaintiff.

If, on the other hand, you find that some or all Plaintiffs are not entitled to emotional distress damages, then it is your duty to write a nominal amount such as "One Dollar" in the blank space provided in Question 3 for any such Plaintiff. Plaintiffs are entitled to recover nominal damages even without proof of actual damages. Nominal damages consist of some trivial amount such as "One Dollar" in recognition of a technical injury to a Plaintiff.[136]

---

[136] *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996).

INSTRUCTION NO. 35

**Punitive Damages**

If you find in favor of any or all Plaintiffs on Count I, you must determine whether

punitive damages should be awarded, and if so, the amount of punitive damages those Plaintiffs

are entitled to recover.[137] You may, but are not required to, award punitive damages.  The

purposes of punitive damages are to punish the Defendant and to deter similar acts in the

future.[138]  Punitive damages may not be awarded to compensate Plaintiffs.

Each Plaintiff has the burden of proving by the preponderance of the evidence[139] that

punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages if you find that NNI engaged in a discriminatory

practice or discriminatory practices with malice or with reckless indifference to Plaintiffs'

federally protected rights.[140]  Conduct is malicious if it is accompanied by ill will, or spite, or if it

is for the purpose of injuring a Plaintiffs.[141] Conduct is in reckless disregard of Plaintiffs' rights

if, under the circumstances, it reflects complete indifference to Plaintiffs' safety or rights, or if

NNI acts in the face of a perceived risk that its actions would violate Plaintiffs' rights under

federal law.[142] In determining malice or reckless indifference of employers, consider (1)

evidence of the employer's attitude towards racial harassment; (2) direct statements by the

---

[137]*Kolstad v. ADA*, 527 U.S. 526, 534 (1999).

[138]  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519 (2003).

[139]*White v. Burlington Northern & Santa Fe Ry.*, 364 F.3d 789, 805 (6th Cir. 2004) *aff'd*, 548 U.S. 53 (2006).

[140]  *United States EEOC v. Consol Energy, Inc.,* 860 F.3d 131, 151 (4th Cir. 2017)

[141]  *Kolstad*, 527 U.S. at 548 n.* (citing *Smith v. Wade*, 461 U.S. 30, 37 n.6, 103 S. Ct. 1625, 1630 (1983)).

[142]  *Consol Energy, Inc.,* 860 F.3d at 151 (citing Kolstad, 527 U.S. at 536 (1999)).

employer about Plaintiff's rights or complaints; and (3) the egregiousness of the conduct at issue.[143] For example, you may find that NNI acted maliciously or recklessly indifferent to a Plaintiff's right's if NNI failed to follow its own policies regarding racial harassment in the workplace or failed to respond to a Plaintiff's complaint.[144]

If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes, but should not reflect bias, prejudice or sympathy toward any party.  In assessing the amount of any punitive damages, consider the degree of reprehensibility of NNI's conduct.[145]  Factors to consider include "whether

1.      the harm caused was physical as opposed to economic;

2.      the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others;

3.      the target of the conduct had financial vulnerability;

4.      the conduct involved repeated actions or was an isolated incident; and

5.      the harm was the result of intentional malice, trickery, or deceit, or mere accident."[146]

---

[143] *Harris v. L & L Wings,* 132 F.3d 978, 983 (4th Cir. 1997).
[144] *Id.*
[145] *Daugherty v. Owen Loan Servicing, LLC*, 701 Fed. App'x 246, 259 (4th Cir. July 26, 2017).
[146] *Id.*

**[IF EVIDENCE OF NET WORTH]** You may also consider the net worth of NNI in determining the amount of any award of punitive damages.  However, NNI bears the burden of proving its net worth to limit any award of punitive damages.[147]

Even if you find that there has been discrimination with malice or reckless indifference to any or all Plaintiffs' federal rights, those Plaintiffs may not recover punitive damages if NNI then proves by a preponderance of the evidence that (1) it made good-faith attempts to comply with the prohibition of racial harassment in the workplace by both adopting and implementing policies and procedures designed to prevent discrimination[148] and (2) that the individual(s) who discriminated against those Plaintiffs acted in a manner contrary to NNI's good-faith efforts to comply with Section 1981.[149]

Evidence of an effective anti-harassment policy is relevant in determining whether an employer adopted and implemented policies and procedures designed to prevent discrimination in the workplace.[150] However, any such anti-harassment policy and must be both reasonably designed and reasonably effectual, and implemented in good faith.[151]

To establish good faith, NNI must show that it had a policy against discrimination and that it made good faith efforts to implement the policy.[152]  The mere existence of an anti-

---

[147] *Thorne v. Wise,* No. 94-1473, 1995 U.S. App. LEXIS 2844, at *16 - *17 (4th Cir. Feb. 3, 1995); *Morris v. Bland*, No. 5:12-cv-3177-RMG, 2014 U.S. Dist. LEXIS 197528, 2014 WL 12637911, at *11 (D.S.C. Dec. 31, 2014), *aff'd*, No. 15-1115, 666 Fed. App'x 233 (4th Cir. Nov. 16, 2016).

[148] Kolstad v. ADA, 527 U.S. 526, 544, 119 S. Ct. 2118, 2129 (1999).

[149] *Id.*

[150] *Id.*

[151] *See* Harris v. L & L Wings, 132 F.3d 978, 983 (4th Cir. 1997).

[152] *Gallina v. Mintz*, 123 Fed. App'x 558, 564 n.9 (4th Cir. Feb. 2, 2005) ("We agree with other circuits that have held that it is the employer's burden to establish that it has engaged in good-faith efforts to comply with Title VII.") (citing *Zimmermann v. Associates First Capital*

harassment policy is not enough for NNI to avoid punitive damages. Evidence that a person in a supervisory or managerial capacity at NNI was not sincerely committed to enforcing such a policy undermines the existence of a company-wide policy.[153]

If you find that NNI has proved that it made good-faith efforts to comply with some or all Plaintiffs' federally protected rights and that the individuals who discriminated against those Plaintiffs acted in a manner contrary to NNI's good-faith efforts, those Plaintiffs are not entitled to punitive damages. If, on the other hand, NNI has failed to prove either of these elements as to any or all Plaintiffs, you may award those Plaintiffs punitive damages.

If you award punitive damages, then you must mark "yes" on your verdict sheet as to Question 4 for any such Plaintiff. You may award an amount which bears a rational relationship to the sum reasonably needed to punish NNI for its wrongful acts and to deter NNI and other employers from committing similar wrongful acts.[154] That amount should be written in the space provided on the verdict sheet as to Question 5.

If, on the other hand you do not award any amount of punitive damages, then you should mark "no" on your verdict sheet as to Question 4 for any such Plaintiff, and write "none" on the space provided as to the amount as to Question 5.

---

*Corp.*, 251 F.3d 376, 385 (2d Cir. 2001); *Romano v. U-Haul, Int'l*, 233 F.3d 655, 670 (1st Cir. 2000); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 516 (9th Cir. 2000); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir. 1999)).

[153] *Golson v. Green Tree Fin. Servicing Corp.*, 26 Fed. App'x 209, 214 (4th Cir. Jan. 10, 2002) (citing *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 446 (4th Cir.), cert. denied, 531 U.S. 822 (2000)).

[154] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519 (2003).

**COUNT II**

INSTRUCTION NO. 36

**Constructive Discharge**

Federal law creates a cause of action for employees who are forced to quit due to intolerable discriminatory conduct.[155] Such a forced resignation is called a "constructive discharge," and federal law treats the resignation as if the employee was actually fired by the employer.[156] Five Plaintiffs have claims for constructive discharge, in addition to their claims for a hostile work environment. Those are Plaintiffs Richard Bostic, Ernest Chesson, Lamar Holloman, Robert Robinson and David Swain. Count 2, Question 6, on the Verdict Forms for these Plaintiffs concerns their constructive discharge claims.

To prevail on a claim for constructive discharge, each Plaintiff must prove two essential elements by a preponderance of the evidence:

1.      he resigned, and

2.      the work environment was intolerable.[157]

Intolerability is judged from the perspective a reasonable employee in a Plaintiff's position.[158] A Plaintiff is not required to prove that NNI intended to cause them to resign,[159] and

---

[155] *Green v. Brennan*, 578 U.S. 1084, 136 S. Ct. 1769, 1776-77 (2016).
[156] *Id.* at 1777.
[157] *Id.*
[158] *Nnadozie v. Genesis Healthcare Corp*., 730 F. App'x 151, 162 (4th Cir. 2018).
[159] *Green v. Brennan*, 578 U.S. at 1084 (2016); *United States EEOC v. Consol Energy, Inc*., 860 F.3d 131, 143 (4th Cir. 2017); *Nnadozie v. Genesis Healthcare Corp*., 2018 U.S. App. LEXIS 9644, at *23-24 (4th Cir. April 17, 2018).

71

they are not required to resign at the moment that the work conditions become intolerable or immediately on the heels of an offensive incident.[160]

A Plaintiff may demonstrate intolerability by any number of the employer's actions or inactions, including for example: the cumulative effect of recurring harassment;[161] frequent or ongoing harassment;[162] increasingly hostile harassment;[163] inadequate responses to complaints, including failure to investigate or poorly conducted investigations;[164] failure to respond to or otherwise take action to remedy harassment;[165] severe harassment events;[166] pervasive harassment over a short period of time such that an employee would reasonably expect it to continue;[167] when the status of the harasser or circumstances of the harassment make it more egregious,[168] when the stress from harassment causes a plaintiff substantial personal harm,

---

[160] *Green v. Brennan*, 136 S. Ct. 1769 (2016).

[161] *Hopkins v. Shoe Show, Inc.,* 678 F. Supp. 1241, 1245 (S.D. W. Va. 1988) (holding hostile work environment was intolerable when plaintiff initially suffered sexual harassment that later turned to verbal criticism because she did not welcome the advances of her harasser); *United States EEOC v. Consol Energy, Inc*., 860 F.3d 131, 145 (4th Cir. 2017).

[162] *Evans v. Int'l Paper Co*., 936 F.3d 183, 193 (4th Cir. 2019) ("The more continuous the conduct, the more likely it will establish the required intolerability.").

[163] *Henderson v. Simmons Foods, Inc*., 217 F.3d 612, 617 (8th Cir. 2000).

[164] *Pa. State Police v. Suders,* 542 U.S. 129, 151, 124 S. Ct. 2342, 2357 (2004); *Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 617 (8th Cir. 2000).

[165] *See Shope v. Bd. of Supervisors*, 1993 U.S. App. LEXIS 33058, at *8-9 (4th Cir. Dec. 20, 1993) (holding hostile work environment was intolerable when despite plaintiff's complaints of "abusive and demeaning and intimidating" conduct, it continued); *Lloyd v. Riveredge Operating Co., LLC*, Civil Action No. GLR-20-3162, 2021 U.S. Dist. LEXIS 115528, at *13 (D. Md. June 21, 2021); *Henderson v. Simmons Foods, Inc*., 217 F.3d 612, 617 (8th Cir. 2000).

[166] *See Spriggs*, 242 F.3d 179, 185 (4th Cir. 2001) ("Far more than a 'mere offensive utterance,' the word 'nigger' is pure anathema to African-Americans.").

[167] *Gustafson v. Genesco, Inc*., 320 F. Supp. 3d 1032,1047 (S.D. Iowa June 8, 2018).

[168] *Rodgers v. Western Southern Life Ins. Co*., 12 F.3d 668, 677 (7th Cir. 1993) ("[T]he fact that the insults generating the racially hostile environment flowed from the mouth of a supervisor — indeed, the highest ranking employee in the Milwaukee office — persuades us that Rodgers encountered "aggravated" discrimination.").

including emotional and physical injuries;[169] employment actions that affect pay, promotion, and/or advancement;[170] transfers to different positions;[171] or changes to work hours or schedule.[172]

When you consider whether a Plaintiff resigned as a result of intolerable work conditions, you must evaluate all the evidence under the totality of the circumstances framework.[173]

If you find that any or all Plaintiffs have established by a preponderance of the evidence the two elements above, then it would be your duty to answer "Yes" to Question 6 on the Verdict Form for any such Plaintiff. If, on the other hand, you fail to so find, then it would be your duty to answer "No" to Question 6 on the Verdict Form for any such Plaintiff.

---

[169] *Amirmokri*, 60 F.3d at 1132-34 (4th Cir. 1995); Lloyd v. Riveredge Operating Co., LLC, Civil Action No. GLR-20-3162, 2021 U.S. Dist. LEXIS 115528, at *13 (D. Md. June 21, 2021).

[170] *See Suders*, 542 U.S. at 141-44; *Winbush v. Iowa by Glenwood State Hosp*., 66 F.3d 1471, 1485 (8th Cir. 1995)

[171] *See Suders*, 542 U.S. at 141-44; *Parrish v. Immanuel Med. Ctr.,* 92 F.3d 727, 732 (8th Cir. 1996)

[172] *See Suders*, 542 U.S. at 141-44; *Parrish,* 92 F.3d at 732.

[173] *Lloyd v. Riveredge Operating Co., LLC*, Civil Action No. GLR-20-3162, 2021 U.S. Dist. LEXIS 115528, at *12 (D. Md. June 21, 2021) (citing *Bodkin v. Town of Strasburg, Va.,* 386 F.App'x 411, 413 (4th Cir. 2010)).

INSTRUCTION NO. 37

**Compensatory Damages—Emotional Distress & Lost Wages**

If you find in favor of any Plaintiffs as to Count 2, constructive discharge, you are to determine the amount of damages any such Plaintiff is entitled to recover. As I have previously addressed the propriety of compensatory damages for emotional distress, I refer you to Count 1, above, for a discussion of the factors you should consider in determining the amount of damages, as the same applies to Plaintiffs' constructive discharge claims. However, any award of emotional distress damages to a Plaintiff should be separate from an emotional distress damages award you may have made for that Plaintiff as to Count I, hostile work environment. In other words, any emotional distress damages award for constructive discharge should be based on the hardship that a Plaintiff experienced as a result of being forced to resign, not for the underlying hostile work environment that caused their work conditions to become intolerable.

If you find by a preponderance of the evidence the amount of emotional distress damages for any or all Plaintiffs caused by NNI on Count 2, constructive discharge, then it would be your duty to write that number in the blank space provided in Question 7 for any such Plaintiff.

If, on the other hand, you find that some or all Plaintiffs are not entitled to emotional distress damages for constructive discharge, then it is your duty to write a nominal amount such as "One Dollar" in the blank space provided in Question 7 for any such Plaintiff.

Lost wages and benefits means the difference between the actual wages and benefits earned by Plaintiffs and the wages and benefits that, but for the constructive discharge, they would have earned or attained through the date of judgment at trial.[174]

---

[174] *Neel v. Mid-Atlantic of Fairfield, LLC*, No. SAG-10-cv-405, 2012 U.S. Dist. LEXIS 111939, at *18 (D. Md. Aug. 9, 2012); *Long v. Ringling Bros.-Barnum & Bailey Combined*

Plaintiffs' damages are to be reasonably determined from the evidence presented. Plaintiffs are not required to prove with mathematical certainty the extent of a financial injury to recover damages.[175] Thus, Plaintiffs should not be denied damages simply because they cannot be calculated with exactness or a high degree of mathematical certainty. However, an award of damages must be based on evidence which shows the amount of a Plaintiff's damages with reasonable certainty.[176]

In addition to emotional distress damages, Plaintiffs Bostic, Chesson, Holloman, Robinson, Swain seek damages for lost wages. If you find that any or all Plaintiffs experienced a constructive discharge, you must determine the amount of lost wages and benefits any such Plaintiffs are entitled to recover, if any.[177]

A Plaintiff is required to "mitigate" lost wage and benefit damages—that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.[178] Mitigation does not require a Plaintiff to switch their career, go into another line of work, accept a demotion, or take a demeaning position in order to mitigate their damages.[179] A Plaintiff is only required to be reasonably diligent in seeking and accepting new employment substantially equivalent to the position they left due to the discrimination.[180] In the event that a Plaintiff resigned from a subsequent position, they may still

_____

*Shows*, 882 F. Supp. 1553, 1560 (D. Md. 1995) (holding backpay damages may include the value of fringe benefits).

[175] *See, e.g., Stewart v. Amusements of Am.,* No. 96-1537, 1998 U.S. App. LEXIS 16306, at *17 (4th Cir. July 15, 1998) (affirming jury award of $600,000 in back and front pay damages when the record contained evidence of damages between $ 538,279.00 and $ 758,300.00).

[176] *McMahon v. Libbey-Owens-Ford Co*., 870 F.2d 1073, 1079 (6th Cir. 1989).

[177] *Kolstad v. ADA*, 527 U.S. 526, 534 (1999).

[178] *Brady v. Thurston Motor Lines, Inc*., 753 F.2d 1269, 1273 (4th Cir. 1985).

[179] *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S. Ct. 3057, 3065 (1982).

[180] *Brady,* 753 F.2d at 1273.

receive lost pay from NNI if their resignation from the subsequent position was for compelling or justifying reasons.[181] For example, if a subsequent resignation was "prompted by unreasonable working conditions or the earnest search for better paying employment," the back pay period will not end as a result of leaving their subsequent employment.[182] Similarly, in the event a Plaintiff was involuntarily terminated or fired from a subsequent position, the back pay period will not end unless the firing was justified—that is, the firing was result of a Plaintiff's violations of the employer's rules.[183] [184]

At all times, it is NNI's burden to prove by a preponderance of the evidence that a Plaintiff failed to mitigate their damages; it is not a Plaintiff's responsibility or burden to prove that he did mitigate.[185]

If you find in favor of any or all of the Plaintiffs on Count 2, then it would be your duty to write an amount for lost wage and benefits damages in the blank space provided in Question 8 for any such Plaintiffs.

---

[181] *Brady,* 753 F.2d at 1278.
[182] *Id.*
[183] *Id.* at 1279-80.
[184] *Id.* at 1280.
[185] *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1358 (4th Cir. 1995).

INSTRUCTION NO. 38

**After-Acquired Evidence [If Applicable]**

You must not consider NNI's after acquired evidence rule in your consideration of Plaintiffs' emotional distress claims or Plaintiffs' claims for punitive damages.[186]

NNI asserts an affirmative defense called the after acquired evidence rule against some of all Plaintiffs who have constructive discharge claims. This affirmative defense means that NNI may limit the amount of lost wages for which it is liable if NNI proves by a preponderance of the evidence that prior to a plaintiff's unlawful discharge, they engaged in wrongdoing of such "severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."[187] In other words, if you find NNI liable for any or all of Plaintiff's unlawful constructive termination claims, then NNI may limit the amount of lost wages it owes to those Plaintiffs if NNI can prove by the preponderance that prior to their discharge, a Plaintiff engaged in conduct of such severity that NNI would have terminated them on those grounds alone.[188] If NNI meets its burden, it may limit plaintiff's lost wage damages from the date of the unlawful discharge to the date the new information was discovered. Plaintiff would still be entitled to lost wages from the date of the unlawful discharge through the date that NNI discovered conduct of such severity that it would have terminated the plaintiff on that fact alone.[189]

---

[186] *Russell*, 65 F.3d at 1241.
[187] *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1238 (4th Cir. 1995) (citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362-63, 115 S. Ct. 879, 886-87 (1995)).
[188] *Id.*
[189] *Id.*

INSTRUCTION NO. 39

**<u>Front Pay (Future Lost Earnings)</u>**

The award of "front pay," or future lost earnings, covers monetary damages for future economic loss.[190]

If you find in favor of any or all Plaintiffs on Count II, constructive discharge, then it would be your duty to write an amount for future lost wage damages in the blank space provided in Question 9 for any such Plaintiffs.

---

[190] Adapted from 11th Cir. Pattern Jury Instructions §III(C) (citing *E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000)); *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1115 (4th Cir. 1981).

INSTRUCTION NO. 40

**<u>Punitive Damages</u>**

If you find for any Plaintiff on Count II for constructive termination, you may, but are not required to, award punitive damages for that claim. As I have previously addressed the propriety of punitive damages, I refer you to Count I for a discussion of elements necessary to award punitive damages on Count II.

If you award punitive damages on Count II, then you must mark "yes" on your verdict sheet as to Question 10 for any such Plaintiff.  You may award an amount which bears a rational relationship to the sum reasonably needed to punish NNI for its wrongful acts and to deter NNI and other employers from committing similar wrongful acts.  That amount should be written in the space provided on the verdict sheet as to Question 11.

**COUNT III**

INSTRUCTION NO. 41

**Retaliation**[191]

Plaintiff Chesson alleges that NNI retaliated against him by constructively discharging him after he made one or more complaints of discrimination. That is, Plaintiff Chesson contends that NNI took action against him because he or someone on his behalf had previously taken steps seeking to enforce lawful rights under the federal law. You are instructed that those laws prohibiting discrimination in the workplace also prohibit any retaliatory action being taken against an employee by an employer because the employee, or someone on their behalf has asserted rights or made complaints under those laws.[192]

To establish the claim of unlawful retaliation, Plaintiff Chesson must prove by a preponderance of the evidence:

First:   That Plaintiff Chesson or someone on their behalf engaged in statutorily protected activity, that is, that he or someone on his behalf in good faith asserted objectively reasonable claims or complaints of discrimination prohibited by federal law, or in some way protested racial mistreatment;

Second: That a materially adverse employment action then occurred;

Third:  That it was causally related to the protected activities.[193]

Regarding the first element, even if a complaint of discrimination against an employer is later found to be invalid or without merit, the employer may not retaliate against a Plaintiff for having made a complaint of discrimination if you find that the employee made the complaint in

---

[191] 11th Circuit Pattern Jury Instruction 4.21 with certain modifications.
[192] *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015).
[193] *Id.* at 29-50.

good faith.[194] Therefore, you must consider whether the Plaintiff subjectively believed in good faith that his federal rights were violated and that the Plaintiff's belief was objectively reasonable in light of all the facts.[195]

Regarding the second element, a materially adverse action is conduct that would dissuade a reasonable employee from complaining of discrimination.[196] Plaintiff Chesson is not required to show that the adverse action resulted in a serious or material change to the terms, conditions, or privileges of his employment. He is only required to prove that the nature of the adverse action would cause a reasonable employee in his position to be dissuaded from reporting discrimination.[197] When several adverse employment actions are present, courts must consider the acts both individually and in the aggregate.[198] If you find that the hostile environment became worse because of protected activity and/or that it caused him to quit, you should find that he established a materially adverse action.

Regarding the third element, for a materially adverse employment action to be "causally related" to statutorily protected activities it must be shown that, but for the protected activity, the adverse employment action would not have occurred.[199] It is not necessary for a Plaintiffs to prove that protected activity was the sole or exclusive reason for NNIs' decision.[200] For example,

---

[194] *Peters v. Jenney*, 327 F.3d 307, 320-21 (4th Cir. 2003) ("[A] Title VII oppositional retaliation claimant need not show that the underlying claim of discrimination was in fact meritorious in order to prevail.") (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985)).

[195] *Peters v. Jenney*, 327 F.3d at 321.

[196] *Burlington*, 126 S.Ct. at 2415.

[197] *Burlington,* 126 S.Ct. at 2415.

[198] *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).

[199] *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016

[200] *Id.*; *Burrage v. United States*, 134 S. Ct. 881, 888 (2014) ("Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if

if a deadly poison is administered to a man debilitated by multiple diseases, the poison is a but-for cause of his death, even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived."[201]

If you find that Plaintiff Chesson has established by a preponderance of the evidence the elements above, then it would be your duty to answer "Yes" to Question 12 on the Verdict Form for Plaintiff Chesson. If, on the other hand, you fail to so find, then it would be your duty to answer "No" to Question 12 on the Verdict Form for Plaintiff Chesson.

---

those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived.").

[201] *Burrage v. United States*, 134 S. Ct. 881, 888 (2014).

INSTRUCTION NO. 42

**Compensatory Damages—Emotional Distress & Lost Wages**

If you find in favor of Plaintiff Chesson as to Count III, retaliation, you are to determine the amount of damages that he is entitled to recover in Question 13 the Verdict Form for Plaintiff Chesson. As I have previously addressed the propriety of compensatory damages for emotional distress, I refer you to Count I for a discussion of the factors you should consider in determining the amount of emotional distress damages.

Because the materially adverse action that forms the basis of Plaintiff Chesson's retaliation claim is increased harassment and his constructive discharge, any award of emotional distress damages to Plaintiff Chesson should be separate from any emotional distress damages you may have awarded Plaintiff as to Count II, constructive discharge. In other words, any emotional distress damages award for retaliation should be based on the hardship that Plaintiff Chesson experienced as a result of being punished for reporting discrimination, not for the experience of being forced to resign.

If you find by a preponderance of the evidence the amount of emotional distress damages was caused by NNI on Count III, retaliation, then it would be your duty to write that number in the blank space provided in Question 13.

If, on the other hand, you find that Plaintiff Chesson is not entitled to emotional distress or lost wage damages for his retaliation claim, then it is your duty to write a nominal amount such as "One Dollar" in the blank space provided in Question 13.

INSTRUCTION NO. 43

**<u>Punitive Damages</u>**

If you find for Plaintiff Chesson as to Count III, you may, but are not required to, award punitive damages for that claim. As I have previously addressed the propriety of punitive damages, I refer you to Count I for a discussion of elements necessary to award punitive damages, as the same applies here regarding Count III.

If you award punitive damages on Count II, then you must mark "yes" on your verdict sheet as to Question 14. You may award an amount which bears a rational relationship to the sum reasonably needed to punish NNI for its wrongful acts and to deter NNI and other employers from committing similar wrongful acts. That amount should be written in the space provided on the verdict sheet as to Question 15.

**COUNT IV**

INSTRUCTION NO. 44

**Discrimination Based on Race (Disparate Pay and Promotion)**

Plaintiff Gordon claims that he was discriminated against because he was paid less than Caucasian employees and because he was denied promotions to serve as a make-up supervisor in favor of Caucasian employees. To prevail on these claims, Plaintiff Gorgon may prove by either direct or circumstantial evidence that NNI's pay and promotion decisions against him were made under circumstances giving rise to an inference of discrimination.[202]

In determining whether Plaintiff Gordon has raised an inference of discrimination, you may consider various pieces of both direct and circumstantial evidence,[203] including but not limited to: (i) stereotypical remarks, code words, or other communication probative of ... animus,[204] . . . (ii) underrepresentation of African American employees;[205] (iii) evidence of

---

[202] *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996); Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1286 (4th Cir. 1985); *Worldwide Network Servs., LLC v. DynCorp* Int'l, *LLC*, 365 F. App'x 432, 442-43 (4th Cir. 2010); *Smith v. Lockheed Martin*, 644 F.3d 1321 (11th Cir. 2011); *Troupe v. May Dept. Stores Co*., 20 F.3d 734, 736 (7th Cir. 1994) (Posner, C.J.).

[203] *Ousley v. McDonald*, 648 Fed. Appx. 346 (4th Cir. 2016).

[204] *Worldwide Network Servs., LLC v. DynCorp Int'l, LLC*, 365 F. App'x 432, 442-43 (4th Cir. 2010); *Moore v. Nat'l Tire & Battery*, Civil Action No. 13-cv-01779 AW, 2013 U.S. Dist. LEXIS 145805, at *6 (D. Md. Oct. 9, 2013) (reciting types of evidence); *Brown v. Nucor*, 785 F.3d 895, 911-912 (4th Cir. 2015); *Chan v. Montgomery Cty. Md*., Civil Action No. 8:12-cv-01735-AW, 2013 U.S. Dist. LEXIS 58449, at *15 (D. Md. Apr. 24, 2013) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

[205] *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).

85

discrimination against employees based on the same protected trait (i.e., "me too" evidence)[206] and (iv) comparative evidence.[207]

It is not necessary for Plaintiff Gordon to prove that his race was the sole or exclusive reason for NNIs' pay or promotion decisions against him. It is sufficient if race was a determinative consideration that made a difference in NNIs' decision.[208] Plaintiff Gordon only needs to prove that his race was a motivating factor, meaning that it made a difference in NNI's decision to pay him less and/or fail to promote him.[209]

If you find that Plaintiff Gordon has established by a preponderance of the evidence that NNI discriminated against him with respect to pay, then it would be your duty to answer "Yes" to Question 6 on the Verdict Form for Plaintiff Gordon. If, on the other hand, you fail to so find, then it would be your duty to answer "No" to Question 6 on the Verdict Form for Plaintiff Gordon.

If you find that Plaintiff Gordon have established by a preponderance of the evidence that NNI discriminated against him with respect to promotions, then it would be your duty to answer "Yes" to Question 12 on the Verdict Form for Plaintiff Gordon. If, on the other hand, you fail to so find, then it would be your duty to answer "No" to Question 12 on the Verdict Form for Plaintiff Gordon.

---

[206] *Id.* (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388, 128 S. Ct. 1140, 170 L. Ed. 2d 1 (2008).

[207] *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2D 201 (1998)).

[208] *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216-17 (4th Cir. 2016) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013)).

[209] *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (2003); Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216-17 (4th Cir. 2016) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013)).

INSTRUCTION NO. 45

**Compensatory Damages—Emotional Distress & Lost Wages**

If you find in favor of Plaintiff Gordon as to Counts IV, disparate pay, and/or Count V, disparate promotion, you are to determine the amount of damages that he is entitled to recover. As I have previously addressed the propriety of compensatory damages for emotional distress and lost wages, I refer you to Counts I and II for a discussion of the factors you should consider in determining the amount of damages Plaintiff is entitled to recover as the same applies here.

If you find by a preponderance of the evidence the amount of emotional distress damages was caused by NNI on Count IV, disparate pay, then it would be your duty to write that number in the blank space provided in Question 7 on Plaintiff Gordon's Verdict Form.

If you find by a preponderance of the evidence the amount of emotional distress damages was caused by NNI on Count V, disparate promotion, then it would be your duty to write that number in the blank space provided in Question 13 on Plaintiff Gordon's Verdict Form.

If, on the other hand, you find that Plaintiff Gordon is not entitled to emotional distress damages for his discriminatory pay and/or promotion claims, then it is your duty to write a nominal amount such as "One Dollar" in the blank space provided in Questions 7 and/or 13.

If you find for Plaintiff Gordon on his discriminatory pay and/or promotion claims, it would be your duty to write a number for lost wage and benefits damages in the blank space provided in Question 8 (disparate pay) and Question 14 (disparate promotion)

INSTRUCTION NO. 46

**<u>Front Pay</u>**

If you find in favor of Plaintiff Gordon as to Counts IV, disparate pay, and/or Count V, disparate promotion, you are to determine the amount of front pay, or future lost earnings, damages that he is entitled to recover. As I have previously addressed the propriety of front pay damages, I refer you to Count II for a discussion of the factors you should consider in determining the amount of damages Plaintiff is entitled to recover as the same applies here.

If you find in favor of Plaintiff Gordon on his disparate pay and/or promotion claim, then it would be your duty to write a number for future lost pay damages in the blank space provided in Questions 9 and 15 on Plaintiff Gordon's Verdict Form.

INSTRUCTION NO. 47

**<u>Punitive Damages</u>**

If you find in favor of Plaintiff Gordon as to Counts IV, disparate pay, and/or Count V, disparate promotion, you may, but are not required to, award punitive damages for that claim. As I have previously addressed the propriety of punitive damages, I refer you to Count I for a discussion of elements necessary to award punitive damages, as the same applies here.

If you award punitive damages on Count IV, disparate pay. then you must mark "yes" on your verdict sheet as to Question 10. You may award an amount which bears a rational relationship to the sum reasonably needed to punish NNI for its wrongful acts and to deter NNI and other employers from committing similar wrongful acts. That amount should be written in the space provided on the verdict sheet as to Question 11.

If you award punitive damages on Count IV, disparate promotion. then you must mark "yes" on your verdict sheet as to Question 16. You may award an amount which bears a rational relationship to the sum reasonably needed to punish NNI for its wrongful acts and to deter NNI and other employers from committing similar wrongful acts. That amount should be written in the space provided on the verdict sheet as to Question 17.

**PTO INSTRUCTIONS**

INSTRUCTION NO. 48

**PTO — Other Claims Against NNI**

(LIMITING INSTRUCTION TO BE OFFERED IF NNI OFFERS EVIDENCE OF OTHER CLAIMS AGAINST NNI)

Members of the jury, you have heard and/or received evidence that the following witnesses made their own claims for discrimination against NNI [**AS APPROPRIATE, including if and when NNI offers NNI EX. 2002, NNI EX. 2003**[210]]:

1.     Alvarez, Anthony.

_____

[210] Crawford et al. v. Newport News Industrial Corp., Transcript of Final Pretrial Conference, Pt. 1, Dkt. 489 at 27 (Aug. 27, 2020) (

> Category two deals with the claims that were dismissed and pertain to the former Plaintiffs who are no longer part of the case. I'm going to deny the motion in part with respect to those former Plaintiffs, and I'm going to bar evidence and argument and cross-examination that the former Plaintiffs were parties to the case, that their claims were dismissed, that they were represented by Plaintiffs' counsel.

> But I will permit evidence, argument and cross-examination of the former Plaintiffs brought claims against the defendant for discrimination. By that I mean that that cross-examination may inquire about the fact that they brought claims but that cross-examination cannot link those claims to this case, cannot get into the status of those claims, whether they are live or dismissed, can't get into the disposition of those claims, but the fact that they had claims/have claims against the defendant or brought claims against the defendant will obviously have to massage that cross-examination language, is permissible evidence of bias, and I think with those limitations, the concerns of prejudice can be reasonably dealt with.

> I will require the parties to submit as part of their proposed jury instructions a proposed limiting instruction for Judge Allen to give to the jury to minimize any questions of confusion and prejudice, that you both should submit whatever instructions on that point that you want to submit. So that deals with motion 402. ECF Number 402, it is granted in part and denied in part.

). *See also* Crawford et al. v. Newport News Industrial Corp., Dkt. 482 at 1-2, Order on Pls.' Motions *In Limine* Dkt. No. 402 (Sept. 1, 2020).

2.      Broughton, Herbert

3.      Chisman, Keith

4.      Cross, Derrick

5.      Fields, Marchello

6.      Harris, John

7.      Hooker, Tourke

8.      Joyner, Lamarr

9.      Marshall, Naseer

10.     Payton, Richard

11.     Pierce, Don

12.     Smith, Kevin

13.     Smith, Marvin

14.     Waddell, Jr. Roderick

15.     Wiltz, Gilbert

You may only consider the fact that these witnesses made their own claims of

discrimination against NNI when you assess credibility or bias of a witness, such as I instructed

you earlier as you may assess any witnesses. However, you may not consider this evidence to

make assumptions or determinations about the status or disposition of any these witnesses' own

claims or whether their claims are in any way linked to the any other Plaintiff's claims in this

case. In other words, the fact that a witness also brought a claim against NNI may only be

considered to determine whether these witnesses' testimony is colored by the fact that they also

brought a discrimination claim against NNI. The fact that they are not parties in this lawsuit is

not relevant to your consideration at all.

As I previously instructed you, you may also consider the substance of their testimony for

a variety of purposes, including whether conduct was because of race, whether it contributed to a

hostile work environment, and whether NNI is responsible for the environment.

INSTRUCTION NO. 49

**PTO—Prior Complaints[211]**

(LIMITING INSTRUCTION TO BE OFFERED IF NNI OFFERS EVIDENCE OF PRIOR COMPLAINTS)

Members of the jury, you have heard and/or received evidence relating to reports of discrimination that Plaintiff Crawford made at another employer [**IF APPROPRIATE**].

You may not consider this evidence to weigh motive, knowledge, or intent in this case. In other words, you may not consider whether it is more or less likely that Plaintiff experienced harassment at NNI because she also reported discrimination at another employer.

Your consideration of this evidence is limited to evaluating credibility.

---

[211] Crawford et al. v. Newport News Industrial Corp., Transcript of Final Pretrial Conference, Pt. 1, Dkt. 489 at 39 (Aug. 27, 2020) ("The Limehouse complaint will not be admissible, and the parties are, again, to supply proposed limiting instruction to the Court pertaining to this ruling that I've just made with respect to those two issues."); *see also* Crawford et al. v. Newport News Industrial Corp, Dkt. 482 at 2-3, Order on Pls.' Motions In Limine Dkt. No. 406 (Sept. 1, 2020) (

Defendant **may not** introduce evidence of Jamesina Crawford's claims or complaints against her previous employers, except as provided below. . . Defendant **may** seek to cross-examine Crawford regarding her deposition testimony that she was a supervisor at NNI. Defendant **may** cross-examine Crawford about her prior working relationship with Jeff Rilee, and the assistance he rendered to her in dealing with an allegedly racist supervisor at Newport News Shipbuiliding. Defendant **may not**, however, seek to admit other evidence of claims or complaints of discrimination Crawford brought against Newport News Shipbuilding. Defendant **may** seek to admit evidence that Crawford testified on September 29, 2011, that she had "good job" with defendant and "like[d it] very much." Defendant **may** also seek to admit evidence that Crawford testified on September 20, 2011, that she suffered stress headaches and weight gain due to emotional distress allegedly resulting from discrimination she encountered when seeking employment with Limehouse & Sons. Although defendant **may** elicit testimony that Crawford sued in federal court seeking recovery for such alleged damages and discrimination in relation. To the damages she now seeks, defendant **will not** be permitted to offer the complaint into evidence.
).

INSTRUCTION NO. 50

**PTO — Second-Hand Harassment[212]**

(LIMITING INSTRUCTION TO BE OFFERED IF THE PARTIES OFFER EVIDENCE OF SECOND-HAND HARASSMENT)

Members of the jury, you have heard testimony from Plaintiffs regarding racial incidents that occurred at NNI of which they were aware, but did not personally witness. You may consider this evidence to weigh the effect that a Plaintiff's knowledge of these incidents had on them. In other words, you may consider this evidence to determine whether a Plaintiff subjectively perceived their work environment to be hostile or abusive.

Further, you may consider this evidence to determine whether a Plaintiff's work environment was objectively hostile or abusive. In other words, this evidence may be considered as part of the totality of circumstances that created a general atmosphere or environment of hostility or abusiveness.

Finally, if you find that NNI subjected any or all Plaintiffs to a hostile work environment, any such Plaintiffs are entitled to damages for emotional distress. You may also consider this evidence to determine whether the racial harassment of which Plaintiffs were aware but did not personally witness contributed to their emotional distress.

---

[212] Crawford et al. v. Newport News Industrial Corp., Transcript of Final Pretrial Conference, Pt. 2, Dkt. 490 at 70 (Aug. 28, 2020) ("I also would direct the parties to include with their proposed jury instructions proposed limiting instructions about the use of these secondhand statements, that they are being offered for a limited purpose so the Court can give that instruction, perhaps, when such testimony is received to provide the jury about the limited purpose or purposes that it's being admitted for."); *see also* Crawford et al. v. Newport News Industrial Corp, Dkt. 482 at 2-3, Order on Pls.' Motions In Limine Dkt. No. 406 (Sept. 1, 2020) ("[T]he parties are directed to submit, as part of their proposed jury instructions, a limiting instruction regardin the proper purpose(s) for which the jury may consider such evidence).

INSTRUCTION NO. 51

**PTO — NNI Ex. 3215**[213]

(LIMITING INSTRUCTION TO BE OFFERED AT THE TIME OF NNI'S OFFER OF NNI
EX. 3215 INTO EVIDENCE)

Members of the jury, you are about to receive NNI Exhibit No. 3215 into evidence,

which contains a statement that former NNI employee Ben Vogel submitted to NNI regarding

issues he alleged to have with Plaintiff Nichols. You may only consider this evidence for the

limited purpose of determining whether NNI was aware of Mr. Vogel's allegations. However,

you must not consider this statement as proof of the allegations contained in the statement.

---

[213] Crawford et al. v. Newport News Industrial Corp., Final Pretrial Order, Dkt. 510-6, Exhibit E-1, 3215 ("Subject to a limiting instruction that it will only be offered for NNI's knowledge and not for the truth of the matter asserted"); Fed. R. Evid. 801-803.

INSTRUCTION NO. 52

**PTO — NNI Ex. 3216**[214]

(LIMITING INSTRUCTION TO BE OFFERED AT THE TIME OF NNI'S OFFER OF NNI
EX. 3216 INTO EVIDENCE)


Members of the jury, you are about to receive NNI Exhibit No. 3216 into evidence,

which shows that former NNI employee Kevin Smith sent an email to NNI on August 21, 2015,

regarding an interaction he alleged to have with Plaintiff Nichols. You may only consider this

evidence for the limited purpose of determining whether NNI was aware of his allegations.

However, you must not consider this statement as proof of the allegations contained in the

statement.

---

[214] Crawford et al. v. Newport News Industrial Corp., Final Pretrial Order, Dkt. 510-6,
Exhibit E-1, 3216 ("Subject to a limiting instruction that it will only be offered for NNI's
knowledge and not for the truth of the matter asserted"); Fed. R. Evid. 801-803.

INSTRUCTION NO. 53

**<u>PTO — NNI Ex. 3377</u>**[215]

(LIMITING INSTRUCTION TO BE OFFERED AT THE TIME OF NNI'S OFFER OF NNI
EX. 33377 INTO EVIDENCE)

Members of the jury, you are about to receive NNI Exhibit No. 3377 into evidence,

which contains an email that NNI employee Doug Todd sent to NNI on December 13, 2014,

regarding alleged workplace issues he had with Plaintiff Pierce. You may only consider this

evidence for the limited purpose of determining whether NNI was aware of his allegations.

However, you must not consider this statement as proof of the allegations contained in the

statement.

---

[215] Crawford et al. v. Newport News Industrial Corp., Final Pretrial Order, Dkt. 510-6,
Exhibit E-1, 3377 ("Subject to laying foundation at trial and a limiting instruction."); Fed. R.
Evid. 801-803.

INSTRUCTION NO. 54

**PTO — NNI Ex. 3380**[216]

(LIMITING INSTRUCTION TO BE OFFERED AT THE TIME OF NNI'S OFFER OF NNI
EX. 3380 INTO EVIDENCE)

Members of the jury, you are about to receive NNI Exhibit No. 3380 into evidence,

which contains a statement that NNI employee Cory Beddingfield sent to NNI on February 13,

2015 in which he described an alleged issue between Plaintiff Nichols and former NNI employee

Ben Vogel. You may only consider this evidence for the limited purpose of determining whether

NNI was aware of his allegations. However, you must not consider this statement as proof of the

allegations contained in the statement.

---

[216] Crawford et al. v. Newport News Industrial Corp., Final Pretrial Order, Dkt. 510-6, Exhibit E-1, 3380 ("Subject to laying foundation at trial and a limiting instruction."); Fed. R. Evid. 801-803.

INSTRUCTION NO. 55

**PTO — NNI Ex. 3381**[217]

(LIMITING INSTRUCTION TO BE OFFERED AT THE TIME OF NNI'S OFFER OF NNI
EX. 3381 INTO EVIDENCE)

Members of the jury, you are about to receive NNI Exhibit No. 3381 into evidence,

which contains statements from Plaintiff Nichols, Justin Dudney, and an individual named

Nelson.

You may only consider this evidence for the limited purposes described below:

You may consider Plaintiff Nichols statement to weigh the truth or accuracy of his

allegations. In other words, you may consider this evidence to determine if what Plaintiff Nichols

wrote in his statement happened. You may also consider Plaintiff Nichols' statement to

determine whether NNI was aware of the allegations contained in his statement.

With respect to Justin Dudney's and Nelson's statements, you may consider their

statements to determine whether NNI was aware of their allegations. However, you must not

consider their statements as proof of the allegations contained in them.

---

[217] Crawford et al. v. Newport News Industrial Corp., Final Pretrial Order, Dkt. 510-6,
Exhibit E-1, 3381 ("Subject to a limiting instruction."); Fed. R. Evid. 801-803.

INSTRUCTION NO. 56

**PTO — NNI Ex. 3385**[218]

(LIMITING INSTRUCTION TO BE OFFERED AT THE TIME OF NNI'S OFFER OF NNI EX. 3385 INTO EVIDENCE)

Members of the jury, you are about to receive NNI Exhibit No. 3385 into evidence, which contains statements from Scott Jones and Ronald Huggett regarding Plaintiff Payton.

You may consider these statements to determine whether NNI was aware of the allegations contained in them. However, you must not consider these statements as proof of the allegations contained in them.

---

[218] Crawford et al. v. Newport News Industrial Corp., Final Pretrial Order, Dkt. 510-6, Exhibit E-1, 3385 ("Overruled subject to foundation and limiting instruction"); Fed. R. Evid. 801-803.

INSTRUCTION NO. 57

**PTO — NNI Ex. 3387[219]**

(LIMITING INSTRUCTION TO BE OFFERED AT THE TIME OF NNI'S OFFER OF NNI
EX. 3387 INTO EVIDENCE)

Members of the jury, you are about to receive NNI Exhibit No. 3387 into evidence,

which references Plaintiff Nichol's alleged "criminal background."

There has not been any evidence of any alleged criminal background and you must not

consider this evidence in deciding whether or not to believe Plaintiff Nichols' testimony or how

much weight to give to his testimony.

---

[219] Crawford et al. v. Newport News Industrial Corp., Final Pretrial Order, Dkt. 510-6,
Exhibit E-1, 3387 ("Overruled subject to foundation and limiting instruction"); Fed. R. Evid.
609.

INSTRUCTION NO. 58

**PTO — NNI Ex. 3389**[220]

(LIMITING INSTRUCTION TO BE OFFERED AT THE TIME OF NNI'S OFFER OF NNI
EX. 3389 INTO EVIDENCE)

Members of the jury, you are about to receive NNI Exhibit No. 3389 into evidence,

which contains a statement from NNI employee Mike Lopreste regarding alleged observations

regarding Plaintiff Payton.

You may only consider this evidence for the limited purpose of determining whether NNI

was aware of the allegations contained in the statement. However, you must not consider this

statement as proof of the allegations contained in it.

---

[220] Crawford et al. v. Newport News Industrial Corp., Final Pretrial Order, Dkt. 510-6, Exhibit E-1, 3389 ("Subject to a limiting instruction"); Fed. R. Evid. 801-803.

INSTRUCTION NO. 59

**PTO — Def. Ex. G (Crawford Designation 151:17-155:8)[221]**

(LIMITING INSTRUCTION TO BE OFFERED AT THE TIME NNI OFFERS
DESIGNATION 151:17-155:8)

Members of the jury, you are about to receive evidence that Plaintiff Crawford's
attorneys filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment
Opportunity Commission ("EEOC") on her behalf, alleging gender discrimination at NNI, and
that the Charge that Plaintiff Crawford's attorneys filed on her behalf did not allege racial
discrimination. When you consider this evidence, you must take into account that Plaintiff
Crawford was not required to include race-based allegations in her Charge of Discrimination.

Gender discrimination is enforced through Title VII, which requires that a charge of
discrimination be filed with the EEOC before a lawsuit can be filed in court.[222] Unlike gender
discrimination claims under Title VII, racial discrimination claims may be brought using a
different statute called 42 U.S.C. § 1981, as Plaintiff Crawford has done in this lawsuit. Unlike
Title VII, the EEOC has no jurisdiction over §1981 claims. Accordingly, Plaintiff Crawford was
not required to file a charge or otherwise include racial discrimination allegations in the Charge
that her attorneys filed on her behalf. Put another way, for Plaintiff Crawford to file a lawsuit for

---

[221] Crawford et al. v. NNI, Transcript of Proceedings (Deposition Designations, May 24,
2021, at 35, 37 ("I am going to overrule the objection to page 151, line 17, through page 155,
line 8, but the objecting party may seek a limiting instruction from the Court, and I will instruct
you that if you're going to seek one, you should include it with your jury instructions. . . . I think
that the proper way to address this is with a limiting instruction, and you can have the Court
instruct the jury at the time that this testimony is elicited about what the legal requirements are,
whether she even needed to raise the question of race discrimination in connection with this.")

[222] *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 221 (4th Cir. 2016) (citing 42
U.S.C. § 2000e-5(e)(1)).

gender discrimination under Title VII, she was required to file a charge of discrimination, which she did. However, Ms. Crawford's current claims for racial harassment before you are brought under §1981, which did not require Ms. Crawford to file a charge or otherwise include any racial allegations in the Charge she filed with the EEOC.

Moreover, there is no claim for gender discrimination before you. The fact that Ms. Crawford alleged gender discrimination in a Charge filed with the EEOC should not be a factor in considering whether she experienced a hostile work environment because of her race.

# FINAL INSTRUCTIONS

INSTRUCTION NO. 60
## Introduction

Now that you have heard all of the evidence to be received in this trial, and each of Plaintiffs' and Defendant's arguments, it becomes my duty to give you the final instructions of the court as to the law applicable to this case. You should use these instructions to guide you in your decisions.

All the instructions of law given to you by the court – those given to you at the beginning of the trial, those given to you during the trial, and these final instructions – must guide and govern your deliberations.

It is your duty as jurors to follow the law as stated in all the instructions of the court, and to apply the rules of law so given to the facts as you find them from the evidence received during the trial. In performing your duty, you must not be persuaded by bias, prejudice or sympathy as to any party. Both Plaintiffs and NNI expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the court and reach a just verdict, regardless of the consequences.

Plaintiffs and NNI have quite properly referred to some of the applicable rules of law in their closing arguments to you. If, however, any difference appears to you between the law as stated by the parties and that stated by the court in these instructions, you, of course, are to be governed by the instructions given to you by the court.

You are not to single out any one instruction alone as stating the law but must consider the instructions as a whole in reaching your decision.

Neither are you to be concerned with the wisdom of any rule of law stated by the court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base any part of your verdict upon any other view or opinion of the law than that given in the instructions of the court; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence received in the case.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors here in the courtroom; and to arrive at a verdict by applying the same rules of law, as now being given to each of you in these instructions of the court.

INSTRUCTION NO. 61
**Additional Instructions**[223]

Members of the jury, the instructions I gave at the beginning of the trial and during the trial are still in effect.  Now I am going to give you some additional instructions.

You have to follow all of my instructions – the ones I gave you earlier, as well as those I give you now.  Do not single out some instructions and ignore others, because they are all important. This is true even though I may not repeat some or all of the instructions I gave you at the beginning of and during the trial.

---

[223]  8th Cir. Pattern Jury Instructions §3.01

INSTRUCTION NO. 62

**<u>Judge's Opinion</u>**[224]

I have not intended to suggest what I think your verdicts should be by any of my rulings or comments during the trial.

During this trial I have asked some questions of witnesses. Do not try to guess my opinion about any issues in the case based on the questions I asked.

---

[224] 8th Cir. Pattern Jury Instructions §3.02

INSTRUCTION NO. 63

**Juror Attentiveness**[225]

Ladies and gentlemen, before you begin your deliberations, I now am going to instruct you on the law. You must pay close attention and I will be as clear as possible.

It has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified. Your interest never flagged, and you have followed the testimony with close attention.

I ask you to give me that same careful attention as I instruct you on the law.

---

[225] *Grossman v. United Fruit Co*., Civ. 45-437 (S.D.N.Y.); **Fifth Circuit**: *Garcia v. Murphy Pacific Statuary Co*., 476 F.2d 303 (5th Cir. 1973); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 71-1.

INSTRUCTION NO. 64

**Role of the Court**[226]

You have now heard all the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the faces as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instructions as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

-------

[226] **United States Supreme Court:** *Pataspco Insurance Co. v. Southgate*, 30 U.S. 604, 8 L.Ed. 243 (1831); **Second Circuit:** *Franks v. United States Lines Co*., 324 F.2d 126 (2d Cir. 1963); **Third Circuit:** *United States v. 564. 54 Acres of Land*, 576 F.2d 983 (3d Cir. 1978), rev'd on other grounds, 441 U.S. 506 (1979); Third Circuit Model Civil Jury Instruction 3.1; **Fifth Circuit:** *Shelak v. White Motor Co*., 636 F.2d 1069 (5th Cir. 1981); *Martin v. Travelers Indemnity Co*., 450 F.2d 542 (5th Cir. 1971); **Sixth Circuit:** *Nolan v. Green,* 383 F.2d 814 (6th Cir. 1967); *Tyree v. New York C.R. Co*.; 382 F.2d 524 (6th Cir. 1967); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 71-2.

INSTRUCTION NO. 65

**Role of the Jury**[227]

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. For you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nor is what I may have said about a fact issue --or what I may say in these instructions-- to be considered evidence. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

I have not expressed nor have I intended to intimate any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inference or inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it. You are, I repeat, the exclusive, sole judges of all of the questions of fact submitted to you and of the credibility of the

---

[227] **First Circuit:** *Marchant v. Dayton Tire and Rubber Co.*, 836 F.3d 695 (1st Cir. 1988); *Care Travel Co. v. Pan American World Airways, Inc.*, 944 F.2d 983 (2d Cir. 1991); **Second Circuit:** *United States v. Ulloa*, 882 F.2d 41 (2nd Cir. 1989); **Fourth Circuit:** *United States v. Gravely*, 840 F.2d 1156 (4th Cir. 1988); *Sit-Set, A.G. v. Universal Jet Exchange, Inc.*, 747 F.2d 921 (4th Cir. 1984); **Fifth Circuit:** *Fruge v. Penrod Drilling*, 918 F.2d 1163 (5th Cir. 1991); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 71-3. 71-5

witnesses. Your authority, however, is not to be exercised arbitrarily; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you. In making your determination of the facts in this case, your judgment must be applied only to that which is properly in evidence. Arguments of counsel are not in evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

From time to time the court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, in so far as it was practicable, out of your hearing. You have no concern with the reasons for any such rulings and you are not to draw any inferences from them. Whether offered evidence is admissible is purely a question of law in the province of the court and outside the province of the jury. In admitting evidence to which objection has been made, the court does not determine what weight should be given to such evidence, nor does it pass on the credibility of the evidence. Of course, you will dismiss from your mind, completely and entirely, any evidence which has been ruled out of the case by the court, and you will refrain from speculation or conjecture or any guesswork about the nature or effect of any colloquy between court and counsel held out of your hearing or sight.

INSTRUCTION NO. 66

**<u>Juror Oath</u>**[228]

In determining the facts, you are reminded that you took an oath to render judgment

impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence

in the case and the applicable law. I know that you will do this and reach a just and true verdict.

---

[228] S.D.N.Y.: *Grossman v. United Fruit Company*, Civ. 45-437, Docket 463 (S.D.N.Y.
1953); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 71-4

INSTRUCTION NO. 67

**<u>Corporate Party</u>**[229]

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

---

[229] Adapted from 11th Circuit Pattern Jury Instructions §3.2.2

INSTRUCTION NO. 68

**Publicity—Final Charge**[230]

Your verdict must be based solely on the evidence presented in this courtroom in accordance with my instructions. You must completely disregard any report which you have read in the press, seen on television, or heard on the radio. Indeed, it would be unfair to consider such reports, since they are not evidence and the parties have no opportunity of contradicting their accuracy or otherwise explaining them away. In short, it would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such publicity.

---

[230] **First Circuit:** *Richard v. United States*, 315 F.2d 331 (1st Cir. 1963); **Sixth Circuit:** *Briggs v. United States*, 221 F.2d 636 (6th Cir. 1955); **Ninth Circuit:** *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 726 F.2d 1381 (9th Cir. 1984); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 71-14.

INSTRUCTION NO. 69

**Reprimand of Counsel for Misconduct [If Applicable]**[231]

During the course of the trial, I have had to admonish or reprimand an attorney because I did not believe what s/he was doing was proper. You should draw no inference against the attorney or their clients. It is the duty of the attorneys to offer evidence and press objections on behalf of their side. It is my function to cut off counsel from an improper line of argument or questioning, to strike offending remarks, and to reprimand counsel when I think it is necessary. But you should draw no inference from that. It is irrelevant whether you like a lawyer or whether you believe I like a lawyer.

In fact, in this case, I would like to express my gratitude to each of the attorneys for their conscientious efforts on behalf of their clients and for work well done.

Your verdict should be based on the facts as found by you from the evidence and the law as instructed by the court.

---

[231] **Fifth Circuit:** *United States v. Williams*, 809 F.2d 1072 (5th Cir. 1987); **Seventh Circuit**: *Wallace v. Mulholland*, 957 F.2d 333 (7th Cir. 1992); **Eleventh Circuit**: *Murphy v. City of Flagler Beach*, 761 F.2d 622 (11th Cir. 1985); Modern Federal Jury Instructions (Civil), Vol. 4 (2009), Instruction 71-7

INSTRUCTION NO. 70

**Election of Foreperson; Duty to Deliberate; Communications With Court; Cautionary; Unanimous Verdict [If Applicable]; Verdict Form**[232]

There are rules you must follow when you go to the jury room to deliberate and return with your verdict.

*First*, you will select a foreperson. That person will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement, if you can do this without going against what you believe to be the truth.

Each of you must come to your own decision, but only after you have considered all the evidence, discussed the evidence fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your mind if the discussion persuades you that you should. But, do not come to a decision just because other jurors think it is right, or just to reach a verdict. Remember you are not for or against any party. You are judges of the facts. Your only job is to study the evidence and decide what is true.

*Third*, if you need to communicate with me during your deliberations, send me a note signed by one or more of you. Give the note to the [marshal] [bailiff] [court security officer] and I will answer you as soon as I can, either in writing or here in court. While you are deliberating, do not tell anyone - including me - how many jurors are voting for any side.

---

[232]  8th Cir. Pattern Jury Instructions §3.06.

116

*Fourth*, your verdict has to be based only on the evidence and on the law that I have given to you in my instructions. Nothing I have said or done was meant to suggest what I think your verdict should be. The verdict is entirely up to you.

*Finally*, the verdict form is your written decision in this case. The forms read: [(read form)]. You will take these forms to the jury room, and when you have all agreed on the verdicts, your foreperson will fill in the forms, sign and date them, and tell the [marshal] [bailiff] [court security officer] that you are ready to return to the courtroom.

Dated: August 12, 2021

Respectfully submitted,


By /s/ James H. Shoemaker, Jr.
     James H. Shoemaker, Jr.,
     Virginia State Bar No. 33148
     Patten, Wornom, Hatten & Diamonstein, L.C.
     12350 Jefferson Avenue, Suite 300
     Newport News, Virginia 23602
     Telephone: (757) 223-4500
     Facsimile: (757) 223-4518
     jshoemaker@phwd.com

     Rebecca Houlding
     Joshua Friedman
     Jesse Centrella
     Friedman & Houlding LLP
     1050 Seven Oaks Lane
     Mamaroneck, NY 10543
     Telephone: (888) 369-1119 x 8
     Facsimile: (866) 731-5553
     josh@friedmanhouldingllp.com
     rebecca@friedmanhouldingllp.com
     jesse@friedmanhouldingllp.com
     Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I, James H. Shoemaker, Jr., hereby certify that on the 12th day of August 2021, I will

electronically file the foregoing Plaintiffs' Proposed Jury Instructions with the Clerk of Court

using the CM/ECF system, which will then send notification of such filing (NEF) to all parties.

By: /s/James H. Shoemaker, Jr.,
James H. Shoemaker, Jr.
VSB No. 33148